IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES *ex rel.* TIMOTHY
SCHNUPP

    *Relator*

    v.

BLAIR PHARMACY, INC., *et al.*,

    *Defendants.*

Civil Action No. ELH-17-2335

**MEMORANDUM OPINION**

In this *qui tam* action, Timothy Schnupp, the Relator, has sued his former employer, Blair

Pharmacy, Inc. ("Blair Pharmacy" or "Pharmacy"), and its director and principal, Matthew Blair,

pursuant to the False Claims Act ("FCA"), 31 U.S.C. §§ 3728 et seq.  *See* ECF 30 (First Amended

Complaint).   The suit contains two counts.   Count I asserts false claims under 31 U.S.C.

§ 3729(a)(1)(A) and Count II asserts false claims under § 3729(a)(1)(B).

Schnupp alleges, *inter alia*, that defendants knowingly submitted false claims to the

Medicare Program, 42 U.S.C. § 1395 *et seq.* ("Medicare"), a federally funded health insurance

program for people ages 65 and older and for certain people with disabilities (ECF 30, ¶ 11), and

to the Department of Defense TRICARE health insurance program.  *Id.* ¶ 20.[1]  According to the

Relator, defendants knowingly submitted false claims to Medicare and TRICARE for certain

compound drugs, by substituting a less expensive drug for a more expensive drug; by billing for

medication that was not provided; by overcharging for certain medication; and by committing

violations of the Anti-Kickback Statute, 42 U.S.C. § 13209-7b(b).  *See* ECF 30, ¶¶ 28-43.

---

[1] TRICARE was formerly known as the Civilian Health & Medical Program of the
Uniformed Services ("CHAMPUS").  *See* 32 C.F.R. § 199.17.

Defendants have moved to dismiss (ECF 38), pursuant to Fed. R. Civ. P. 12(b)(6).  The motion is supported by a memorandum of law (ECF 38-1) (collectively, the "Motion") and several exhibits.  ECF 38-2 to ECF 38-9.  They argue that portions of the Relator's *qui tam* action are barred by the public disclosure provision of the FCA, 31 U.S.C. § 3730(e)(4).  In addition, defendants contend that, in light of the heightened pleading requirements applicable to fraud claims under Fed. R. Civ. P. 9(b), the Amended Complaint fails to state a claim on which relief can be granted.  And, defendants assert that because they have paid restitution to the government in connection with Blair's criminal case, ELH-19-410, the Amended Complaint must be dismissed under the doctrine of res judicata.

Defendants have also moved to seal two of the exhibits submitted with their Motion.  ECF 39 (the "Sealing Motion").  And, they have asked the Court to take judicial notice of the exhibits attached to the Motion.  ECF 40 (the "Judicial Notice Motion").

The Relator opposes the Motion (ECF 47, the "Opposition"), supported by one exhibit. ECF 47-1.  Defendants have replied.  ECF 50.  On September 22, 2022, the Relator sought leave to file a surreply.  ECF 51.  That motion was granted.  ECF 53.  The surreply is docketed at ECF 54.

No hearing is necessary to resolve the motions.  *See* Local Rule 105.6.  For the reasons that follow, I shall grant the Judicial Notice Motion.  But, I shall deny the Motion and the Sealing Motion.

## I.      Background

The Relator filed his initial Complaint (ECF 1), with exhibits, on August 15, 2017, on behalf of the United States.  Pursuant to the FCA, the suit was filed under seal to afford the United States an opportunity to decide whether to intervene.  *See* 31 U.S.C. § 3730(b)(2).  About two

years later, on August 27, 2019, while the government was still considering whether to intervene, a federal grand jury returned a ten-count Indictment against Blair. ECF 38-4; *see United States v. Matthew Blair*, ELH-19-410, ECF 1. Then, on March 3, 2020, Blair was charged in a thirty-six count Superseding Indictment. ELH-17-2335, ECF 38-5; ELH-19-410, ECF 20.

On December 3, 2021, Blair entered a plea of guilty to Count Thirty-One of the Superseding Indictment (ELH-17-2335, ECF 38-5; ELH-19-410, ECF 178), which charged him with payment of illegal remunerations, in violation of 42 U.S.C. § 1320a-7b(b)(2)(A). The plea was tendered pursuant to a Plea Agreement (ELH-19-410, ECF 181) under Fed. R. Crim. P. 11(c)(1)(C). *Id.* ¶ 9; *see also* ELH-17-2335, ECF 38-6. In accordance with the C plea, Blair was sentenced on February 10, 2022 (*id.*, ECF 188) to a term of twelve months and one day of incarceration and ordered to pay restitution of $3,176,470.83. *See* ELH-17-2335, ECF 38-7; ELH-19-410, ECF 189 (Judgment).

As to the qui tam case, the government apparently undertook a lengthy investigation to determine whether to intervene. *See* ELH-17-2335, ECF 4; ECF 6; ECF 8; ECF 10; ECF 13; ECF 16; ECF 18; ECF 20; ECF 22; ECF 24; ECF 26. In that time, the case was effectively stayed. However, by order of October 15, 2019, the Court partially lifted the seal to permit the government to disclose the case to defendants. ECF 15. Eventually, on May 2, 2022, the United States declined to intervene. ECF 28. Soon after, on May 4, 2022, the civil suit was unsealed. ECF 29. And, on May 11, 2022, the Relator filed an Amended Complaint (ECF 30), which is the operative pleading.

As noted, the suit is premised on the Federal False Claims Act, 31 U.S.C. §§ 3729(a)(1)(A) and (a)(1)(B). It provides, in part, that "any person who—(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or] (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim . . . is

liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 . . . plus 3 times the amount of damages which the Government sustains because of the act of that person."

The FCA protects the government fisc by "impos[ing] civil liability on persons who knowingly submit false claims for goods and services to the United States." *United States ex rel. Beauchamp v. Academi Training Center*, 816 F.3d 37, 39 (4th Cir. 2016); *see, e.g., United States ex rel. Citynet, LLC v. Gianato*, 962 F.3d 154, 157 (4th Cir. 2020) (complaint alleged that defendant billed the federal government for "material and labor it did not provide, and for [projects] that were not constructed"); *Affinity Living Grp., LLC v. StarStone Specialty Ins. Co.*, 959 F.3d 634, 636 (4th Cir. 2020) (complaint alleged that defendant "submitted reimbursement claims for resident services that were never provided"); *see also United States ex rel. Rostholder v. Omnicare, Inc.*, 745 F.3d 694, 700 (4th Cir. 2014), *cert. denied*, 574 U.S. 819 (2014). Under the FCA permits a private party, a whistleblower known as a relator, may sue for himself and on behalf of the government to recover damages against defendants who have caused the submission of fraudulent claims for payment injuring the public fisc. 31 U.S.C. § 3730(b)(1). As an incentive to bring such suits, a successful relator is entitled to share in the government's recovery from the defendants. *See United States ex rel. Bunk & Ammons v. Gov't Logistics N.V.*, 842 F.3d 261, 265 n.3 (4th Cir. 2016); *see also Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 404 (2011); *ACLU v. Holder*, 673 F.3d 245, 246-51 (4th Cir. 2011) (describing history and current provisions of FCA).

The Motion implicates several provisions of the FCA. They are discussed, *infra*.

## II. Factual and Procedural Summary

### A. Relator's Allegations

Schnupp, the Relator, is a Doctor of Pharmacy, a Maryland Licensed Pharmacist, and a former employee of Blair Pharmacy. ECF 30, ¶ 1. Blair Pharmacy is a Maryland corporation that previously operated as a compounding pharmacy. *Id.* ¶ 2. "Compounding" is a practice in which pharmacists combine, mix, or alter ingredients to create a customized medication for an individual patient in response to a licensed practitioner's prescription. *Id.* ¶ 24. Blair is the founder of Blair Pharmacy, as well as a director and a principal, and he serves as the Pharmacy's resident agent. *Id.* ¶ 3.

