IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES *ex rel.* TIMOTHY SCHNUPP, | |
| *Relator* | |
| v. | Civil Action No. ELH-17-2335 |
| BLAIR PHARMACY, INC., *et al.*, | |
| *Defendants.* | |

**MEMORANDUM OPINION**

In this *qui tam* action, Timothy Schnupp, the Relator, has sued his former employer, Blair Pharmacy, Inc. ("Blair Pharmacy" or "Pharmacy"), and its director and principal, Matthew Blair ("Blair"), pursuant to the False Claims Act ("FCA" or "Act"), 31 U.S.C. §§ 3728 *et seq. See* ECF 30 (First Amended Complaint). The suit contains two counts. Count I asserts false claims under 31 U.S.C. § 3729(a)(1)(A) and Count II asserts false claims under 31 U.S.C. § 3729(a)(1)(B).

Schnupp alleges, *inter alia*, that defendants knowingly submitted false claims to the Medicare Program, 42 U.S.C. § 1395 *et seq.* ("Medicare"), a federally funded health insurance program for people ages 65 and older and for certain people with disabilities (*id*. ¶ 11), and to the Department of Defense TRICARE health insurance program. *Id.* ¶ 20.[1] In particular, the Relator asserts that defendants knowingly submitted false claims to Medicare and TRICARE for certain compound drugs, by substituting a less expensive drug for a more expensive drug; by billing for medication that was not provided; by overcharging for certain medications; and by committing violations of the Anti-Kickback Statute ("AKS"), 42 U.S.C. § 13209-7b(b). *See id.* ¶¶ 28-43.

---

[1] TRICARE was formerly known as the Civilian Health & Medical Program of the Uniformed Services ("CHAMPUS"). *See* 32 C.F.R. § 199.17.

As discussed, *infra*, the civil claims lodged by the Relator were the subject of a federal criminal prosecution of Blair. *See United States v. Matthew Blair*, ELH-19-410 (D. Md.). The prosecution culminated in defendant's conviction under the AKS, 42 U.S.C. § 1320a-7b(b)(2)(A).

Relator has moved for partial summary judgment, prior to discovery, with respect to Blair's payment of illegal kickbacks for claims submitted to TRICARE, in violation of 42 U.S.C. § 1320a-7b(b)(2)(A). *See* ECF 57 (the "Motion"). According to plaintiff, as a result of Blair's criminal conviction, he is "estopped" from disputing a violation of the FCA. *Id.* at 4. Relator argues: "The United States is entitled to partial summary judgment in the total amount of $22,259,824.98, minus an offset under 18 U.S.C. § 3664(j)(2)(A) for restitution previously collected by the United States during Matthew Blair's criminal case." *Id.* at 11.

Defendants oppose the Motion (ECF 86, the "Opposition"), supported by thirteen exhibits. ECF 86-1 to ECF 86-13.[2] Relator replied. ECF 75.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall deny the Motion, without prejudice.

## I. The False Claims Act and the Anti-Kickback Statute

As noted, the suit is premised on the False Claims Act, 31 U.S.C. §§ 3729(a)(1)(A) and (a)(1)(B). The Act provides, in part, that "any person who—(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or] (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim . . . is liable to the United States Government for a civil penalty of not less than $5,000 and

---

[2] Defendants initially submitted a redacted version of their Opposition. *See* ECF 65. By Order of April 11, 2023 (ECF 81), I requested that defendants file an unredacted version of the Opposition, under seal, for *in camera* review.

not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 . . . plus 3 times the amount of damages which the Government sustains because of the act of that person."

The FCA protects the government fisc by "impos[ing] civil liability on persons who knowingly submit false claims for goods and services to the United States." *United States ex rel. Beauchamp v. Academi Training Center*, 816 F.3d 37, 39 (4th Cir. 2016); *see, e.g., United States ex rel. Citynet, LLC v. Gianato*, 962 F.3d 154, 157 (4th Cir. 2020) (complaint alleged that defendant billed the federal government for "material and labor it did not provide, and for [projects] that were not constructed"); *Affinity Living Grp., LLC v. StarStone Specialty Ins. Co.*, 959 F.3d 634, 636 (4th Cir. 2020) (complaint alleged that defendant "submitted reimbursement claims for resident services that were never provided"); *see also United States ex rel. Rostholder v. Omnicare, Inc.*, 745 F.3d 694, 700 (4th Cir. 2014), *cert. denied*, 574 U.S. 819 (2014).  Under the FCA, a whistleblower, known as a relator, may sue for himself and on behalf of the government to recover damages against a defendant who has caused the submission of fraudulent claims for payment injuring the public fisc.  31 U.S.C. § 3730(b)(1).  As an incentive to bring such suits, a successful relator is entitled to share in the government's recovery from the defendants.  *See United States ex rel. Bunk & Ammons v. Gov't Logistics N.V.*, 842 F.3d 261, 265 n.3 (4th Cir. 2016); *see also Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 404 (2011); *ACLU v. Holder*, 673 F.3d 245, 246-51 (4th Cir. 2011) (describing history and current provisions of FCA).