The Amended Complaint (ECF 30) alleges five separate fraud schemes in which defendants submitted false claims to Medicare and TRICARE, both of which are federally funded health insurance programs: (1) substituting less expensive Lipoderm cream for more expensive SteraBase cream, but billing for compound drugs that supposedly contained SteraBase cream (*id.* ¶ 28); (2) billing for medication not provided by billing for compound drugs that supposedly contained 360 grams of product when only 300 grams were dispensed (*id.* ¶ 29); (3) overcharging for Gabapentin by billing for compound drugs containing 10% Gabapentin when only 6% was provided (*id.* ¶ 30); (4) using pre-paid gift cards or "burner cards" to pay coinsurance and/or deductible amounts for beneficiaries to induce them to use the Pharmacy "to fill lucrative compound medication prescriptions" (*id.* ¶ 34), in violation of the Anti-Kickback statute, 42 U.S.C. § 1320a- 7b(b) (*id.* ¶¶ 34, 35); and (5) payment to independent contractors of commissions equal to 50% of reimbursements paid to the Pharmacy by Medicare and TRICARE for compounded prescriptions that were marketed by the independent contractors to physicians, in violation of the

Anti-Kickback statute.  ECF 30, ¶¶ 36-43.  Schemes 1-4 were raised in the initial Complaint (ECF 1); scheme 5 was first raised in the Amended Complaint.  ECF 30.

In regard to scheme 5, Relator alleges that Blair recruited the Atlas Group, LLC ("Atlas"), an independent contractor, to market the Pharmacy's compound drug prescriptions to physicians treating Medicare and TRICARE beneficiaries.  *Id.* ¶ 36.  Defendants entered a Distributor Agreement with Atlas in November 2014.  *Id.* ¶ 37.  It provided that Atlas would market the pharmacy's compounded drug prescriptions to physicians treating patients who received Medicare or TRICARE benefits, and use the Pharmacy to fill the prescriptions.  *Id.* ¶¶ 36, 38.  Atlas was to receive commissions equal to 50% of the reimbursements paid to Blair by Medicare and TRICARE, based on  Atlas's efforts to market the compounded pain and scar cream prescriptions filled by Blair Pharmacy.  *Id.* ¶ 37.

Further, the Amended Complaint alleges that Blair entered into similar independent contractor agreements with other independent contractors.  They included Paladin Enterprises, Brevor Medical, Stratified Solutions, and Absolute Ortho. Blair allegedly arranged to pay these independent marketers a percentage of any reimbursement monies received by the Pharmacy from the TRICARE and Medicare healthcare benefit programs.  *Id.* ¶ 42.

According to the Relator, from November 2014 until May 2015, TRICARE paid Blair Pharmacy $6,352,941.66 based upon claims that the defendants submitted to TRICARE.  *Id.* ¶ 43; *see* ECF 30-1.

### B.  The Atlas Group Civil Complaint and Blair's Criminal Proceedings

Defendants contend that before the Relator filed his initial Complaint on August 15, 2017 (ECF 1), federal criminal investigators knew about and investigated allegations contained in a civil complaint filed against defendants by Atlas on August 21, 2015, alleging that defendants breached

the 2014 Distributor Agreement. *See Atlas Group, L.L.C. v. Blair Pharmacy, Inc. and Matthew Blair*, JKB-15-2491, ECF 1; *see also* ELH-17-2335, ECF 38-1 at 10; ECF 38-9 (Atlas Complaint). Specifically, the Atlas Complaint alleged that defendants "wrongfully refused to pay Atlas the 50% gross sales commission mandated by the [Distributor] Agreement in retaliation for Atlas' raising of compliance issues arising under both Federal and Maryland healthcare fraud and abuse laws." ECF 38-9, ¶ 1.

Further, Atlas alleged that "Blair was using 'burner' cards (pre-paid credit cards that have a monetary value) to pay co-pays on behalf of patients, while posing as the at-issue patients over the phone to third-party payors, Medicare, Tricare and Medicaid." *Id.* ¶ 13. And, Atlas alleged "that Blair was potentially substituting bases on the prescriptions that were being filed." *Id.* ¶ 14. On October 14, 2015, Atlas dismissed its complaint, and the civil case was closed. *See* JKB-15-2491, ECF 4.

Defendants have submitted records in connection with Blair's criminal case, which include a search warrant issued on January 20, 2017, to Google, Incorporated (ELH-17-2335, ECF 46-1, "Google Search Warrant"), and a search warrant application for J2 Cloud Services, submitted on July 12, 2017. ECF 46-2 ("J2 Cloud Search Warrant Application"). Both exhibits contain substantial redactions.

Defendants assert that the search warrant records "disclose and describe the wide investigative scope into the compound pharmacy practices of Blair Pharmacy and Mr. Blair." ECF 38-1 at 10. The Google Search Warrant, sought, among other things, Pharmacy emails "that refer or relate to the use of burner phones or other means of payment used for co-payments for compound drugs." ECF 46-1 at 5. According to the J2 Cloud Search Warrant Application (ECF 46-2), the federal government began investigating Blair and Blair Pharmacy for fraudulent billings

of compound prescriptions in August 2015.  ECF 46-2 at 7.  The J2 Cloud Search Warrant Application also recounts the allegations in the Atlas Complaint.  *Id.* at 11-13.

As noted, the Relator filed his initial Complaint on August 15, 2017.  ECF 1.  As a former employee of Blair Pharmacy, Schnupp asserted that his allegations are based "upon his own direct and independent knowledge, and he is the original source of the information[.]"  *Id.* ¶ 1.  The Relator also alleged that, pursuant to 31 U.S.C. § 3730(b)(2), he previously served a copy of the Complaint, "together with written disclosure of substantially all material evidence and information in his possession, on the United States pursuant to Rule 4(d)(4) of the Federal Rules of Civil Procedure."  *Id.* ¶ 57.  The Relator renewed this assertion in the Amended Complaint.  ECF 30, ¶ 67. But, the Relator never submitted the written disclosure statement as an exhibit to the suit. Instead, it is included as an exhibit to his Opposition.  ECF 47-1 (the "Disclosure Memorandum").

The Disclosure Memorandum is dated August 14, 2017, and stated that the "document and its attachments [were] voluntarily provided to the United States in connection with the filing of an action under the Federal False Claims Act, 31 U.S.C. §§ 3729 *et seq*. for false claims submitted to the Medicare and TRICARE Programs."  ECF 47-1 at 1-2.  According to the Disclosure Memorandum, "Relator did not come forward sooner because he feared retaliation and loss of his job."  *Id.* at 7.  The Disclosure Memorandum included a copy of the Atlas Complaint.  *Id.* at 6, 10-16.

Defendants note that the Superseding Indictment contains allegations of scheme 1 (ECF 38-5, ¶ 36), scheme 2 (*Id.* ¶ 27), scheme 4 (*Id.* ¶ 35), and scheme 5 (*Id.* ¶ 21).  However, the original Indictment did not allege the five schemes in the Relator's Amended Complaint.

As mentioned, on December 3, 2021, Blair entered a plea of guilty to Count 31 of the Superseding Indictment.  Case ELH-19-410, ECF 178.  Pursuant to the Plea Agreement (*id.*, ECF

181; *see also* ELH-17-2335, ECF 38-6), Blair pleaded guilty to payment of illegal renumerations, in violation of 42 USC § 1320a-7b(b)(2)(A), commonly known as the Anti-Kickback statute. The Plea Agreement also provided for "entry of a restitution order for the financial losses suffered by the victim, TRICARE," in the amount of $3,176,470.83. ECF 17-2335, ECF 38-6, ¶ 19. And, under Fed. R. Crim. P. 11(c)(1)(C), the parties agreed to a sentence of incarceration of 12 months and one day. *Id.* ¶ 9. The government also agreed to dismiss the remaining charges at sentencing. *Id.* ¶ 11. The Plea Agreement included as Attachment A a lengthy Stipulation of Facts. *Id.* at 15-21.