This case also implicates the AKS, 42 U.S.C. § 13209-7b(b).  I turn to review the relevant portions of the statute.

The AKS is "designed to prevent" fraud and abuse in connection with federal health care programs, including Medicare and Medicaid.  *United States v. Patel*, 778 F.3d 607, 612 (7th Cir.

3

2015).  It "was enacted to 'protect the Medicare and Medicaid programs from increased costs and abusive practices resulting from provider decisions that are based on self-interest rather than cost, quality of care, or necessity of services.'"  *Id.* (citation omitted).  In addition, the AKS seeks "'to protect patients from doctors whose medical judgments might be clouded by improper financial consideration.'"  *Id.* (citation omitted).

Section 1320a-7b(b) of 42 U.S.C. was enacted in 1977, when Congress amended the Social Security Act by adding the Medicare-Medicaid Anti-Fraud and Abuse Amendments.  *See United States v. Shoemaker*, 746 F.3d 614, 626 (5th Cir. 2014) (citing H.R. Rep. No. 95-393, pt. 2, at 44 (1977)); *United States v. Shaw*, 106 F. Supp. 2d 103, 110 (D. Mass. 2000).  The amendment sought to address the "disturbing degree [of] fraudulent and abusive practices associated with the provision of health services financed by the Medicare and Medicaid programs."  *Shaw*, 106 F. Supp. 2d at 110 (citing H.R. Rep. No. 95-393, pt. 2, at 44 (1977), reprinted in 1977 U.S.C.C.A.N. 3039, 3047).  The primary effect of these amendments was to turn fraudulent acts previously classified as misdemeanors into felonies.  *Id.*; *see United States v. Neufield*, 908 F. Supp. 491, 493 (S.D. Ohio 1995).

Section 1320a-7b(g) of 42 U.S.C. states that "a claim that includes items or services resulting from a violation of this section [the Anti-Kickback Statute] constitutes a false or fraudulent claim for purposes of" the FCA.  Therefore, "[a] violation of the Anti-Kickback Statute . . . automatically constitutes a false claim under the False Claims Act."  *United States v. Mallory*, 988 F.3d 730, 741 (4th Cir. 2021) (citing *United States ex rel. Lutz v. United States*, 853 F.3d 131, 135 (4th Cir. 2017) ("An [Anti-Kickback Statute] violation that results in a federal health care payment is a *per se* false claim under the [False Claims Act].");  *see United States ex rel. Nicholson v. Medcom Carolinas, Inc.*, 42 F.4th 185, 193-94 (4th Cir. 2022).

4

## II. Factual and Procedural Background[3]

Schnupp, the Relator, is a Doctor of Pharmacy, a Maryland Licensed Pharmacist, and a former employee of Blair Pharmacy. ECF 30, ¶ 1. Blair was the founder of Blair Pharmacy, as well as a director and a principal, and he served as the Pharmacy's resident agent. *Id.* ¶ 3. At the relevant time, the Pharmacy was a Maryland corporation that operated as a compounding pharmacy. *Id.* ¶ 2. "Compounding" is a practice in which pharmacists combine, mix, or alter ingredients to create a customized medication for an individual patient in response to a licensed practitioner's prescription. *Id.* ¶ 24.

The Relator filed his initial Complaint (ECF 1), with exhibits, on August 15, 2017. Pursuant to the FCA, the suit was filed under seal to afford the United States an opportunity to decide whether to intervene. *See* 31 U.S.C. § 3730(b)(2). About two years later, on August 27, 2019, while the government was still considering whether to intervene, a federal grand jury returned a ten-count Indictment against Blair, alleging wire fraud and aggravated identity theft. ECF 38-4; *see United States v. Matthew Blair*, ELH-19-410, ECF 1. Then, on March 3, 2020, Blair was charged in a thirty-six count Superseding Indictment, which added charges of payment of illegal remunerations and money laundering. ELH-17-2335, ECF 38-5; ELH-19-410, ECF 20.

On December 3, 2021, Blair entered a plea of guilty to Count Thirty-One of the Superseding Indictment (ELH-17-2335, ECF 38-5; ELH-19-410, ECF 178), which charged him with payment of illegal remunerations, in violation of 42 U.S.C. § 1320a-7b(b)(2)(A), commonly known as the Anti-Kickback statute ("AKS"). The plea was tendered pursuant to a Plea Agreement under Fed. R. Crim. P. 11(c)(1)(C) ("C Plea"). ELH-19-410, ECF 181, ¶ 9; *see also* ELH-17-

---

[3] Where appropriate, I have drawn on the factual and procedural background of this case, as recounted in my Memorandum Opinion of December 9, 2022. ECF 55 at 2-9.

2335, ECF 38-6, ¶ 9.  In accordance with the C Plea, Blair was sentenced on February 10, 2022 (ELH-19-410, ECF 188) to a term of twelve months and one day of incarceration, and he was ordered to pay restitution of $3,176,470.83.  *See* ELH-17-2335, ECF 38-7; ELH-19-410, ECF 189 (Judgment).  The government dismissed the remaining charges at sentencing.  ECF 17-2335, ECF 38-6, ¶ 11.