Sentencing was held on February 10, 2022. ELH-19-410, ECF 188. Pursuant to the terms of the Plea Agreement (*id.*, ECF 181), the Court sentenced Blair to a period of incarceration of twelve months and one day, and ordered payment of restitution in the sum of $3,176,470.83. *Id.*, ECF 189; *see also* ELH-17-2335, ECF 38-7. Blair paid, settled, and satisfied the restitution judgment as of June 2022. ELH-17-2335, ECF 38-8; ELH-19-410, ECF 194.

### C.  The Pending Motions

Defendants have moved to dismiss the Relator's Amended Complaint on three grounds. First, defendants contend that "fraudulent schemes 1, 4 and 5 are barred by the public disclosure bar" in the FCA, 31 U.S.C. § 3730(e)(4). ELH-17-2335, ECF 38-1 at 16-23. Second, defendants argue that the Amended Complaint fails to plead fraud with particularity, as required by Fed. R. Civ. P. 9(b). *Id.* at 23-26. And, defendants assert that because they have paid restitution to the government in connection with Blair's criminal case, *United States v. Matthew Blair*, ELH-19-410, the Amended Complaint must be dismissed under the doctrine of res judicata. *Id.* at 26-29.

In support of the Motion, defendants have submitted as exhibits various court papers filed in connection with Blair's criminal case, which include search warrant records. ECF 38-4 to ECF

38-9; ECF 46-1; ECF 46-2.  Defendants ask the Court to take judicial notice of the exhibits, pursuant to Fed. R. Evid. 201.  ECF 40.  Additionally, because the search warrant records provided to Blair in discovery in his criminal case are subject to a protective order, defendants have asked the Court to seal those records, pursuant to Local Rule 105.11.  ECF 39.

### III.  The Sealing Motion

The search warrant records (ECF 46-1; ECF 46-2) are subject to an Amended Protective Order in *United States v. Matthew Blair*, ELH-19-410, ECF 172 (the "Protective Order").  Notably, Section II(4) of the Protective Order, titled "Use and Disclosure of Protected Information and Materials," states, *id.* at 3:

> The Parties may use these documents only for purposes of the current litigation, and may disclose them to non-parties to this litigation only as needed for the litigation.  Counsel for the Parties must secure the protected information in a manner where it would not be available to anyone outside of the government or defense counsel's office.

Understandably, because the search warrant records (ELH-17-2335, ECF 46-1; ECF 46-2) are subject to the Protective Order in the Blair criminal case, defendants have moved for authorization to use the records, under seal, in support of the Motion.  ECF 37.  The Court granted the requested authorization on August 4, 2022.  ECF 44.  Defendants have also moved to retain sealing of the exhibits.  *See* ECF 39.

The common law presumes that the public and the press have a qualified right to inspect all judicial records and documents. *Doe v. Pub. Citizen*, 749 F.3d 246, 265 (4th Cir. 2014) (citations omitted); *In re United States for an Order pursuant to 18 U.S.C. § 2603(D)*, 707 F.3d 283, 290 (4th Cir. 2013); *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004), *cert. denied*, 544 U.S. 949 (2005); *In re Washington Post Co.*, 807 F.2d 383, 390 (4th Cir. 1986); *see also Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 n.17 (1980) (plurality

opinion) ("[H]istorically both civil and criminal trials have been presumptively open."). However, the common law right of access can be abrogated in "unusual circumstances," where "countervailing interests heavily outweigh the public interests in access." *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988); *see Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978).

The common law right of access is buttressed by a "more rigorous" right of access under the First Amendment, which applies to a more narrow class of documents, but is more demanding of public disclosure. *Rushford*, 846 F.2d at 253. If a court record is subject to the First Amendment right of public access, the record may be sealed "only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest." *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988) (citing *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1984)).

In addition to the common law and the First Amendment, the Local Rules provide a complementary layer of protection for the public interest in disclosure and access. Local Rule 105.11 requires a party seeking to seal documents to provide the court with "(a) proposed reasons supported by factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protection."

The First Amendment "right of access attaches to documents and materials filed in connection with a summary judgment motion." *Doe*, 749 F.3d at 267 (citing *Rushford*, 846 F.2d at 253). Presumably, the same standard applies to the documents submitted with a motion to dismiss. Accordingly, the more expansive First Amendment right of public access attaches to the exhibits filed in connection with the Motion. ECF 38.

Notably, a party does not have the right to require the court to seal judicial records. *See Rushford*, 846 F.2d at 254 ("The reasons for granting a protective order to facilitate pre-trial discovery may or may not be sufficient to justify proscribing the First Amendment right of access to judicial documents."). In other words, the parties cannot justify a sealing request merely because they have designated an exhibit as confidential under a protective order. Additionally, the mere fact that records may be controversial, personal, or embarrassing does not alone justify sealing those records form public inspection. *See, e.g.*, *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) ("The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records.").

"When presented with a sealing request," the "right-of-access jurisprudence requires that a district court first 'determine the source of the right of access with respect to each document, because only then can it accurately weigh the competing interests at stake.'" *Doe*, 749 F.3d at 266 (quoting *Stone*, 855 F.2d at 181).

In other words, just as a party must furnish the court with concrete reasons for a sealing request, a court must address the specific justifications for a sealing order. "To seal a document, the district court must (1) give the public adequate notice of a request to seal and a reasonable opportunity to challenge it, (2) consider less drastic alternatives to sealing, and (3) if it decides to seal, state the reasons, supported by specific findings, behind its decision and the reasons for rejecting alternatives to sealing." *Gonzalez*, 985 F.3d at 376 (citing *In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984)).

In my view, defendants have not adequately explained why alternatives to sealing, such as redacting sensitive information, are not sufficient. In fact, the exhibits are already redacted. And,

with the redactions, the exhibits do not appear to contain any information that is so sensitive or otherwise personal as to require their sealing. *See Visual Mining, Inc. v. Ziegler*, PWG-12-3227, 2014 WL 690905, at *5 (D. Md. Feb. 21, 2014) (denying a motion to seal when the only justification was that the documents are "confidential" under a court-approved protective order); *Under Armour, Inc. v. Body Armor Nutrition, LLC*, JKB-12-1283, 2013 WL5375444, at *9 (D. Md. Aug. 23, 2013) (denying motions to seal where "[t]he parties . . . provided only the barest support for the motions to seal, usually relying on the protective order issued in th[e] case" and failed to "provide 'specific factual representations' to justify their arguments"); *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 576 n.18 (D. Md. 2012) ("In their motion to seal, defendants state only that they seek to seal the exhibits pursuant to the confidentially order, an explanation insufficient to satisfy the 'specific factual representations' that Local Rule 105.11 requires.").

Accordingly, I shall deny the Sealing Motion, without prejudice to the right of any party to renew the motion within fourteen days of the date of docketing of the attached Order, in compliance with Local Rule 105.11. During this period, the exhibits shall remain sealed. And, if any party believes that the current redactions of a particular exhibit do not provide sufficient protection as to that exhibit, the party shall, within the time provided, clearly articulate the reasons that justify further redactions or complete sealing. If no such request is filed, I shall assume the parties do not oppose the unsealing of the redacted exhibits, and I will direct the Clerk to lift the seal.

## IV.   The Motion

### A.  Standards of Review

#### 1.  Fed. R. Civ. P. 12(b)(6)

Defendants move to dismiss under Fed. R. Civ. P. 12(b)(6).  ECF 38.  A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6).  *Fessler v. Int'l Bus. Machs. Corp.*, 959 F.3d 146, 152 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom., McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." *See Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  *See Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002).  That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Fauconier v. Clarke*, 996 F.3d 265, 276 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan*, 918 F.3d at 317-18; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2).  *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam).  But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).  If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient.  *Twombly*, 550 U.S. at 555.  "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim for relief.  *Iqbal*, 556 U.S. at 678.  Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts]

in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012). But, "[m]ere recitals of a cause of action, supported only by conclusory statements, are insufficient to survive" a Rule 12(b)(6) motion. *Morrow v. Navy Federal Credit Union*, ___ Fed. App'x ___, 2022 WL 2526676, at *2 (4th Cir. July 7, 2022).