The Plea Agreement included as Attachment A a lengthy Stipulation of Facts.  *Id.* at 15-21.  Relevant here, the Stipulation of Facts provided: "The amount of $6,352,941.66 (as described in detail in Attachment B, incorporated herein) was the total reimbursement amount TRICARE paid to Blair Pharmacy from November 2014 – May 2015, based upon the claims Blair submitted to TRICARE tainted by remuneration payments Blair Pharmacy paid to independent 1099 sales contractors."  ECF 38-6 at 19.  And, Attachment B to the Plea Agreement identified the 582 specific false claims submitted by Blair to TRICARE in violation of the AKS, and the amount TRICARE paid for each tainted claim, the total of which was $6,352,941.66.  *Id*. at 21-35.

As to the *qui tam* case, the government apparently undertook a lengthy investigation to determine whether to intervene.  *See* ELH-17-2335, ECF 4; ECF 6; ECF 8; ECF 10; ECF 13; ECF 16; ECF 18; ECF 20; ECF 22; ECF 24; ECF 26.  In that time, the civil case was effectively stayed. However, by Order of October 15, 2019, the Court partially lifted the seal to permit the government to disclose the case to defendants.  ECF 15.  Eventually, on May 2, 2022, the United States declined to intervene.  ECF 28.  Soon after, on May 4, 2022, the civil suit was unsealed.  ECF 29.  And, on May 11, 2022, Relator filed an Amended Complaint (ECF 30), which is the operative pleading.

The Amended Complaint (ECF 30) alleges five separate fraud schemes in which defendants submitted false claims to Medicare and TRICARE, both of which are federally funded health insurance programs: (1) substituting less expensive Lipoderm cream for more expensive

SteraBase cream, but billing for compound drugs that supposedly contained SteraBase cream (*id.* ¶ 28); (2) billing for medication not provided by billing for compound drugs that supposedly contained 360 grams of product when only 300 grams were dispensed (*id.* ¶ 29); (3) overcharging for Gabapentin by billing for compound drugs containing 10% Gabapentin when only 6% was provided (*id.* ¶ 30); (4) using pre-paid gift cards or "burner cards" to pay coinsurance and/or deductible amounts for beneficiaries to induce them to use the Pharmacy "to fill lucrative compound medication prescriptions" (*id.* ¶ 34), in violation of the Anti-Kickback statute, 42 U.S.C. § 1320a- 7b(b) (*id.* ¶¶ 34, 35); and (5) payment to independent contractors of commissions equal to 50% of reimbursements paid to the Pharmacy by Medicare and TRICARE for compounded prescriptions that were marketed by the independent contractors to physicians, in violation of the AKS. *Id.* ¶¶ 36-43.  Schemes 1-4 were raised in the initial Complaint (ECF 1); scheme 5 was first raised in the Amended Complaint.  ECF 30.

In regard to scheme 5, Relator alleges that Blair recruited the Atlas Group, LLC ("Atlas"), an independent contractor, to market the Pharmacy's compound drug prescriptions to physicians treating Medicare and TRICARE beneficiaries.  ECF 30, ¶ 36.  Defendants entered a Distributor Agreement with Atlas in November 2014.  *Id.* ¶ 37.  It provided that Atlas would market the pharmacy's compounded drug prescriptions to physicians treating patients who received Medicare or TRICARE benefits, and use the Pharmacy to fill the prescriptions.  *Id.* ¶¶ 36, 38.  Atlas was to receive commissions equal to 50% of the reimbursements paid to Blair by Medicare and TRICARE, based on Atlas's efforts to market the compounded pain and scar cream prescriptions filled by Blair Pharmacy.  *Id.* ¶ 37.

Further, the Amended Complaint alleges that Blair entered into similar agreements with other independent contractors.  They included Paladin Enterprises, Brevor Medical, Stratified

Solutions, and Absolute Ortho.  Blair allegedly arranged to pay these independent marketers a percentage of any reimbursement monies received by the Pharmacy from the TRICARE and Medicare healthcare benefit programs.  *Id.* ¶ 42.

According to Relator, from November 2014 until May 2015, TRICARE paid Blair Pharmacy $6,352,941.66 based upon claims that the defendants submitted to TRICARE.  *Id.* ¶ 43; *see* ECF 30-1.

As noted, Relator filed his initial Complaint on August 15, 2017.  ECF 1.  As a former employee of Blair Pharmacy, Schnupp asserted that his allegations are based "upon his own direct and independent knowledge, and he is the original source of the information[.]"  *Id.* ¶ 1.  Relator also alleged that, pursuant to 31 U.S.C. § 3730(b)(2), he previously served a copy of the Complaint, "together with written disclosure of substantially all material evidence and information in his possession, on the United States pursuant to Rule 4(d)(4) of the Federal Rules of Civil Procedure."  ECF 1, ¶ 57; *see* ECF 47-1 (the "Disclosure Memorandum").  Relator renewed this assertion in the Amended Complaint.  ECF 30, ¶ 67.