In connection with a Rule 12(b)(6) motion, courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (citation omitted); *see Bing v. Brio Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of*

*the complaint.'"*   *Goodman,* 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst,* 4 F.3d at 250).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'"   *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Ordinarily, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]"   *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed. v. Town of Gilbert*, 576 U.S. 155 (2015); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment.   *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits."   *Goines*, 822 F.3d at 166 (citation omitted); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it."   *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d

449, 455 (7th Cir. 1998)).  Of import here, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167.  Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, __ U.S. __, 138 S. Ct. 558 (2017); *Oberg*, 745 F.3d at 136; *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012).  To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).  *See also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

In addition, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). However, under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts only if

they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

The Amended Complaint is supported by five exhibits.  ECF 1-1 to ECF 1-4; ECF 30-1. These exhibits are expressly referenced in the Amended Complaint, and defendants do not challenge their authenticity.  Accordingly, I may consider these documents at this stage.

In connection with the filing of the initial Complaint, the Relator stated that he provided a Disclosure Memorandum to the government, pursuant to the 31 U.S.C. § 370(b)(2).  *See* ECF 1, ¶ 57; ECF 47-1.  The Relator renewed that assertion in regard to the Amended Complaint.  ECF 30, ¶ 67.  But, the Relator never submitted the Disclosure Memorandum as an exhibit to either suit. Instead, he submitted it as an exhibit to the Opposition (ECF 47).  Therefore, defendants contend that the Court should not consider the Disclosure Memorandum, stating it is "neither integral nor self-authenticating."  ECF 50 at 7.

In my view, the Disclosure Memorandum is incorporated into the Amended Complaint or integral to it, because it is referenced explicitly in the Amended Complaint.  See ECF 30, ¶ 67. Moreover, the Disclosure Memorandum is foundational to the Relator's FCA claim.  In particular, the FCA imposes mandatory filing and service requirements on *qui tam* relators.  The statute provides: "A copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government pursuant to Rule 4(d)(4) of the Federal Rules of Civil Procedure."  31 U.S.C. § 370(b)(2).  Therefore, in order for the Relator to pursue the qui tam action, he was required to provide a disclosure memorandum.  In addition, the Disclosure Memorandum is central to the Relator's claim that he is an original source of the information on which the *qui tam* action is based.

Accordingly, I conclude that I may consider the Disclosure Memorandum without converting the Motion to one for summary judgment. *See United States ex rel. Brown v. Pfizer, Inc.*, No. 05-6795, 2016 WL 807363, at *6 (E.D. Pa. Mar. 1, 2016) (considering a relator's disclosure memorandum filed as an exhibit to relator's response to defendant's motion to dismiss a *qui tam* complaint).

As noted, the Judicial Notice Motion pertains to eight exhibits submitted with the Motion that concern Blair's criminal case, *United States v. Matthew Blair*, ELH-19-410. *See* ELH-17-2335, ECF 38-4 to 38-9; ECF 46-1; ECF 46-2. In the context of a motion to dismiss, "[a] court may take judicial notice of docket entries, pleadings and papers in other cases without converting a motion to dismiss into a motion for summary judgment." *Brown v. Ocwen Loan Servicing, LLC*, PJM-14-3454, 2015 WL 5008763, at *1 n.3 (D. Md. Aug. 20, 2015), *aff'd*, 639 F. App'x. 200 (4th Cir. 2016); *see also Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n.1 (4th Cir. 1990) (holding that a district court may "properly take judicial notice of its own records"). Therefore, I shall grant the Judicial Notice Motion.

### 2. Fed. R. Civ. P. 9(b)

A suit brought under the False Claims Act sounds in fraud, and thus is "subject to Federal Rule of Civil Procedure 9(b), which requires that claimants plead fraud with particularity." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783-84 (4th Cir. 1999). Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Under the rule, a plaintiff alleging claims that sound in fraud "'must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *United States*

*ex rel. Nathan v. Takeda Pharms. N.A., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (citation omitted);
*United States ex rel. Owens v. First Kuwaiti Gen'l Trading & Contracting Co.*, 612 F.3d 724, 731
(4th Cir. 2010); *see also Harrison*, 176 F.3d at 784.

In other words, "'Rule 9(b) requires plaintiffs to plead the who, what, when, where, and
how: the first paragraph of any newspaper story.'"  *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346,
353 (8th Cir. 2011) (citation omitted).  "A 'complaint fails to meet the particularity requirements
of Rule 9(b) when a plaintiff asserts merely conclusory allegations of fraud against multiple
defendants without identifying each individual defendant's participation in the alleged fraud.'"
*Kimberlin v. Hunton & Williams LLP*, GJH-15-723, 2016 WL 1270982, at *7 (D. Md. Mar. 29,
2016) (citing *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250 (D. Md. 2000)).

Rule 9(b) serves several purposes.  In *Harrison*, 176 F.3d 776, the Court said, *id.* at 784
(citation omitted):

> "First, the rule ensures that the defendant has sufficient information to formulate a
> defense by putting it on notice of the conduct complained of . . . .  Second, Rule
> 9(b) exists to protect defendants from frivolous suits.  A third reason for the rule is
> to eliminate fraud actions in which all the facts are learned after discovery.  Finally,
> Rule 9(b) protects defendants from harm to their goodwill and reputation."

The "'clear intent of Rule 9(b) is to eliminate fraud actions in which all the facts are learned
through discovery after the complaint is filed.'"  *Id.* at 789 (citation omitted); *see United States.
ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 380 (4th Cir. 2008) ("[I]f allowed to
go forward, Relators' FCA claim would have to rest primarily on facts learned through the costly
process of discovery.  This is precisely what Rule 9(b) seeks to prevent.").

However, by its plain text, Rule 9(b) permits general averment of aspects of fraud that
relate to a defendant's state of mind.  "A court should hesitate to dismiss a complaint under Rule
9(b) if the court is satisfied (1) that the defendant has been made aware of the particular

circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Id.* Moreover, Rule 9(b) is "less strictly applied with respect to claims of fraud by concealment" or omission of material facts, as opposed to affirmative misrepresentations, because "an omission 'cannot be described in terms of place, contents of the misrepresentation or the identity of the person making the misrepresentation." *Shaw v. Brown & Williamson Tobacco Corp.*, 973 F. Supp. 539, 552 (D. Md. 1997) (quoting *Flynn v. Everything Yogurt*, HAR-92-3421, 1993 WL 454355, at *9 (D. Md. Sept. 14, 1993)).

Several cases have clarified Rule 9(b)'s "who," "what," and "when" requirements in the context of the FCA. As to "who," in FCA cases where the defendant is a corporate entity, Rule 9(b) requires the plaintiff to name the individuals involved in the allegedly fraudulent conduct. *See, e.g.*, *United States ex rel. Robinson v. Northrop Corp.*, 149 F.R.D. 142, 145 (N.D. Ill. 1993) (stating that Rule 9(b) requires a plaintiff asserting a FCA claim against a corporate defendant to specify the "identity and/or role of the individual employee involved in the alleged fraud."). With respect to "what," a plaintiff must show a link between allegedly wrongful conduct and a claim for payment actually submitted to the government. *See, e.g.*, *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1311 (11th Cir. 2002), *cert. denied*, 537 U.S. 1105 (2003) (noting that Rule 9(b) "does not permit a False Claims Act plaintiff merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted[,] or should have been submitted to the Government."). Finally, as to "when," Rule 9(b) requires a plaintiff to allege with particularity the dates of the supposed fraudulent conduct. *See, e.g.*, *United States ex rel. Cericola v. Fed. Nat'l Mortg. Ass'n*, 529 F. Supp. 2d 1139, 1146 (C.D.C al. 2007) (stating that

22

Rule 9(b)'s requirements were not fulfilled when, among other deficiencies, a plaintiff's complaint alleged that FCA violations occurred between 1995 and 1998 but did not allege any specific dates).