The Disclosure Memorandum is dated August 14, 2017, and stated that the "document and its attachments [were] voluntarily provided to the United States in connection with the filing of an action under the Federal False Claims Act, 31 U.S.C. §§ 3729 *et seq*. for false claims submitted to the Medicare and TRICARE Programs."  ECF 47-1 at 1-2.  The Disclosure Memorandum also states: "Relator did not come forward sooner because he feared retaliation and loss of his job."  *Id.* at 7.

According to Relator, his "first contact with anyone associated with the government's criminal investigation of Matthew Blair or Blair Pharmacy came on October 2, 2017, when [he] was interviewed at the U.S. Attorney's Office by government attorneys and investigators."  ECF

75-2 (Schnupp Declaration) at 2.  Daniel Parker, a Special Agent of the FBI, confirmed that the "first contact between Timothy Schnupp and FBI investigators involved in the criminal investigation of Matthew Edward Blair and Blair Pharmacy, Inc. occurred on October 2, 2017, when Mr. Schnupp was interviewed.  ECF 75-1 (Parker Declaration).

Relator states that, during this interview, he provided "truthful information about the fraudulent activities of Matthew Blair and Blair Pharmacy" and that he "continued to do so in a series of interviews with government attorneys and investigators over the next four years from the first meeting in October 2018 through 2021."  ECF 75-2 at 2.  He also maintains that at no time was he offered, nor did he ever receive, "immunity from prosecution or any other type of consideration in exchange for [his] cooperation during the criminal investigation of Matthew Blair and Blair Pharmacy."  *Id*.

The FBI Interview Report for Schnupp is docketed at ECF 86-8.  It states that in April 2017, Schnupp's attorney, Ray Shepard, advised Schnupp to "file a qui tam against Blair and Blair Pharmacy which Schnupp did in August 2017."  *Id*. at 26.  The Report continues, *id*.:

> [Schnupp] filed the *qui tam* to "cover his ass."  Based on the way Blair was acting over the vacation time payment dispute (particularly that he was lying and fabricating information), Schnupp was worried that if Blair Pharmacy was ever audited or investigated, Blair would lie and throw Schnupp under the bus by trying to blame everything on him.  Schnupp was further worried because he knew how it would look since he was the pharmacist in charge at the pharmacy and the one who submitted the claims for reimbursement.  Schnupp did not want to go to jail.

On July 18, 2022, defendants moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing, *inter alia*, that portions of Relator's *qui tam* action are barred by the by the public disclosure provision of the FCA, 31 U.S.C. § 3730(e)(4).  ECF 38.  By Memorandum Opinion (ECF 55) and Order (ECF 56) of December 9, 2022, I denied that motion.

Relator filed the instant Motion, seeking a determination of "liability and damages based solely on the same false claims submitted to TRICARE which formed the basis of Mr. Blair's guilty plea and criminal conviction."  ECF 57 at 6.  In their Opposition (ECF 86), defendants argue the following: (1) "Schnupp's claims are precluded under the FCA's public disclosure bar" (*id*. at 7); (2) "there is a genuine material dispute of facts as to the amount of damages and the number of false claims" (*id*. at 8); and (3) "Schnupp seeks partial summary judgment before any discovery in this case has occurred and therefore his Motion for Summary Judgment should be denied as premature."  *Id.*  The Opposition is accompanied by a "Declaration of Matthew Blair Pursuant to Federal Rule of Civil Procedure 56(d)" attesting to the prematurity of the Motion and defendants' need for discovery.  ECF 86-9.

Additional facts are discussed, *infra*.

### III. Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *see also Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020); *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018); *Iraq Middle Mkt. Dev. Found v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017).  To avoid summary judgment, the nonmoving party must demonstrate that there is a genuine dispute of material fact so as to preclude the award of summary judgment as a matter of law.  *Ricci v. DeStefano*, 557 U.S. 557, 585-86 (2009); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 470 (4th Cir. 2018).

The Supreme Court has clarified that not every factual dispute will defeat a summary

judgment motion.  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Id.* at 248.

There is a genuine dispute as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*; *see CTB, Inc. v. Hog Slat, Inc.*, 954 F.3d 647, 658 (4th Cir. 2020); *Variety Stores, Inc.*, 888 F.3d at 659; *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 2014 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).  On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 252; *see McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014).  But, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252.  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Pursuant to Fed. R. Civ. P. 56(c)(1), where the moving party bears the burden of proof on the issue at trial, he must support his factual assertions by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials . . . ."  But, where the nonmovant bears the burden of proof at trial, the moving party may show that it is entitled to summary judgment by citing to evidence in the record, or "by 'showing'—that is,

pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325; *see also* Fed. R. Civ. P. 56(c)(1)(B).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [its] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004); *see Celotex*, 477 U.S. at 322-24. And, the court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the nonmoving party. *Ricci*, 557 U.S. at 585-86; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; accord *Knibbs v. Momphand*, 30 F.4th 200, 206 (4th Cir. 2022); *Walker v. Donahoe*, 3 F.4th 676, 682 (4th Cir. 2021); *Hannah P. v. Coats*, 916 F.3d 327, 336 (4th Cir. 2019); *Variety Stores, Inc.*, 888 F.3d at 659; *Gordon*, 890 F.3d at 470; *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017).