## B. Discussion

### 1. Public Disclosure Bar

Defendants contend that "fraudulent schemes 1, 4 and 5 are barred by the public disclosure bar" in the FCA, 31 U.S.C. § 3730(e)(4). ECF 38-1 at 16-23.

As mentioned, in order to prevent fraud that might otherwise evade detection and to supplement government enforcement, the FCA permits a private individual, *i.e.*, a relator, to file a civil lawsuit on behalf of himself and the government against those who have defrauded the federal government. 31 U.S.C. § 3730(b)(1). The United States can elect to intervene in the relator's action. *Id.*, § 3730(b)(2), (4). To encourage such suits, the statute allows the relator to collect a portion of the recovery as a reward. *See* 31 U.S.C. § 3730(b); § 3730(d)(2).

But, a *qui tam* suit is of no help to the government if the alleged fraud has already been uncovered. *Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 294-95 (2010). Since enacting the FCA in 1863, Congress has repeatedly amended the statute in an effort "to strike a balance between encouraging private persons to root out fraud and stifling parasitic lawsuits' in which a relator, instead of plowing new ground, attempts to free-ride by merely reiterating previously disclosed fraudulent acts.'" *Beauchamp*, 816 F.3d at 39 (quoting *Graham Cty. Soil & Water*, 559 U.S. at 295).

One such mechanism is the FCA's public disclosure bar. *See* 31 U.S.C. § 3730(e)(4)(A) (1986), amended by the Patient Protection & Affordable Care Act, Pub. L. No. 111-148, § 10104(j)(2), 124 Stat. 119, 901-02 (2010) ("Affordable Care Act"); *see also State Farm Fire & Cas. Co. v. United States ex rel. Rigsby*, 580 U.S. 39, 44 (2016) (describing the public disclosure

bar as a threshold that a relator must clear in order to proceed on a *qui tam* suit). The provision "disqualifies private suits based on fraud already disclosed in particular settings—such as hearings, government reports, or news reports—unless the relator meets the definition of an 'original source' under the FCA." *Beauchamp*, 816 F.3d at 39 (quoting 31 U.S.C. § 3730(e)(4)); *see United States ex rel. Siller v. Becton Dickenson & Co*., 21 F.3d 1339, 1347 (4th Cir. 1994).

In 2010, Congress amended the public disclosure bar as part of the Affordable Care Act. *See* Pub. L. No. 111-148, § 10104(j)(2), 124 Stat. 119, 901-02 (2010). Effective March 23, 2010, the operative public disclosure provision states, 31 § 3730(e)(4)(A):

> The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed—
>
> (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;
>
> (ii) in a congressional, Government[] Accountability Office, or other Federal report, hearing, audit, or investigation; or
>
> (iii) from the news media,
> unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

The Fourth Circuit has characterized the 2010 change to the public disclosure bar as "significant." *Beauchamp*, 816 F.3d at 40. It also said, *id.*: "Post-amendment, the public-disclosure bar is a grounds for dismissal—effectively, an affirmative defense— rather than a jurisdictional bar."

Moreover, the Fourth Circuit has explained that the amendment also "changed the required connection between the [relator's] claims and the public disclosure." *Id.*. Previously, the public disclosure bar previously foreclosed qui tam claims only when the relator's suit was "'based upon' a qualifying public disclosure, a standard" that the Court "interpreted to mean that the plaintiff must have 'actually derived' his knowledge of the fraud from the public disclosure." *Id.* As

amended, however, "the public-disclosure bar no longer requires actual knowledge of the public disclosure, but instead applies if substantially the same allegations or transactions were publicly disclosed.'" *Beauchamp*, 816 F.3d at 40 (quoting *May*, 737 F.3d at 917).

The "original source" definition was also amended in 2010.  Under § 3730(e)(4)(B), it includes an individual who either:

> (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.

The parties agree that because the false claims alleged in this case occurred after March 23, 2010, the post-2010 version of the public disclosure bar, 31 U.S.C. § 3730(e)(4), controls.  ECF 38-1 at 16; ECF 47 at 24; *see also United States ex rel. Maharaj v. Est. of Zimmerman,* 427 F. Supp. 3d 625, 648 (D. Md. 2019) (applying the post-2010 version of the public disclosure bar to conduct occurring after March 23, 2010).

The public disclosure bar requires the Court to ask three questions: (1) is there a qualifying public disclosure? (2) if yes, is the disclosed information the basis of the relator's suit? (3) and, if so, is the relator the original source of that information? *United States ex rel. Wilson v. Graham Cty. Soil & Water Conservation Dist.*, 528 F.3d 292, 308 (4th Cir. 2008), *rev'd on other grounds*, 559 U.S. 280 (2010); *see United States ex rel. Moore v. Cardinal Fin. Co., L.P.*, CCB-12-1824, 2017 WL 1165952, at *10 (D. Md. Mar. 28, 2017); *United States ex rel. Davis v. Prince*, 753 F. Supp. 2d 569, 579 (E.D. Va. 2011).

As indicated, defendants contend that three of the Relator's alleged claims (schemes 1, 4, and 5) are barred under the FCA because the factual allegations underlying the civil suit were publicly disclosed and the Relator is not the original source of those disclosures.  ECF 38-1 at 16-

23.  In particular, defendants assert that "schemes 1 and 4 were first raised in the Relator's initial Complaint filed on August 15, 2017, while months earlier federal criminal investigators publicly disclosed in search warrant applications filed with this Court that they were aware of the allegations in the Atlas Group's Complaint and search warrants were served on Google for Defendants' use of gift cards or 'burner cards' to make patient co-pays in violation of the anti-kickback statute."  *Id*. at 18.

Defendants argue that the "qualifying public disclosures for these allegations are the search warrant records filed in this Court, as well as the Atlas Group Complaint known to and investigated by federal criminal investigators."  ECF 38-1 at 22.  In regard to the search warrant records, defendants claim that these disclosures "involved officials in the federal executive branch, namely, the U.S. Department of Defense; judicial officers and employees; and third-party witnesses."  ECF 38-1 at 23.

As a threshold matter, the bar does not apply unless the fraud alleged by the Relator was disclosed to the public in a manner enumerated in the statute.  *See United States v. Meridian Senior Living, LLC*, 5:16-CV-410-BO, 2018 WL 1463347, at *8 (E.D.N.C. Mar. 23, 2018); *Davis*, 753 F. Supp. 2d at 579.  And, the disclosure "must be a disclosure of fraudulent 'allegations or transactions' and not merely a disclosure of information."  *See A1 Procurement, LLC v. Thermcor, Inc.*, 2:15-00015, 2017 WL 9478501, at *8 (E.D. Va. Apr. 4, 2017) (*citing United States ex rel. Saunders v. Unisys Corp.*, 1:12-00379, 2014 WL 1165869, at *1, *6 (E.D. Va. Mar. 21, 2014)).

The Fourth Circuit has held that "a 'public disclosure' requires that there be some act of disclosure *outside of the government*."  *United States ex rel. Wilson v. Graham Cty. Soil & Water Conservation Dist*., 777 F.3d 691, 697 (4th Cir. 2015) (emphasis in original) (cleaned up) (quoting *United States ex rel. Rost v. Pfizer, Inc.*, 507 F.3d 720, 730 (1st Cir. 2007), *overruled on other*

*grounds by Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662 (2008)).  The Fourth Circuit reasoned that by "specifying that a 'disclosure' must be 'public,' Congress indicated that only disclosures made to the public at large or to the public domain had jurisdictional significance." *Wilson*, 777 F.3d at 696.  "The government," said the Court, "is not the equivalent of the public domain."  *Id.* at 697.