But, the nonmovant "must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015) (internal quotation marks omitted). Rather, "there must be evidence on which the jury could reasonably find for the nonmovant." *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (alteration and internal quotation marks omitted).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; accord *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Thus, in considering a summary judgment motion, the court may not weigh the evidence or make credibility determinations. *Brown v. Lott*, 2022 WL 2093849, at *1 (4th Cir. June 10, 2022) (per curiam);

*Knibbs*, 30 F.4th at 207, 213; *Betton v. Belue*, 942 F.3d 184, 190 (4th Cir. 2019); *Wilson v. Prince George's Cty.*, 893 F.3d 213, 218-19 (4th Cir. 2018); *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007). Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).

That said, "a party's 'self-serving opinion . . . cannot, absent objective corroboration, defeat summary judgment.'" *CTB, Inc.*, 954 F.3d at 658-59 (quoting *Williams v. Giant Food Inc.*, 370 F.3d 423, 433 (4th Cir. 2004)). But, if testimony is based on personal knowledge or firsthand experience, it can be evidence of disputed material facts, even if it is uncorroborated and self-serving. *Lovett v. Cracker Barrel Old Country Store, Inc.*, 700 F. App'x 209, 212 (4th Cir. 2017). Indeed, "'a great deal of perfectly admissible testimony fits'" the "'description'" of "'self-serving.'" *Cowgill v. First Data Technologies, Inc.*, 41 F.4th 370, 383 (4th Cir. 2022) (citing *United States v. Skelena*, 692 F.3d 725, 733 (7th Cir. 2012)).

On the other hand, "[u]nsupported speculation is not sufficient to defeat a summary judgment motion." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *see also Reddy v. Buttar*, 38 F.4th 393, 403-04 (4th Cir. 2022); *CTB, Inc.*, 954 F.3d at 659; *Harris v. Home Sales Co.*, 499 F. App'x 285, 294 (4th Cir. 2012). "[T]o avoid summary judgment, the non-moving party's evidence must be of sufficient quantity and quality as to establish a genuine issue of material fact for trial. Fanciful inferences and bald speculations of the sort no rational trier of fact would draw or engage in at trial need not be drawn or engaged in at summary

13

judgment." *Local Union 7107 v. Clinchfield Coal Co.*, 124 F.3d 639, 640 (4th Cir. 1997). At the same time, if testimony from a nonmovant is based on personal knowledge or firsthand experience, it can be evidence of disputed material facts, even if it is uncorroborated and self-serving. *Lovett v. Cracker Barrel Old Country Store, Inc.*, 700 F. App'x 209, 212 (4th Cir. 2017).

I discuss, *infra*, the defendants' claim that summary judgment is inappropriate because there has been no discovery. ECF 86 at 31-34.

## IV. Discussion

Aa person who violates the FCA is liable to the United States for "a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note; Public Law 104-410), plus 3 times the amount of damages which the government sustains because of the act of that person." 31 U.S.C. § 3729(a)(1). As noted in Blair's Plea Agreement: "The amount of $6,352,941.66 (as described in detail in Attachment B, incorporated herein) was the total reimbursement amount TRICARE paid to Blair Pharmacy from November 2014 – May 2015, based upon the claims Blair submitted to TRICARE tainted by remuneration payments Blair Pharmacy paid to independent 1099 sales contractors." ECF 38-6 at 19. Accordingly, Relator contends that the United States is entitled to treble damages in the amount of $19,058,824.98 ($6,352,941.66 x 3 = $19,058,824.98). ECF 57 at 8.

And, pursuant to 28 C.F.R. § 85.3(a)(9), for each false claim submitted on or before November 2, 2015, there is a minimum penalty of $5,500, up to a maximum of $11,000. In the Motion, Relator seeks "the minimum penalty required by 31 U.S.C. § 3729(a)(1) to each of the 582 false claims," or $3,201,000.000 ($5,500 x 582 = $3,201,000.00). *Id*. at 11. Combining treble damages of $19,058,824.98 with the minimum applicable civil penalties of $3,201,000.000 yields a total sum of $22,259,824.98. *Id*.

Pursuant to 18 U.S.C. § 3664(j)(2)(A), however, "[a]ny amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in—(A) any Federal civil proceeding[.]"  This Court has already taken judicial notice of pleadings from Blair's criminal case.  ECF 55.  These documents establish that the government obtained restitution from Blair in the amount of $3,176,470.83.  Therefore, any judgment would be reduced to reflect a credit of $3,176,470.83 already paid by Blair by way of restitution in his criminal case.  *See* ECF 38-7; ECF 38-8 (Notice of Satisfaction).

In their Opposition, defendants argue that the Motion "improperly assumes the plea and settlement agreement relates to each and every TRICARE claim submitted by [Blair Pharmacy] and all reimbursement amounts paid by TRICARE to [Blair Pharmacy].  However, [Blair] plead[ed] guilty to Count 31 which related only to Atlas Group referrals."  ECF 86 at 30.  But, the Plea Agreement and the attachments incorporated therein establish each claim submitted to TRICARE and the total resulting loss to TRICARE.