Defendants maintain that "there have been disclosures outside the government, namely search warrants issued to Google and J2 Cloud Services."  ECF 38-1 at 23.  However, in conjunction with the Google Search Warrant, U.S. Magistrate Judge A. David Copperthite issued an Order dated January 20, 2017.  ECF 46-1 at 7.  The Order required that, "under Title 18, United States Code, Section 2705(b), the recipient of the above-referenced warrant shall not disclose the existence of the attached warrant, or this Order of the Court," except to receive "legal advice."  *Id.* And, as noted by the Relator, there is nothing to indicate that the J2 Cloud Warrant Application was disseminated to anyone except U.S. Magistrate Judge Beth Gesner.  ECF 47 at 31 n.13. Moreover, in Paragraph 47 of the affidavit in support of the search warrant application, the affiant requested "that the Court order that all papers in support of this applications, including the affidavit and search warrants, be sealed until further order of the Court."  *See* ECF 46-2, ¶ 47.

Defendants argue that, once a notice period not to exceed one year expires, "search warrant recipients like Google and J2 Cloud Services are free to disclose the warrant to the general public." ECF 50 at 6; *see* ECF 50-1 at 3 ("Barring exceptional circumstances, prosecutors filing § 2705(b) applications may only seek to delay notice for one year or less.").  But, 18 U.S.C. § 2705 refers to and is governed by the required disclosure procedures of customer communications or records, as outlined in § 2703.  *See* 18 U.S.C. § 2705(a)(1).  And, § 2703 relates to notice to the "subscriber

or customer whose communications are being sought[.]"  18 U.S.C. § 2703(h).  Notably, Judge
Copperthite did not delay notice to Blair.  *See* ECF 46-1 at 2.

     The Sixth's Circuit decision in *United States v. Chattanooga-Hamilton County Hosp.
Auth.*, 782 F.3d 260, 267 (6th Cir. 2015), is informative.  There, the defendant argued that "there
was a prior public disclosure of fraud in the administrative audit and investigation to others outside
the government who were 'strangers to the fraud.'"  *Id.* at 269.  In particular, the defendant pointed
to "disclosures between OIG and AdvanceMed [a private corporation] and between [the defendant]
and the Deloitte auditors," employees of a private company engaged prior to the *qui tam* lawsuit
to conduct an internal audit of fraud allegations.  *Id.*  The Sixth Circuit found that neither disclosure
"constituted a public disclosure of fraud that would trigger the public disclosure bar."  *Id.*
Although AdvanceMed was a private corporation, no qualifying public disclosure resulted because
the company received the information "for the purpose of acting on behalf of the government as
part of the administrative audit and investigation" and because the disclosures to AdvanceMed
"were confidential and remained so until after [the *qui tam*] action was filed."  *Id.*  Similarly, the
Court rejected the argument that disclosure of information to seven Deloitte auditors constituted a
public disclosure, reasoning that "it cannot be said that they were under no obligation to keep the
information confidential."  *Id.* at 270.

     More recently, the Second Circuit followed the same reasoning to conclude that
"disclosures made pursuant to a confidential government investigation or audit do not constitute
'public' disclosures."  *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 126 (2d. Cir. 2021).
The Court noted that the information disclosed outside the government during its investigation was
"designated 'CONFIDENTIAL' or 'HIGHLY CONFIDENTIAL,' suggesting that any disclosures
to [the defendant company's] employees in connection with the government audits and

investigations were made under an obligation to keep such information secret." *Id.* at 125.  In its view, such disclosures were not qualifying public disclosures under 31 U.S.C. § 3730(e)(4)(A). *Id.* at 126.

The same analysis applies here, and precludes a finding that the confidential search warrant records constitute public disclosures.  Although Google and J2 Cloud Services are private companies, both were under an obligation to keep the information confidential.  Moreover, the records were products of an ongoing criminal investigation by the government.  They were under seal and remained so until after the Relator filed his *qui tam* action.  Under such circumstances, the disclosures are more "private" than "public."  *See id.* at 270; *see also United States ex rel. Schumer v. Hughes Aircraft Co.*, 63 F.3d 1512, 1518 (9th Cir. 1995) ("information that was 'disclosed in private' has not been publicly disclosed").

Defendants also contend that "the Atlas Group Complaint known to and investigated by federal criminal investigators" constitutes a public disclosure under 31 U.S.C. § 3730(e)(4)(A). ECF 38-1 at 22.  Prior to 2010, the Fourth Circuit said that a civil complaint constitutes a "hearing" under the public disclosure bar.  *Siller*, 21 F.3d at 1350–51 (collecting cases).  However, "[t]he 2010 amendment to the FCA makes clear that a federal civil or criminal hearing qualifies for public disclosure status only if it is one 'in which the government or its agent is a party[.]'" *United States ex rel. Beauchamp v. Academi Training Ctr.*, 933 F. Supp. 2d 825, 844 n.36 (E.D. Va. 2013) (quoting 31 U.S.C. § 3730(e)(4)(A)(i)), *rev'd on other grounds*, 816 F.3d 37 (4th Cir. 2016).

The Atlas Complaint was a lawsuit between private parties.  Therefore, it cannot qualify as a public disclosure under U.S.C. § 3730(e)(4)(A)(i).  *See United States ex rel. Daugherty v. Tiversa Holding Corp.*, 342 F. Supp. 3d 418, 425 (S.D.N.Y. 2018) (stating that "actions between private parties" . . . "cannot generate public disclosures within the meaning of the current public disclosure

bar."); *United States ex rel. Paulos v. Stryker Corp.*, 11-0041-CV-W-ODS, 2013 WL 2666346 (D.

Mo. June 12, 2013) (after the 2010 amendments, "the only lawsuits that can constitute public

disclosure under the statute are suits 'in which the Government or its agent is a party.'").

Defendants suggest that the Atlas Complaint might qualify as an "other Federal . . .

hearing" under U.S.C. § 3730(e)(4)(A)(ii), which arguably omits the requirement that the hearing

be one in which "the government or its agent is a party." ECF 38-1 at 22. In their reply, defendants

cite *United States ex rel. Silbersher v. Allergon,* 46 F.4th 991, 998 (9th Cir. 2022), in which the

Ninth Circuit ruled that an *ex parte* patent prosecution qualified as an "other Federal . . . hearing"

within the meaning of 31 U.S.C. § 3730(e)(4)(A)(ii). *See* ECF 50 at 3-4.

The Ninth Circuit explained in *Silbersher*, 46 F.4th at 997-99 (emphasis in original):

> Two features of prong (ii) help us determine whether an *ex parte* patent
> prosecution is an "other Federal . . . hearing." First, "hearing" is listed as part of a
> string of four nouns: "report, hearing, audit, or investigation." We take into account
> the canon of *noscitur a sociis*, whereby "a word is known by the company it keeps."
> *Yates v. United States,* 574 U.S. 528, 543, 135 S. Ct. 1074, 191 L. Ed. 2d 64 (2015).
> All four nouns apply to a fact-finding or investigatory process "to *obtain*
> information," *see Schindler,* 563 U.S. at 410, and together indicate that Congress
> intended for prong (ii) to cover a wide array of investigatory processes. This
> conclusion is reinforced by the fact that prong (ii) begins with Congress and the
> Government Accountability Office, which often seek to obtain information by way
> of a hearing, audit, or investigation and issue those findings in a report.
>
> The second feature of prong (ii) is that all four of these nouns, including
> hearing, are modified by both "other" and "Federal." An *ex parte* patent
> prosecution is clearly "Federal": the PTO is an agency of the U.S. Department of
> Commerce. To determine the meaning of "other," we look to look to [sic]
> dictionaries. *See id.* at 407-08 (looking to dictionaries to help determine the
> meaning of "report" in the public disclosure bar). "Other" means distinct from that
> just mentioned, different, or additional. *See, e.g., Other*, Merriam-Webster's Third
> New International Dictionary, 1598 (2002). "[O]ther Federal" here clearly means
> Federal reports, hearings, audits, or investigations not from Congress or the
> Government Accountability Office, a definition that of course includes *ex parte*
> administrative hearings before the PTO. Congress, then, intended for "other" to be
> a broader category that includes additional, information-obtaining methods distinct
> from those already mentioned. . . .