As part of the Plea Agreement, Blair signed a Stipulation of Facts in which he admitted the factual basis for his illegal kickback scheme.  *See* ECF 38-6.  The Stipulation of Facts begins by stating: "*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt.*"  ECF 38-6 at 15 (emphasis in original).  It continues: "The amount of $6,352,941.66 (as described in detail in Attachment B, incorporated herein) was the total reimbursement amount TRICARE paid to Blair Pharmacy from November 2014 – May 2015, based upon the claims Blair submitted to TRICARE tainted by remuneration payments Blair Pharmacy paid to independent 1099 sales contractors."  *Id*. at 19.  And, as stated in these stipulated facts, Attachment B to the Plea Agreement identifies 582 specific false claims submitted by defendants to TRICARE, in violation of the Anti-Kickback

statute. *Id*. at 21-35.  Accordingly, there is no dispute that defendants submitted 582 false claims to TRICARE, for which the United States suffered damages totaling $6,352,941.66.

Defendants cannot take a position contrary to the Stipulation of Facts incorporated into the Plea Agreement.  Indeed, the FCA codifies this principle of collateral estoppel at 31 U.S.C. § 3731(e), which provides: "Notwithstanding any other provision of law, the Federal Rules of Criminal Procedure, or the Federal Rules of Evidence, a final judgment rendered in favor of the United States in any criminal proceeding charging fraud or false statements, whether upon a verdict after trial or upon a plea of guilty or nolo contendere, shall estop the defendant from denying the essential elements of the offense in any action which involves the same transaction as in the criminal proceeding and which is brought under subsection (a) or (b) of section 3730 [31 U.S.C. § 3730]."

In *Barnette*, 10 F.3d 1553, the Eleventh Circuit declined to limit a damages award in a civil FCA case to the amount of restitution awarded by the district court, noting that the defendant's attempt to equate the sentencing judge's restitution order with a determination of damages was "unpersuasive[.]"  *Id*. at 1556-57.  The Eleventh Circuit concluded that payment of restitution in a criminal case does not give rise to res judicata as to a civil action and that "[t]he courts should not jam judicially created doctrines such as *res judicata* into the gears of Congress['s] carefully crafted statutory machinery."  *Id*. at 1561.

Moreover, the Plea Agreement does not contain any language that indicates an "intent of the parties" to preclude a civil fraud action.  *United States ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908, 913 (4th Cir. 2013).  Additionally, the FCA explicitly contemplates the pursuit of both criminal and civil remedies based on the same facts, as well as "civil restitution claims brought

subsequent to a criminal conviction." *United States v. Barnette*, 10 F.3d 1553, 1561 (11th Cir. 1994); *see* U.S.C. § 3731(e).

But, the calculation of damages is premature.  This is because the facts do not establish Relator's entitlement to summary judgment; there are hurdles to his recovery under the FCA.

Defendants argue that, "[b]ecause discovery in this matter has not begun, Schnupp's Motion for Summary Judgment is premature and partial summary judgment is inappropriate." ECF 86 at 31.  Generally speaking, the Fourth Circuit has found that "summary judgment is appropriate only after 'adequate time for discovery.'" *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996) (quoting *Celotex Corp.* at 322).  And, Federal Rule of Civil Procedure 56(d) provides: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."

Under Rule 56(d), a court may delay ruling on a motion for summary judgment if the nonmoving party requires discovery to identify "facts essential to justify the party's opposition." *Crawford-El v. Britton,* 523 U.S. 574, 599 n.20 (1998) (quotation omitted); *Nader v. Blair,* 549 F.3d 953, 961-62 (4th Cir. 2008); *White v. BFI Waste Servs., LLC,* 375 F.3d 288, 295 n.2 (4th Cir. 2004).  "To justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs.,* 789 F. Supp. 2d 637, 641 (D. Md. 2011), *rev'd on other grounds,* 488 Fed. Appx. 709 (4th Cir. 2012).  "A Rule 56(d) affidavit that conclusorily states that discovery is required is insufficient; the affidavit must specify the reasons the party is unable to present the necessary facts and describe with particularity the evidence that the party seeks to obtain." *Bolling*

17

*v. PP&G, Inc.,* WDQ-15-911, 2015 WL 9255330, at *3 (D. Md. 2015) (quoting *Radi v. Sebelius,* 434 F. App'x 177, 178 (4th Cir. 2011) (citing *Trask v. Franco,* 446 F.3d 1036, 1042 (10th Cir. 2006)).  A non-moving party's Rule 56(d) request for discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs. Craven Cmty. Coll.,* 55 F.3d 943, 953 (4th Cir. 1995); *Ingle ex rel. Estate of Ingle v. Yelton,* 439 F.3d 191, 195 (4th Cir. 2006); *Pisano v. Strach,* 743 F.3d 927, 931 (4th Cir. 2014).