Our determination that an *ex parte* patent prosecution is an "other Federal . . . hearing" under prong (ii) does not make prong (i) superfluous.  Prong (ii), as we discussed above, is primarily concerned with proceedings to gain information. By contrast, prong (i)'s use of the phrase "Federal criminal, civil, or administrative hearing" suggests a focus on adversarial proceedings because criminal hearings are always adversarial, and civil and administrative hearings are very often adversarial when the government is a party.   The adversarial nature of prong (i) is also supported by Congress's use of the word "party" to describe the government's role. *See Party*, Black's Law Dictionary (11th ed. 2019) ("One by or against whom a lawsuit is brought; anyone who both is directly interested in a lawsuit and has a right to control the proceedings, make a defense, or appeal from an adverse judgment; Litigant"). . . .

Applying the *Silbersher* Court's analysis, the Atlas Complaint is not "a fact-finding or investigatory process 'to *obtain* information.'"  *Silbersher*, 46 F.4th at 998 (citing *Schindler*, 563 U.S. at 410) (emphasis in *Silbersher*).  Nor is the Atlas Complaint an adversarial proceeding under "prong (i)."  Consequently, the Atlas Complaint does not qualify as a public disclosure under the statute.[2]

In my view, neither the search warrant records nor the Atlas Complaint qualifies as a public disclosure under the FCA.  Therefore, I need not determine whether the Relator is an original source of the information contained therein.  *See Beauchamp,* 816 F.3d at 47 ("[W]here, as here, there was no public disclosure, the . . . inquiry under § 3730(e)(4) ceases, regardless of whether the relator qualifies as an original source.") (quoting *United States ex rel. Holmes v. Consumer Ins. Grp.,* 318 F.3d 1199, 1208 (10th Cir. 2003) (en banc)).

---

[2] To be sure, "[a] complaint, which initiates judicial proceedings, is the cornerstone of every case . . . ."  *Fed. Trade Comm'n v. Abbvie Prod. LLC*, 713 F.3d 54, 62 (11th Cir. 2013). And, under the First Amendment to the Constitution, the public and the press have a qualified right of contemporaneous access to non-confidential civil complaints.  *See*, *e.g.*, *Courthouse News Service v. Schaefer*, 2 F.4th 318, 327 (4th Cir. 2021).  The constitutional right to public access under the First Amendment would seem to suggest that the filing of a complaint constitutes a public disclosure.  But, in the context of the FCA, Congress has decided otherwise.

Defendants also contend that scheme 5, which was first raised by the Relator in his Amended Complaint filed on May 11, 2022, contains allegations substantially similar to those filed in the Superseding Indictment (ECF 38-5) and referenced in the Plea Agreement (ECF 38-6) in the criminal case of *United States v. Matthew Blair*, ELH-19-410.  ECF 38-1 at 18.

The Relator concedes that "qualifying public disclosures of Fraudulent Scheme #5 occurred in connection with Blair's criminal proceedings before the Amended Complaint was filed."  ECF 47 at 39; *see Moore*, 2017 WL 1165952, at *12 (federal criminal documents filed in criminal proceedings are qualifying public disclosures).  Moreover, Relator does not dispute that the allegations in the Amended Complaint are "substantially the same" as the allegations contained in Blair's criminal pleadings, because "the government had already investigated, indicted, and convicted Blair for his conduct of Fraudulent Scheme #5 when the Amended Complaint was filed."  ECF 47 at 39; *see Maharaj*, 427 F. Supp. 3d at 649.  However, Relator argues that he qualifies as the "original source" of the allegations or transactions that comprise scheme 5.  ECF 47 at 39.  Indeed, the Relator contends that it was only after "many meetings and discussions with the Relator [that] the government filed a 36-count Superseding Indictment against Mr. Blair on March 3, 2020."  *Id.* at 12.

Even if a claim is based upon substantially the same allegations or transactions as contained in a prior qualifying public disclosure, the Court may not dismiss the claim if "the person bringing the action is an original source of the information" or dismissal is "opposed by the government."  31 U.S.C. § 3730(e)(4)(A).  As noted, under the post-2010 version of the public disclosure bar, a relator qualifies as an original source if he "voluntarily disclosed to the Government the information" underlying the fraud claims or if he had "independent" knowledge of information that "materially adds to the publicly disclosed allegations" and he voluntarily provided it to the

government before the suit was filed.  31 U.S.C. § 3730(e)(4)(B) (2010); *see also Maharaj,* 427 F. Supp. 3d at 649-50.

A "'relator's knowledge is direct if he acquired it through his own efforts, without an intervening agency, and it is independent if the knowledge is not dependent on public disclosure.'" *United States ex rel. Ahumada v. NISH*, 756 F.3d 268, 276 (4th Cir. 2014) (quoting *Grayson v. Adv. Mgmt. Tech., Inc*., 221 F.3d 580, 583 (4th Cir. 2000)).  Further, "[a] relator 'materially adds' to the public disclosures 'when it contributes information . . . that adds in a significant way to the essential factual background: the who, what, when, where and how of the events at issue.'" *United States ex rel. Fadlalla v. DynCorp International LLC*, 402 F. Supp. 3d 162, 184-85 (D. Md. 2019) (quoting *United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016)).

Here, under the post-2010 public disclosure bar, the Relator has pleaded that he is an original source.  See ECF 30, ¶ 1 ("Relator Schnupp makes his allegations herein upon his own direct and independent knowledge, and he is the original source of the information in this Complaint.").  Moreover, Relator expressly alleges that he submitted a "written disclosure of substantially all material evidence and information in his possession, on the United States pursuant to Rule 4(d)(4) of the Federal Rules of Civil Procedure."  *Id.* ¶ 67.  The Relator clearly references his Disclosure Memorandum, submitted to the government on August 14, 2017, more than two years before Blair was indicted on August 27, 2019.  *See* ECF 47-1.  Thus, the Relator adequately claims that he had independent knowledge of defendants' alleged fraud, and he shared this information with the government before filing his *qui tam* suit, and before Blair was indicted.

The Disclosure Memorandum included a copy of the Atlas Complaint as well as detailed information relating to the document.  *See id.* at 6-7, 10-16.  And, the fraudulent kickback scheme

regarding commissions paid to Atlas, which is the subject of Count 31 of the Superseding Indictment, to which Blair pleaded guilty, is the same commission arrangement alleged in the Atlas Complaint.  *See* ECF 38-5 at 18; ECF 38-8, ¶¶ 1, 7-12, 15, 16.

In the Motion, defendants imply that Relator's disclosures were not voluntary.  *See* ECF 38-1 at 21-22; *see also id.* at 1 ("When approached by federal criminal investigators questioning his practices, the Relator needed a lifeline.).  Therefore, they argue that defendant is not an original source.  However, at this juncture, the Court must assume the truth of the factual allegations. Relator has sufficiently pleaded that he disclosed the Atlas Complaint to the government prior to any public disclosure, and that he did so voluntarily.

In sum, Relator has adequately pleaded that he is the original source of the allegations relating to scheme 5.  Accordingly, the public disclosure bar does not warrant dismissal of the suit.

### 2.   Fed. R. Civ. P. 9(b)

As an alternative ground for dismissal, defendants urge the Court to dismiss the Amended Complaint for failure to plead fraud with particularity.  ECF 38-1 at 24.  As noted, fraud-based claims arising under the FCA must satisfy Rule 9(b)'s heightened pleading standard.  *Nathan*, 707 F.3d at 455-56.  "There are two ways to show presentment with particularity: either by alleging a representative example describing 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby'; or by alleging a 'pattern of conduct that would *necessarily* have led to submission of false claims.'" *United States ex rel. Nicholson v. MedCom Carolinas, Inc.* 42 F.4th 185, 196 (4th Cir 2022) (citing *United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 197 (4th Cir. 2018)) (emphasis in original).