Blair's Declaration (ECF 86-9), submitted to invoke Rule 56(d), demonstrates that the additional evidence sought might create a genuine issue of material fact sufficient to defeat the Motion.  First, Blair's Declaration generally seeks additional discovery regarding defendants' assertion that Relator was involved in the fraudulent activities Blair has been convicted of committing.  Specifically, Blair's Declaration seeks discovery regarding (1) Relator's role in recruiting and securing relationships with several of the independent sales and marketers that would eventually sign distributor agreements with Blair (ECF 86, ¶¶ 19-23); (2) The circumstances leading to Blair's request that Relator accept a reduction in salary (*id*. ¶¶ 24-25); (3) Relator's "dishonest actions" during his employment at Blair Pharmacy (*id*. ¶¶ 26-32); (4) Relator's failure to "competently perform his duties" as Blair Pharmacy's Pharmacist-in Charge (*id*. ¶¶ 33-35); (5) Relator's alleged theft of Blair Pharmacy's "Distribution List" (*id*. ¶ 36); and (6) Relator's cooperation with federal law enforcement authorities.  *Id*. ¶¶ 37-40.

To be sure, discovery cannot alter the facts conclusively established by the Stipulation of Facts incorporated into Blair's criminal Plea Agreement (ECF 38-6).  But, defendants assert that they have "presented sufficient facts to at a minimum create a material dispute as to whether Schnupp is an original source of the Anti-Kickback Statute allegations upon which his Motion for

Summary Judgment is premised." ECF 86 at 7. They add, *id.*: "Schnupp neither voluntarily disclosed information about this case to the Government, nor did he provide information that was independent from or materially additional to information that the Government had already discovered." According to defendants, Schnupp concedes that defendants' violation of the AKS "was publicly disclosed" in the Superseding Indictment of March 3, 2020. *Id.*

As discussed, in order to prevent fraud that might otherwise evade detection and to supplement government enforcement, the FCA permits a private individual, *i.e.*, a relator, to file a civil lawsuit on behalf of himself and the government against those who have defrauded the federal government. 31 U.S.C. § 3730(b)(1). To encourage such suits, the statute allows the relator to collect a portion of the recovery as a reward. *See* 31 U.S.C. § 3730(b); § 3730(d)(2).

However, a *qui tam* suit is of no help to the government if the alleged fraud has already been uncovered. *Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 294-95 (2010). Since enacting the FCA in 1863, Congress has repeatedly amended the statute in an effort "to strike a balance between encouraging private persons to root out fraud and stifling parasitic lawsuits' in which a relator, instead of plowing new ground, attempts to free-ride by merely reiterating previously disclosed fraudulent acts.'" *Beauchamp*, 816 F.3d at 39 (quoting *Graham Cty. Soil & Water*, 559 U.S. at 295).

One such mechanism is the FCA's public disclosure bar. *See* 31 U.S.C. § 3730(e)(4)(A) (1986), amended by the Patient Protection & Affordable Care Act, Pub. L. No. 111-148, § 10104(j)(2), 124 Stat. 119, 901-02 (2010) ("Affordable Care Act"); *see also State Farm Fire & Cas. Co. v. United States ex rel. Rigsby*, 580 U.S. 39, 44 (2016) (describing the public disclosure bar as a threshold that a relator must clear in order to proceed on a *qui tam* suit). The provision "disqualifies private suits based on fraud already disclosed in particular settings—such as hearings,

government reports, or news reports—unless the relator meets the definition of an 'original source' under the FCA." *Beauchamp*, 816 F.3d at 39 (quoting 31 U.S.C. § 3730(e)(4)); *see United States ex rel. Siller v. Becton Dickenson & Co*., 21 F.3d 1339, 1347 (4th Cir. 1994).

The public disclosure bar requires the Court to ask three questions: (1) is there a qualifying public disclosure? (2) if yes, is the disclosed information the basis of the relator's suit? (3) and, if so, is the relator the original source of that information? *United States ex rel. Wilson v. Graham Cty. Soil & Water Conservation Dist*., 528 F.3d 292, 308 (4th Cir. 2008), *rev'd on other grounds*, 559 U.S. 280 (2010); *see United States ex rel. Moore v. Cardinal Fin. Co., L.P.*, CCB-12-1824, 2017 WL 1165952, at *10 (D. Md. Mar. 28, 2017); *United States ex rel. Davis v. Prince*, 753 F. Supp. 2d 569, 579 (E.D. Va. 2011).

Under 31 U.S.C. § 3730(e)(4)(B), an "original source" is an individual who either:

(i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.

As indicated, defendants contend that the public disclosure bar defeats Relator's Motion because the factual allegations underlying the civil suit were publicly disclosed and Relator is not the original source of those disclosures. ECF 86 at 18. In particular, defendants assert "Schnupp is not entitled to partial summary judgment in this matter because his disclosure of information to the Government was not voluntary." *Id*. at 21.

The FCA does not define "voluntary," so courts use its ordinary meaning. *United States ex rel. Griffith v. Conn.*, ART-11-157, 2015 WL 779047, at *4 (E.D. Ky. Feb. 24, 2015) (citing *Sebelius v. Cloer,* 113 S. Ct. 1886, 1893 (2013)). After surveying judicial opinions on the subject, Judge Amul Thapar concluded that the "most apt definition" of "voluntary" as used in the FCA is

"an act done 'without a present legal obligation' or 'without valuable consideration.'" *Id.* at *9 (collecting cases); *see also United States ex rel. Fine v. Chevron, U.S.S., Inc.,* 72 F.3d 740, 744 (9th Cir. 1995) (*en banc*) (defining "voluntary" as "done of one's own free will without valuable consideration" and "done without any present legal obligation to do the thing done."); *United States ex rel. Ackley,* 76 F. Supp. 2d 654, 666 (D. Md. 1999) ("Voluntary means not in response to a subpoena, . . . and, insofar as a government employee is concerned, not in exchange for a salary.").