The Amended Complaint, together with its attachments, meets either test. First, representative examples of each type of fraudulent claim submitted by the defendants are described in and attached to the Amended Complaint. *See* ECF 1-1 to ECF 1-4. The date of the false claim, the presentment information, the amount paid, and the prescription ingredients that were billed are reflected in each exhibit. For example, Relator alleges that ECF 1-3 is a representative example of scheme 2 (billing for medication not provided), in which the date of the false claim (4/30/2015); the presentment information (presented to TRICARE); reimbursement amount paid by TRICARE ($17,336.30 for the single prescription); and what was billed, *i.e.*, 360 grams when only 300 grams were provided, all appear on the face of the exhibit. ECF 47 at 46. These exhibits also reflect that they are records for "Blair Pharmacy Inc." Additionally, Relator alleges that ECF 30-1 is the same spreadsheet used to calculate the total amount of TRICARE reimbursement paid to the defendants for tainted false claims and the amount of restitution owed to TRICARE in connection with Blair's criminal conviction. ECF 30, ¶ 45

Notably, "Rule 9(b) . . . remains a pleading standard, and not a burden of proof." *United States ex rel. Hedley v. Abhe & Svoboda, Inc.*, 199 F. Supp. 3d 945, 955 (D. Md. 2016). Therefore, a relator is "in no way require[d] . . . to produce documentation or invoices at the outset of the suit . . . ." *Grant*, 912 F.3d at 199 (citations omitted). Rule 9(b) merely "requires that plaintiffs connect the dots, even if unsupported by precise documentation, between the alleged false claims and government payment." *Id.* A relator may lodge "specific allegations of the defendant's fraudulent conduct [that] necessarily [lead] to the plausible inference that false claims were presented to the government." *Nathan*, 707 F.3d at 457.

In *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180 (5th Cir. 2009), cited in *Nathan*, the relator alleged that two high-ranking hospital employees were delegating patient

interactions to nurses, while billing every day as a "face-to-face" patient visit that had not actually occurred. *Id.* at 184. Although the relator did not specifically allege the "exact dollar amounts, billing numbers, or dates" of any false claims, the Fifth Circuit held that the relator's allegations were sufficient to state an FCA claim. *Id.* at 189-90. The court noted that the relator had pled "the existence of a billing scheme" and offered "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Id.* at 190.

In addition to the exhibits provided, the Amended Complaint identifies specific false claims in order to ensure compliance with Rule 9(b)'s pleading requirement to set forth allegations of fraud with particularity. ECF 30, ¶¶ 44-58. Accepted as true, these allegations "necessarily [lead] to the plausible inference that false claims were presented to the government." *Nathan*, 707 F.3d at 457. As in *Grubbs*, 563 F.3d at 190, the Relator has alleged "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." Thus, the Relator has plausibly alleged the presentation of fraudulent claims for payment to the Government.

### 3. Res Judicata

Defendants contend that because Blair paid restitution in his criminal case, the doctrine of res judicata requires dismissal of the *qui tam* action. ECF 38-1 at 27-30.

Generally, the doctrine of res judicata precludes the assertion of a claim after a judgment on the merits of the same claim in a prior suit involving the parties or their privies. *Providence Hall Associates Limited Partnership v. Wells Fargo Bank, N.A.*, 816 F.3d 273, 276 (4th Cir. 2016); *Martin v. Am. Bancorporation Ret. Plan*, 407 F.3d 643, 650 (4th Cir. 2005); *Pueschel v. United States*, 369 F.3d 345, 354–55 (4th Cir. 2004). The doctrine of res judicata is applicable where the

following criteria are met: "(1) [there is] a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits." *Martin*, 407 F.3d at 650; *see also United States ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908, 912 (4th Cir. 2013).

However, "the presumption that a common nucleus of operative fact yields the same 'case' crumbles when one case is civil and the other criminal—it is well settled that civil and criminal actions premised on the same facts are not res judicata for the other." *Taul ex rel. United States v. Nagel Enterprises, Inc.*, 2:14-CV-0061-VEH, 2016 WL 304581, at *8 (N.D. Ala. Jan. 25, 2016) (citing 18 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4474, at 748 (3d ed. 1981)).  Although the Court ordered Blair to pay restitution, "a criminal proceeding for fraud 'do[es] not involve the same cause of action' as a civil action for violation of the FCA." *United States ex rel. Guzman v. Insys Therapeutic, Inc*., No. 2:13-cv-05861-JLS-AJW, 2021 WL 4306020, at *5 (C.D. Cal. May 19, 2021) (*quoting United States v. Shelburne*, No. 2:09CV00072, 2010 WL 2542052, at *5 (W.D. Va. June 24, 2010)).  Therefore, under the res judicata doctrine, Blair's criminal conviction does not serve as a bar to this civil suit because the two proceedings do not involve the same cause of action.

As mentioned, Blair signed a Plea Agreement on November 17, 2021.  ECF 38-6.  More than two years earlier, on October 16, 2019, the Court entered an Order granting the government's motion (ECF 12) to permit the United States to disclose this qui tam "Complaint and exhibits" and the Relator's "disclosure and exhibits" . . . "to Defendant and his counsel; . . ."  ECF 15.  Accordingly, Blair knew of the civil suit when he entered his guilty plea.  As Relator observes, despite defendant's awareness of the *qui tam* action, the Plea Agreement makes no mention of it. ECF 47 at 51.

37

Moreover, there is no language in the Plea Agreement "evidencing any intent that the plea agreement should have preclusive effect in this case." ECF 47 at 51. Rather, the document expressly states that it "constitutes the complete plea agreement in this [criminal] case" and "[t]here are no other agreements, promises, undertakings, or understandings between the Defendant and [the government] other than those set forth in this letter [agreement] and the Sealed Supplement." ECF 38-6 at ¶ 27. The language of the Plea Agreement does not contain any language that indicates an "intent of the parties" to preclude a civil fraud action. *May* 737 F.3d at 913.

Finally, the FCA explicitly contemplates pursuing both criminal and civil remedies based on the same facts as well as "civil restitution claims brought subsequent to a criminal conviction." *United States v. Barnette*, 10 F.3d 1553, 1561 (11th Cir. 1994); *see* U.S.C. § 3731(e). In *Barnette*, the Eleventh Circuit declined to limit a damages award in a civil FCA case to the amount of restitution awarded by the district court, noting that the defendant's attempt to equate the sentencing judge's restitution order with a determination of damages was "unpersuasive[.]" *Id.* at 1556-57. The Eleventh Circuit concluded that payment of restitution in a criminal case does not give rise to res judicata as to a civil action and that "[t]he courts should not jam judicially created doctrines such as *res judicata* into the gears of Congress['s] carefully crafted statutory machinery." *Id.* at 1561. And, Relator concedes that he is not entitled to a double recovery for the same loss through both a restitution order and a civil judgment. ECF 47 at 52.

The defendants' argument would require the Court to render provisions of the FCA irrelevant. The res judicata doctrine does not bar the *qui tam* action. *See Guzman*, 2021 WL 4306020, at *5 (finding that a restitution order did not bar relator's *qui tam* action for civil damages); *United States ex rel. FastTrain II Corp.*, No. 12-cv-21431, 2017 WL 6063446, *9 (S.D.

Fla. Feb. 15, 2017) (holding in a FCA case that "a restitution finding in a criminal case does not foreclose the United States from seeking a different damages award in a subsequent civil [FCA] case."); *see also United States v. Fliegler*, 756 F. Supp. 688, 695 (E.D.N.Y. 1990) (noting that courts routinely allow civil actions to go forward despite the existence of a prior order of restitution, and collecting cases).

### V.   Conclusion

For the foregoing reasons, I shall deny the Motion (ECF 38) and the Sealing Motion (ECF 39), without prejudice.  But, I shall grant the Judicial Notice Motion.  ECF 40.

An Order follows, consistent with this Memorandum Opinion.


Date: December 9, 2022                              _____/s/_____
                                                    Ellen L. Hollander
                                                    United States District Judge