To support their contention that Relator's disclosures were not voluntary, defendants first rely upon *United States ex rel. Paranich v. Sorgnard*, 396 F.3d 326 (3d Cir. 2005).  ECF 86 at 22-23.  In *Paranich*, 396 F.3d at 338, the relator supplied information to the government only after records had been subpoenaed by the government.  The *Paranich* Court concluded that "a putative relator does not, consistent with the policy underlying *qui tam* actions, 'voluntarily' provide information to the government where the government has identified the putative relator as being involved in the fraudulent activity and has initiated contact with a subpoena demanding information fundamental to the putative relator's action." *Id.* at 340.   Defendants conceded that Schnupp's disclosure to the government was "not compelled by . . . subpoena."  Accordingly, *Paranich* is easily distinguished from this case.

Defendants also cite *City of Chicago ex rel. Rosenberg v. Redflex Traffic Sys.*, 884 F.3d 798 (7th Cir. 2018).  ECF 86 at 23-24.  In *Rosenberg*, "[t]he OIG requested Rosenberg submit for an interview and provide information in exchange for an express immunity agreement." *Rosenberg*, 884 F.3d at 805-06.  The court found the subsequent disclosures were not voluntary because "Rosenberg did not voluntarily initiate contact with the OIG and only provided information once he was contacted as part of the City's investigation."  *Id.* at 806.

21

In this case, there is no evidence in the record suggesting Schnupp's disclosure was in exchange for an immunity agreement or any other kind of consideration.  Nor is there any evidence suggesting government investigators initiated the contact between Schnupp and the government.  To the contrary, it appears that Relator provided his initial disclosures to the government and filed this *qui tam* action in August 2017, before meeting with government investigators.  ECF 75-1; ECF 75-2; ECF 86-8.

Defendants also point to *United States ex rel. Stone v. AmWest Sav. Ass'n*, 999 F. Supp. 852 (N.D. Tex. 1997).  ECF 86 at 24.  In *Stone*, as in *Rosenberg*, the relator agreed to provide information to the government only after "the government gave Stone immunity from criminal prosecution."  *Stone*, 999 F. Supp. at 858.  Thus, for the same reasons that *Rosenberg* has no application to this case, defendants' reliance on *Stone* is likewise misplaced.

The court in *Stone* relied upon an earlier decision from the Eighth Circuit, *United States ex rel. Barth*, 44 F.3d 699 (8th Cir. 1995), which defendants also cite.  ECF 86 at 22.  In *Barth*, the Eighth Circuit found that Barth's cooperation was not voluntary because it came only after Barth was contacted by a government investigator.  *Barth*, 44 F.3d at 704 ("Barth's only contact with a government official prior to filing this action was his discussion with Richard Nark, the HUD investigator, which occurred almost two years after Ridgedale's alleged fraudulent activities.  More importantly, however, this discussion was initiated by Nark rather than Barth.").  Thus, *Barth* supports the proposition that who initiates first contact—the relator or the government—is of critical importance when considering the voluntariness of a relator's disclosures to the government.

In the Opposition, Blair attests that "there are numerous documents from his criminal proceeding that remain under seal and therefore unavailable to counsel at this time that would likely further corroborate that Schnupp is not an original source of the information[.]"  ECF 86 at

22

16.  The issue of whether Relator is an original source of the information is, at a minimum, a fact intensive issue, and there has been no opportunity for discovery.  The 2010 version of the FCA permits a defendant to raise the public disclosure bar as an affirmative defense.  *Beauchamp*, 816 F.3d at 40.  And, affirmative defenses should not be ignored or stricken until after discovery has occurred.  *Nat'l Credit Union Admin. v. First Union Cap. Markets Corp*., 189 F.R.D. 158, 163 (D. Md. 1999). Accordingly, at this juncture, I decline to make a determination as to whether Relator qualifies as an original source.

In sum, Relator's Motion puts the cart before the horse; discovery may reveal a genuine dispute of material fact regarding whether Schnupp acted "voluntarily" in disclosing his knowledge of defendants' fraud to the government.  Even if discovery would not alter the damages, "summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to the opposition."  *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986)) (alteration in *Harrods*).  As the Court said in *McCray v. Md. Dep't of Trans.*, 741 F.3d 480, 483 (4th Cir. 2014), "[s]ummary judgment before discovery forces the non-moving party into a fencing match without a sword or mask."

Thus, I shall deny Relator's Motion.  ECF 57.

### V. Conclusion

For the foregoing reasons, I shall deny the Motion, without prejudice to the right of Relator to move for summary judgement after discovery has concluded.

An Order follows, consistent with this Memorandum Opinion.

Date: May 23, 2023                                    _____/s/_____
                                                                    Ellen L. Hollander
                                                                    United States District Judge