IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES *ex rel.* TIMOTHY
SCHNUPP,
    *Relator,*

    v.
                              Civil No. ELH-17-2335

BLAIR PHARMACY, *et al.*,

    *Defendants.*

## MEMORANDUM OPINION

In this qui tam action, Timothy Schnupp, the Relator, sued his former employer, Blair

Pharmacy, Inc. ("BPI," "Blair Pharmacy," or "Pharmacy"), and its principal, Matthew Blair ("Mr.

Blair") (collectively, "Blair"), pursuant to the False Claims Act ("FCA"), 31 U.S.C. §§ 3728 *et*

*seq. See* ECF 1 ("Complaint"). The FCA "imposes civil liability for presenting false or fraudulent

claims for payment to the federal government. 31 U.S.C. §§ 3729-3733." *United States ex rel.*

*John Doe v. Credit Suisse AG*, ___ F.4th ___, 2024 WL 3974986, at *1 (4th Cir. Aug. 29, 2024);

*see also United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 423 (2023).[1]

---

[1] The FCA protects the public fisc by "impos[ing] civil liability on persons who knowingly submit false claims for goods and services to the United States." *United States ex rel. Beauchamp v. Academi Training Ctr.*, 816 F.3d 37, 39 (4th Cir. 2016); *see United States ex rel. Rostholder v. Omnicare, Inc.*, 745 F.3d 694, 700 (4th Cir. 2014), *cert. denied*, 574 U.S. 819 (2014). In order to prevent fraud that might otherwise evade detection and to supplement government enforcement, the FCA permits a private individual, known as a relator, to file a civil lawsuit on behalf of the government against those who defraud the federal government. *Id.* As the "real party in interest," the government may elect to intervene. *United States ex rel. Eisenstein v. City of New York, New York*, 556 U.S. 928, 930 (2009). To encourage such suits, the statute allows the relator to collect a portion of the recovery as a reward. *See* 31 U.S.C. § 3730(b); *see generally Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 404 (2011); *United States ex rel. Bunk & Ammons v. Gov't Logistics N.V.*, 842 F.3d 261, 265 n.3 (4th Cir. 2016); *ACLU v. Holder*, 673 F.3d 245, 246-51 (4th Cir. 2011).

In May 2022, following a lengthy investigation, the United States declined to intervene in the case.  ECF 28.  The Relator opted to pursue the case, 31 U.S.C. § 3730(b)(4)(B), and the Complaint was unsealed.  ECF 29.  Then, on May 11, 2022, plaintiff filed his "First Amended False Claims Act Complaint."  ECF 30 (the "Amended Complaint").  Schnupp seeks $22 million in damages, pursuant to 31 U.S.C. §§ 3729-3732.

The Amended Complaint contains two counts.  Count I asserts false claims under 31 U.S.C. § 3729(a)(1)(A) and Count II asserts false claims under 31 U.S.C. § 3729(a)(1)(B).

On April 6, 2023, pursuant to Fed. R. Civ. P. 14, the Pharmacy and Mr. Blair filed a Third-Party Complaint against Bahram Alavi and Atlas Medical Solutions, LLC, f/k/a Atlas Group, LLC ("Atlas"), seeking contribution and indemnification.  ECF 76.  They asserted federal question jurisdiction under 28 U.S.C. § 1331, on the ground that the claim "invokes questions arising under federal law, namely the FCA."  *Id.* at 4, ¶ 9.  Alternatively, defendants asserted supplemental jurisdiction under 28 U.S.C. § 1367.  *Id.*  However, defendants failed to seek leave of court for the filing.

Third-party defendants Alavi and Atlas moved to dismiss the Third-Party Complaint for failure to comply with Rule 14 and the Scheduling Order (ECF 73) of March 6, 2023.  *See* ECF 102.  In addition, they asserted failure to state a claim under Rule 12(b)(6).  *Id.*

Blair subsequently moved for leave to file the Third-Party Complaint and to amend it.  ECF 107.  By Memorandum (ECF 125) and Order (ECF 126) of January 18, 2024, I granted Blair's motion for leave to file the Third-Party Complaint and to amend it.  *Id.*  The "First Amended Third-Party Complaint" (ECF 127) (the "T.P. Complaint," "T.P.C.," or "Amended Third-Party Complaint") is the operative third-party complaint.

The Amended Third-Party Complaint contains three counts: "Common Law Indemnification" (Count I); "Common Law Contribution" (Count II); and "Contractual Indemnification Via The Distributor Agreement" (Count III). ECF 127, ¶¶ 36–40, 41–45, 46–49. In the T.P.C., Blair again asserts federal question jurisdiction pursuant to 28 U.S.C. § 1331, claiming that the T.P. Complaint "invokes questions arising under federal law, namely the FCA." *Id.* ¶ 9. Alternatively, Blair asserts supplemental jurisdiction under 28 U.S.C. § 1367. *Id.*

Atlas and Alavi have moved to dismiss the T.P. Complaint. ECF 131. The motion is supported by a memorandum (ECF 131-1) (collectively, the "Motion") and one exhibit (ECF 131-2), a "Settlement Agreement" between Atlas and Blair Pharmacy with respect to the case of *Atlas Group, L.L.C. v. Blair Pharmacy, Inc. and Matthew Blair*, JKB-15-2491 (D. Md.) ("Atlas Suit").[2]

In the Motion, Alavi and Atlas advance three central arguments for dismissal, ECF 131-1 at 24:[3] "1) [Blair's] claims are barred by the [Settlement Agreement/]Release entered into between the Parties, 2) its quasi-contract claims are precluded when an express contract exists between the parties; and 3) the FCA and prevailing law eschews the very type of blame-shifting efforts undertaken here by Blair and Blair Pharmacy."

Blair opposes the Motion. ECF 138 (the "Opposition").[4] Alavi and Atlas have replied. ECF 143 (the "Reply").

_____

[2] The Court may take judicial notice of the suit filed in this District by Atlas against BPI, as it is a matter of public record. *See Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015).

[3] Throughout the Memorandum Opinion, the Court cites to the electronic pagination. However, the electronic pagination does not always correspond to the page number imprinted on a particular submission.

[4] Blair initially filed "Third-Party Plaintiffs' Opposition to Third-Party Defendants' Motion to Dismiss the First Amended Third-Party Complaint." ECF 137. Thereafter, Blair filed a "CORRECTED" Opposition. Accordingly, I shall refer to ECF 138 as the Opposition.

The Court has an independent obligation to ensure that it has subject matter jurisdiction. *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010); *Kim v. Cedar Realty Trust, Inc.*, ___ F. 4th ___, No. 23-1905, 2024 WL 4031409, at *5 (4th Cir. Sept. 4, 2024); *Jones v. United States Merit Sys. Prot. Bd.*, 103 F.4th 984, 992 (4th Cir. 2024).   This is so even when no party challenges jurisdiction.  *Id.*   Because subject matter jurisdiction was not readily apparent as to the T.P.C., I issued an Order on July 24, 2024 (ECF 150), directing counsel "to submit memoranda addressing the threshold question of the Court's jurisdiction as to the T.P. Complaint." *Id.* at 2.   The parties filed their memoranda on August 16, 2024.  *See* ECF 157 (Blair); ECF 158 (Atlas and Alavi). And, each side filed a reply on August 26, 2024.  *See* ECF 159 (Atlas and Alavi); ECF 160 (Blair).

In Blair's memorandum (ECF 157), Blair contends that the T.P. Complaint "involve[s] questions of federal law arising under the FCA." *Id.* at 4.   Therefore, Blair asserts that the Court has subject matter jurisdiction under 28 U.S.C. § 1331.   Alternatively, Blair urges the Court to exercise supplemental jurisdiction under 28 U.S.C. § 1367.  *Id.* at 6.   In contrast, Alavi and Atlas assert that there is no federal question at issue.   ECF 158 at 2.   Rather, they claim that the causes of action rely solely on Maryland law.  *Id.* at 4–5.   Moreover, they argue, *id.* at 6:  "The temporal posture of Blair's action divests this Court of subject matter jurisdiction."   In their view, there is no case or controversy, because Blair has not yet been found liable.  *Id.*   Therefore, they contend that the T.P.C. is subject to dismissal.  *Id.*

No hearing is necessary to resolve the Motion.  *See* Local Rule 105.6.   For the reasons that follow, I conclude that the Third-Party Complaint establishes federal question jurisdiction.   In the alternative, I shall exercise supplemental jurisdiction with respect to the T.P. Complaint. Moreover, I shall deny the Motion as to Counts I and II.   As to Count III, I shall grant the Motion,

with leave to amend, by a date to be determined.  However, I shall stay the Third-Party suit pending a determination of Blair's liability to Schnupp under the FCA.

## I.    Procedural Background[5]

Plaintiff filed his qui tam suit in 2017.  ECF 1.[6]  As noted, in May 2022, after a lengthy investigation by the government, the United States declined to intervene in the case.  ECF 28.  The Relator chose to pursue the case, and the Complaint was unsealed.  ECF 29.  The suit was also amended.  ECF 30.

Schnupp alleges, *inter alia*, that defendants knowingly submitted false claims to the Medicare Program, 42 U.S.C. § 1395 *et seq.* ("Medicare"), a federally funded health insurance program for people ages 65 and older and for certain people with disabilities (ECF 30, ¶¶ 11 *et seq.*), and to the Department of Defense TRICARE health insurance program.  *Id.* ¶¶ 20 *et seq.*[7] In particular, the Relator contends that Blair knowingly submitted false claims to Medicare and TRICARE for certain compound drugs, by substituting a less expensive drug for a more expensive drug; by billing for medication that was not provided; by overcharging for certain medications; and by committing violations of the Anti-Kickback Statute ("AKS"), 42 U.S.C. § 13209-7b(b). *See id.* ¶¶ 28–43.

I pause to note that the claims lodged by the Relator were the subject of a federal criminal prosecution of Mr. Blair.  *See United States v. Matthew Blair*, ELH-19-410 (D. Md.).  Pursuant to

---

[5] I have attempted to set forth events chronologically.  But, this is not always feasible, because many events overlap in time.

[6] "*Qui tam* is short for '*qui tam pro domino rege quam pro se ipso in hac parte sequitur*,' which means 'who pursues this action on our Lord the King's behalf as well as his own.'" *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 463 n.2 (2007).

[7] TRICARE was formerly known as the Civilian Health and Medical Program of the Uniformed Services or "CHAMPUS."  *See* 32 C.F.R. § 199.17.

a Plea Agreement (*id.*, ECF 181, ECF 181-1), Mr. Blair entered a plea of guilty on December 3, 2021 (*id.*, ECF 178), to Count 31 of the Superseding Indictment (*id.*, ECF 20).  That count charged Mr. Blair with Payment of Illegal Remunerations, in violation of 42 U.S.C. § 1320a-7b(b)(2)(A).  The Plea Agreement included a lengthy "Stipulation of Facts."  *See id.*, ECF 181-1.  And, on February 10, 2022 (*id.*, ECF 188), pursuant to Fed. R. Crim. P. 11(c)(1)(C), Mr. Blair was sentenced to twelve months and one day of imprisonment.  *See id.*, ECF 189 (Judgment).

Blair moved to dismiss the qui tam case.  ECF 38.  After briefing (ECF 47, ECF 50), which included several extensions requested by the parties (ECF 42, ECF 43, ECF 48, ECF 49), the Court denied the motion by Memorandum Opinion and Order of December 9, 2022.  ECF 55, ECF 56.  Soon after the denial of defendants' motion to dismiss, plaintiff moved for partial summary judgment.  ECF 57.  On January 25, 2023, while the summary judgment motion was pending, Blair answered the suit.  ECF 60.  Then, on March 6, 2023, I issued a Scheduling Order to govern the qui tam case.  ECF 73.  Thereafter, by Memorandum Opinion and Order docketed on May 24, 2023 (ECF 100, ECF 101), I denied plaintiff's motion for partial summary judgment.

Of relevance here, the Scheduling Order (ECF 73) set a deadline of April 6, 2023, for "[m]oving for joinder of additional parties and amendment of pleadings."  *Id.* at 1.  On April 6, 2023, Blair filed a Third-Party Complaint against Alavi and Atlas.  ECF 76.  However, as indicated, under the Scheduling Order, by April 6, 2023, Blair was required to *move* for leave to add additional parties.  Instead, Blair filed the T.P. Complaint, without seeking the Court's permission.  The Third-Party Complaint (ECF 76) contained two counts.  Count I asserted "Common Law Indemnification" and Count II asserted "Common Law Contribution."  *Id.* ¶¶ 33– 42.

Alavi and Atlas filed a "Motion To Strike Or Dismiss the Third-Party Complaint" (ECF 102), supported by a memorandum (ECF 102-1) (collectively, "Motion to Strike").  Among other things, they complained that Blair failed to seek leave of Court to file the Third-Party Complaint, as required by ECF 73 and Fed. R. Civ. P. 14.  *See* ECF 102-1 at 2.

Thereafter, Blair moved for leave to file a third-party complaint.  ECF 107.  Blair also included a request to amend the suit.  *Id.*  In addition, Blair opposed the Motion to Strike.  ECF 108.  And, Blair submitted as an exhibit the Distributor Agreement that, according to Blair, outlined the relationship between the parties.  ECF 108-1.[8]  Alavi and Atlas filed a combined reply as to the Motion to Strike and an opposition to Blair's motion for leave to file a T.P.C.  ECF 112.

In the course of the litigation, the parties have requested several extensions of various deadlines set forth in the Scheduling Order.  But, the deadline for motions for joinder and amendment of pleadings was never extended.  For example, pursuant to a joint request (ECF 105), certain deadlines were extended by way of an Order of June 20, 2023.  ECF 106.  A consent motion to extend discovery and dispositive motions was filed on October 20, 2023.  ECF 117.  I granted that request by Order of October 23, 2023.  ECF 118.  Again, no extension was sought or granted for joinder of parties or amendments.  Another extension followed on November 20, 2023.  ECF 118, ECF 119.  But, it applied only to discovery.  Discovery and dispositive motions deadlines were again extended, by Order of December 29, 2023.  ECF 122; *see* ECF 121.  But, this Order did not extend the date to move for joinder.  And, pursuant to the Court's Order of April 5, 2024 (ECF 142), discovery closed on or about May 8, 2024.  *See* ECF 144.

---

[8] Atlas attached the same document as an exhibit to the Atlas suit.  *See id.*, ECF 1-3.

Nevertheless, by Memorandum (ECF 125) and Order (ECF 126) of January 18, 2024, I denied the Motion to Strike (ECF 102) and granted the "Motion for Leave to File Third-Party Complaint and for Leave to Amend the Third-Party Complaint" (ECF 107).

In the interim, on September 13, 2023, plaintiff moved to supplement his suit.  ECF 113. He sought to add a claim of unlawful retaliation under 31 U.S.C. § 3730(h).[9]  Defendants opposed the motion.  ECF 116.  And, by Memorandum Opinion and Order of June 6, 2024 (ECF 147, ECF 148), I denied plaintiff's motion to supplement his suit (ECF 113).

## II.    Factual Background[10]

Schnupp alleges that Blair violated the AKS by knowingly submitting false claims to Medicare and TRICARE, by way of bills for compound drugs that did not contain the drugs described or the quantities that were promised.  ECF 30, ¶¶ 28, 29.  Moreover, according to Schnupp, Blair "recruited" Alavi and Atlas "to market Blair Pharmacy's compounded drug prescriptions to physicians treating Medicare and TRICARE beneficiaries."  *Id.* ¶ 36.  Schnupp explains that, pursuant to a Distributor Agreement, Blair agreed "to pay Alavi a commission equal to 50% of gross reimbursement paid to Blair Pharmacy as a result of Atlas Group's efforts to promote, sell and market compounded pain and scar creams filled by Blair Pharmacy."  *Id.* ¶ 37.

In the T.P. Complaint, Blair observes that Schnupp implicates Alavi and Atlas in the alleged misconduct but fails to assert "any direct claims against Alavi and Atlas."  ECF 127, ¶ 2. Yet, Blair maintains that Alavi and Atlas have "received approximately $2,466,123.24 as a result of their referrals," but they "have not paid any restitution whatsoever or repaid any of the funds

---

[9] In actuality, the plaintiff sought to amend, not supplement.

[10] As discussed, *infra*, at this juncture I must assume the truth of the facts alleged in the suit.  *See Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019).

improperly received." *Id.* ¶ 3. Blair also argues, *inter alia*, that Schnupp is precluded from recovering from Blair because, as part of Mr. Blair's plea agreement, Blair already "reimbursed the government $3,176,470.83, which represents 100% of all monies he received as a result of these reimbursements submissions [sic] to Medicare and TRICAIRE [sic]." *Id.*

Accordingly, Blair asserts, *id.* ¶ 4: "Blair and BPI bring this First Amended Third-Party Complaint for contribution and indemnification against Alavi and Atlas based on their alleged violations of the AKS, alleged in the underlying qui tam lawsuit." Although Blair insists that the claims against Blair "have no merit and are legally deficient," Blair contends that, to the extent there should be any damages assessed against Blair, "Atlas and Alavi should be required to indemnify them in full and/or contribute in whole and/or in part to their payment." *Id.*

Blair describes the operations of BPI as follows, *id.* ¶ 12:

> BPI's business model involves filling compounding prescriptions for patients that are referred to BPI by their doctors or medical providers. Upon the filling of each compound prescription, BPI submitted a request for reimbursement to the patient's insurance company. The insurance company, in turn, reimbursed BPI for the cost of the compound prescription ingredients.

Blair recounts that in August 2014, Mr. Blair hired Schnupp as Pharmacist-in-Charge of BPI. *Id.* ¶ 13. Schnupp held this position until January 2017. *Id.* During this period, "Schnupp was intimately involved in all of BPI's pharmacy operations, including the filling and reimbursement of nearly every compound prescription." *Id.* Additionally, "Schnupp systematically leveraged a deal where he earned a significant share of BPI's yearly profits." *Id.* ¶ 14. According to Blair, "Schnupp played an essential role in designing and facilitating BPI's 'independent sales and marketer' relationships, including the distributor relationship with Atlas, resulting in Blair's criminal plea to a single violation of 42 U.S.C. § 1320a-7b(b)(2)(A)." *Id.*

"Atlas and BPI entered into the 'Distribution Agreement' . . . ." on November 24, 2014. *Id.* ¶ 16; *see* ECF 108-1 ("Distributor Agreement").[11]  Blair alleges, ECF 127 at ¶ 16: "Under the terms of the Distribution Agreement, Atlas and Alavi agreed to promote, sell, and market compound pain and scar creams to their physician customers in all states where BPI was licensed." Further, Blair alleges that "many of Atlas and Alavi's physician customers treated a large number of patients that were Medicare and TRICARE beneficiaries." *Id.* ¶ 19.  And, Blair asserts, *id.* ¶ 20: "In return for referring prescriptions to BPI, BPI paid Alavi and Atlas a commission equal to 50% of the gross reimbursement paid to BPI."

In addition, Blair alleges that the Distributor Agreement "contains an express indemnification clause," which states, in part, *id.* ¶ 21 (quoting ECF 108-1 at 7) (alterations in ECF 127):

> [Atlas] shall indemnify defend and hold harmless [BPI] and its affiliates, and their respective shareholders, members, officers, directors, managers, employees successors, agents, and representatives . . . from and against all Losses incurred by, or sought to be imposed on, [BPI and Blair] . . . to the extent such Losses are caused by . . . any violation by [Atlas or Alavi] of applicable Federal, state, or local laws or regulations[.]

---

[11]  The Amended T.P. Complaint cites to "Exhibit A" as a copy of the Distributor Agreement.  ECF 127, ¶ 16.  However, there is no "Exhibit A" attached to ECF 127.  The Opposition cites to "ECF 127-1" as the Distributor Agreement.  *See* ECF 138 at 5.  However, there is no "ECF 127-1."  *See* Docket.  The only copy of the Distributor Agreement I could locate is found at ECF 108-1, which is an attachment to Blair's earlier opposition to the motion to strike. Alavi and Atlas similarly cite to ECF 108-1 as the Distributor Agreement.  ECF 131 at 7; *see id.* at 11 n.5.

Additionally, the parties refer to the agreement as both the "Distributor Agreement" and the "Distribution Agreement."  *See, e.g.*, ECF 131-1 at 3, 4, 8 (employing the term "Distributor Agreement"); *id.* at 11 (employing the term "Distribution Agreement"); ECF 138 at 2, 3, 4, 5 (employing the term "Distributor Agreement"); *id.* at 10, 12 (employing the term "Distribution Agreement").  The document is titled "Distributor Agreement."  Therefore, I shall use that terminology, unless quoting material that uses a different name.

In the Motion, Alavi and Atlas explain that on August 21, 2015, Atlas filed suit in federal court in Maryland against Mr. Blair and Blair Pharmacy. ECF 131 at 12 n.7; *see* Atlas Suit, *Atlas Group, L.L.C. v. Blair Pharmacy, et al.*, JKB-15-2491.  According to Alavi and Atlas, that suit "arose out of a dispute between the Parties that was based on the same Distributor Agreement that Blair and Blair Pharmacy invoke in this present litigation."  ECF 131-1 at 12 n.7.  Specifically, in their case, Alavi and Atlas alleged that Mr. Blair and Blair Pharmacy engaged in a "blatant refusal to honor [their] payment obligations under a contract," *i.e.*, the payment of 50 percent gross sales commissions.  *Id.* (citing *Atlas Group, L.L.C.*, JKB-15-2491, ECF 1 ("Atlas Complaint") at 1).  Atlas attached to the Atlas Suit a copy of the Distributor Agreement referenced by Blair in this matter.  ECF 131-1 at 12 n.7; *see Atlas Suit*, ECF 1-3.

According to Alavi and Atlas, the Atlas Suit culminated in a Settlement Agreement dated September 30, 2015.  ECF 131-1 at 12 n.7.  They have submitted a copy of the Settlement Agreement as an exhibit to their Motion.  *See* ECF 131-2.  Thereafter, on October 14, 2015, Atlas filed a "Notice of Dismissal with Prejudice".  *See Atlas Suit*, ECF 4.  And, by Order of October 15, 2015, Judge James K. Bredar dismissed the case, with prejudice.  *Id.*, ECF 5.

Notably, the T.P. Complaint does not mention either the Atlas Suit or the Settlement Agreement.  *See* ECF 127.

In or about 2015, the federal government commenced a criminal investigation of Mr. Blair, concerning conduct that is at issue in the qui tam case.  ECF 127, ¶ 22.[12]  Blair alleges that "the relationship between Atlas and BPI played a significant role in the opening of the criminal

---

[12] Indeed, the United States sought to delay its decision whether to intervene in the FCA case because the matter was "actively being pursued on a parallel criminal and civil track."  ECF 10-1 at 3.

investigation." *Id.* As indicated, the investigation culminated in the federal criminal prosecution of Mr. Blair. *See United States v. Matthew Blair*, ELH-19-410 (D. Md.).

In particular, Mr. Blair was charged in thirty-six counts. ECF 1, ECF 20. As Blair puts it, the counts included "alleged violations of the AKS based on BPI's payments to Atlas in exchange for referring compounded prescriptions to BPI that were paid for by government insurance programs." ECF 127, ¶ 23. On December 3, 2021, Mr. Blair entered a plea of guilty to Count 31, charging him with a violation of the AKS in connection with the Distributor Agreement between BPI and Atlas. *See United States v. Matthew Blair*, ELH-19-410, ECF 178.

The guilty plea was tendered pursuant to a Plea Agreement. ECF 181, ECF 181-1. The Stipulation of Facts included in the Plea Agreement (ECF 181-1) is quite lengthy. It discusses the Distributor Agreement between BPI and Atlas. *See id.* at 2, 3, 4, 5. According to the Stipulation of Facts, Blair recruited "B.A., the owner of Atlas Group, LLC," *i.e.*, Bahram Alavi, to engage in violations of the AKS. *Id.*, ECF 181-1 at 2. Further, it notes that Blair and Atlas entered into a "Distributor Agreement," which "Blair entered into . . . with the knowledge that such an arrangement violated federal law." *Id.*, 181-1 at 3. And, the Stipulation of Facts explains, *id.* at 3: "With this knowledge of the wrongfulness of his conduct, Blair intentionally entered into an agreement with B.A. to pay him a value based 50% commission on any successfully reimbursed TRICARE pharmacy benefit claim."[13]

---

[13] The Stipulation of Facts does not suggest that Atlas or Alavi were duped or deceived by Mr. Blair. The reasons that led Alavi and Atlas to work with Mr. Blair were not pertinent to the issues in the criminal case against Mr. Blair. Nor is the Court privy to the reason(s) that led the government to prosecute only Mr. Blair, and not Mr. Alavi.

Additionally, as part of his Plea Agreement, Mr. Blair agreed to repay the government the sum of $3,176,470.83. *Id.*, ECF 181, ¶ 9; *see* ECF 127, ¶ 24. In the T.P. Complaint, Blair asserts that Alavi and Atlas "have not reimbursed the government in any amount." ECF 127, ¶ 25.

Blair notes that although Schnupp only sued Mr. Blair and Blair Pharmacy, *id.* ¶ 28, the suit itself refers to the Distributor Agreement between BPI and Atlas. *Id.* ¶¶ 29–32. And, Blair complains that "Alavi and Atlas remain in possession of all the commission they received pursuant to the BPI/Atlas Distribution Agreement." *Id.* ¶ 34. Blair asserts, *id.* ¶ 35: "Accordingly, should Blair and/or BPI be found liable for additional damages based upon their purported violation of the AKS (and they should not), Alavi and Atlas should be required to indemnify them in full and/or contribute in whole or in part to their payment."

In the Opposition (ECF 138), Blair contends that the Settlement Agreement between BPI and Atlas concerns an unrelated civil case involving the Distributor Agreement. *Id.* at 2. In addition, Blair argues that the Settlement Agreement does not foreclose claims for indemnification and contribution. *Id.* Moreover, Blair disputes any claim that Atlas and Alavi are immune from suit on the ground that the FCA does not permit claims for indemnification and contribution. *Id.*; *see* 31 U.S.C. §§ 3729-3733.

### III.    Standards of Review

#### A.   Fed. R. Civ. P. 12

The Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See* ECF 131. A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Nadendla v. WakeMed*, 24 F.4th 299, 304–05 (4th Cir. 2022); *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846

F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

The "court's role under Rule 12(b)(6) is to evaluate the sufficiency of a complaint . . . ." *Doriety v. Sletten*, 109 F.4th 670, 679 (4th Cir. 2024). Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). *See Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325–26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to provide a defendant with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Nadendla*, 24 F.4th at 304–05; *Paradise Wire & Cable*, 918 F.3d at 317; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally

insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cnty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011),

*cert. denied*, 566 U.S. 937 (2012).  But, "[m]ere recitals of a cause of action, supported only by conclusory statements, are insufficient to survive" a Rule 12(b)(6) motion.  *Morrow v. Navy Fed. Credit Union*, No. 21-2323, 2022 WL 2526676, at *2 (4th Cir. July 7, 2022).

To resolve a Rule 12(b)(6) motion, the question for the court is whether the plaintiff has stated a plausible claim for relief.  *Twombly*, 550 U.S. at 570.  It is well settled that a plaintiff may not cure a defect in a complaint or otherwise amend a complaint by way of her opposition briefing.  *See, e.g.*, *De Simone v. VSL Pharm., Inc.*, 36 F.4th 518, 531 (4th Cir. 2022) (recognizing that, generally, new arguments cannot be raised in a reply brief); *Henderson v. City of Roanoke*, 2022 WL 704351, at *3 (4th Cir. Mar. 9, 2022) (per curiam) ("[N]o litigant is exempt from the well-established rule 'that parties cannot amend their complaints through briefing or oral advocacy.'") (quoting *So. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013)); *Glenn v. Wells Fargo Bank, N.A.*, DKC-15-3058, 2016 WL 3570274, at *3 (D. Md. July 1, 2016) (declining to consider declaration attached to brief opposing motion to dismiss because, among other things, it included allegations not included in the suit); *Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (stating that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd*, 141 F.3d 1162 (4th Cir. 1998).

Moreover, at the Rule 12(b)(6) stage, courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'"  *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards*, 178 F.3d at 243); *see Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023); *Bing v. Brio Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) .  But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule

12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009).  Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint*.'"  *Goodman*, 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst*, 4 F.3d at 250); *see L.N.P. v. Kijakazi*, 64 F.4th 577, 585-86 (4th Cir. 2023).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'"  *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448).  In other words, "[a]t the pleadings stage, courts are limited to considering the four corners of the complaint and the documents attached or incorporated thereto."  *Guerrero v. Ollie's Bargain Outlet, Inc.*, ___ F.4th ___, 2024 WL 3928094, at *4 (4th Cir. Aug. 26, 2024); *see Pendleton v. Jividen*, 96 F.4th 652, 656 (4th Cir. 2024) (recognizing that parties may incorporate documents into a complaint by reference); *Goines*, 822 F.3d at 166 (a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits"); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed v. Town of Gilbert*, 576 U.S. 155 (2015); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004).

Under limited circumstances, however, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Doriety*, 109 F.4th at 679; *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019); *Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017); *Kensington Volunteer Fire Dep't v. Montgomery Cnty.*, 684 F.3d 462, 467 (4th Cir. 2012).

But, even if a plaintiff has referenced a document, that does not guarantee consideration of it on a motion to dismiss. "[B]efore treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167. Notably, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.* Conversely, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Id.*

For a document to be integral, a "plaintiff's claims must turn on, or otherwise be based on, the contents of the document." *Brentzel v. Fairfax Transfer & Storage, Inc.*, 2021 WL 6138286, at *2 (4th. Cir. Dec. 29, 2021) (per curiam) (citing *Goines*, 822 F.3d at 166). Further, to be "integral," a document must be one "that by its 'very existence, and *not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal*

*Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (emphasis in original) (citation omitted); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").  "As examples, 'courts have found integral the allegedly fraudulent document in a fraud action, the allegedly libelous magazine article in a libel action, and the documents that constitute the core of the parties' contractual relationship in a breach of contract dispute.'" *Chesapeake Bay Found., Inc.*, 794 F. Supp. 2d at 611 n.4 (quoting *Fisher v. Md. Dep't of Pub. Safety & Corr. Servs.*, JFM-10-0206, 2010 WL 2732334, at *2 (D. Md. July 8, 2010)).

In addition, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). However, under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute," in that they are (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  This includes taking judicial notice of documents from state court proceedings and other matters of public record, without converting the motion to one for summary judgment.  *Parikh v. Frosh*, PX-22-110, 2023 WL 131043, at *5 (D. Md. Jan. 9, 2023), *aff'd in part, rev'd in part on other grounds*, *Parikh v. Brown*, 2024 WL 2764720 (4th Cir. May 30, 2024) (per curiam); *Brown v. Ocwen Loan Servicing, LLC*, PJM-14-3454, 2015 WL 5008763, at *1 n.3 (D. Md. Aug. 20, 2015), *aff'd*, 639 F. App'x 200 (4th Cir. 2016); *Green v. Wells Fargo Bank, N.A.*, 927 F. Supp. 2d 244, 246 n.2 (D. Md. 2013); *cf. Anderson*

*v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n.1 (4th Cir. 1990) (concluding that a district court may "properly take judicial notice of its own records").

Here, it appears that Blair intended to attach to the T.P. Complaint as "Exhibit A" the Distributor Agreement between Blair and Atlas.  *See* ECF 127, ¶ 16.  Indeed, in its Opposition, Blair cites to the Distributor Agreement as an exhibit to the T.P. Complaint (ECF 127), labeling it as "ECF 127-1."  *See* ECF 138 at 5.  Moreover, the Distributor Agreement is central to the T.P. Complaint.  Further, in their Opposition, Alavi and Atlas cite to the same Distributor Agreement. ECF 131 at 7; *see id.* at 11 n.5.  Its authenticity is not disputed.

In my view, the Distributor Agreement gives rise to "'the legal rights asserted'" by Blair, as Count III is titled "Contractual Indemnification **Via The Distributor Agreement**."  ECF 127, ¶¶ 46–49 (emphasis added); *see Chesapeake Bay Found., Inc.*, 794 F. Supp. at 611 (citation omitted).  Accordingly, the Distributor Agreement is integral to the T.P. Complaint, as it forms the basis for Blair's claims against Alavi and Atlas.  *See Goines*, 822 F.3d at 166 (citation omitted).

I reach a different conclusion as to the Settlement Agreement between BPI and Atlas, submitted by Atlas and Alavi as an exhibit to the Motion.  Alavi was not a party to the Atlas Suit. Although Mr. Blair was a party to the Atlas Suit, the Settlement Agreement was between Atlas and Blair Pharmacy.  Alavi and Blair signed it, but only in their corporate capacities.  *See* ECF 131-2 at 1, 7.

Blair contests the applicability of the Settlement Agreement.  *See* ECF 138 at 2.  The Settlement Agreement is not attached to or integral to the T.P. Complaint.  Indeed, the T.P.C. never mentions either the Atlas Suit or the Settlement Agreement.  Accordingly, at this juncture, I may not consider it in deciding the Motion.

# IV.    Jurisdiction

## A.

As noted, as to the T.P. Complaint, Blair asserts federal question jurisdiction under 28 U.S.C. § 1331.   Alternatively, Blair relies on supplemental jurisdiction, pursuant to 28 U.S.C. § 1367.  ECF 157.

Blair argues that the Court "has original jurisdiction over the Third-Party Complaint under the federal-question doctrine . . . because, even if the claims in the Third-Party Complaint are Maryland common-law claims, any eventual liability of Third-Party Defendants will necessarily require an interpretation and adjudication of federal law under the FCA."  ECF 157 at 5.  Further, Blair argues that it is "also clear from the Motion to Dismiss that issues of federal law (i.e., the FCA) are inextricably intertwined with the claims asserted in the Third-Party Complaint," pointing to the emphasis the Third-Party Defendants place on "the importance of the federal statutory analysis as more than half of their legal arguments are devoted to FCA (a federal statute) 'jurisprudence.'"  *Id.* (citing ECF 131-1 at 16–24).

But, even if the Court lacks federal question jurisdiction, Blair urges the Court to exercise its supplemental jurisdiction to promote "judicial economy."   ECF 157 at 7.  Blair states: "Schnupp's Amended Complaint, the underlying violations of the AKS, and the Third-Party Complaint all involve the same case and controversy: what, if any liability, arises from the business relationship between Blair and Third-Party Defendants?"  ECF 157 at 7–8.

Atlas and Alavi counter that the T.P.C. does not give rise to federal question jurisdiction, because the causes of action in the T.P.C. arise under Maryland law.  ECF 158 at 3.  In their view, Blair's assertion of federal question jurisdiction "is a naked jurisdictional allegation untethered to law or fact."  *Id.* at 5.  In any event, they argue that the claims are not ripe, because they "are

predicated on a speculative liability," which is a "theoretical obligation . . . that has not occurred.[]" *Id.* at 6.

According to Alavi and Atlas, Blair has failed to meet the "burden of establishing this Court's jurisdiction over their claims . . . .  Distilled to their core, Blair's claims against Alavi and Atlas arise under state law without any requirement or need for this Court to interpret a federal law (even the FCA) to resolve the claims asserted in Blair's T.P. Complaint."  ECF 158 at 3–4. Moreover, Atlas and Alavi urge the Court to decline supplemental jurisdiction with respect to the T.P.C.  In their view, "Blair's claims are *not* 'claims that are so related to [the] claims in the action within such original jurisdiction that they form part of the same case of controversy under Article III of the United States Constitution.'"  *Id.* at 5 (citing 28 U.S.C. § 1367(a)) (emphasis in original). Moreover, they argue that "the third-party claims are '*independent of Schnupp's claims* in that they do not affect Schnupp's recovery and *seek only to address Atlas and Alavi's actions under the Distributor Agreement*," making the state law claims independent of the underlying FCA suit. ECF 159 at 8 (quoting ECF 138 at 21) (emphasis in ECF 159).

**B.**

The Court must have a jurisdictional basis to consider the T.P. Complaint.  The term "jurisdiction" refers to "'the courts' statutory or constitutional *power* to adjudicate the case.'" *United States v. Cotton*, 535 U.S. 625, 630 (2002) (citation omitted) (emphasis in original); *see B.R. v. F.C.S.B.*, 17 F.4th 485, 492 (4th Cir. 2021).

Federal courts are "courts of limited jurisdiction" and "possess only that power authorized by Constitution and statute."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 432 (4th Cir. 2014).  The federal courts "may not exercise jurisdiction absent a statutory basis."  *Exxon Mobil Corp. v. Allapattah Servs.,*

*Inc.*, 545 U.S. 546, 552 (2005).  Therefore, a federal court must presume that a case lies outside its limited jurisdiction unless and until jurisdiction has been shown to be proper.  *United States v. Poole*, 531 F.3d 263, 274 (4th Cir. 2008) (citing *Kokkonen*, 511 U.S. at 377).

Pursuant to U.S. Const. art. I, § 8, cl. 9, Congress has the power to prescribe the jurisdiction of federal courts.  But, it "may not expand the jurisdiction of the federal courts beyond the bounds established by the Constitution."  *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 491 (1983); *see Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941) ("The power reserved to the states under the Constitution to provide for the determination of controversies in their courts, may be restricted only by the action of Congress in conformity to the Judiciary Articles of the Constitution.").

Article III, § 2, cl. 1 of the Constitution provides: "The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties . . . ."  Of relevance here, Congress has conferred on the district courts original jurisdiction over civil actions that arise under the Constitution, laws, or treaties of the United States, in order to provide a federal forum for plaintiffs who seek to vindicate federal rights.  In particular, 28 U.S.C. § 1331 grants federal district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  This is sometimes called federal question jurisdiction.[14]

---

[14] In addition, "Congress . . . has granted district courts original jurisdiction in civil actions between citizens of different States, between U.S. citizens and foreign citizens, or by foreign states against U.S. citizens," so long as the amount in controversy exceeds $75,000.  *Exxon Mobil Corp.*, 545 U.S. at 552; *see* 28 U.S.C. § 1332.  This is known as diversity jurisdiction.  It "requires complete diversity among parties, meaning that the citizenship of *every* plaintiff must be different from the citizenship of *every* defendant." *Cent. W. Va. Energy Co., Inc. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011) (emphasis added); *see Strawbridge v. Curtiss*, 7 U.S. 267, 267 (1806).

A case "can 'aris[e] under' federal law in two ways." *Gunn v. Minton*, 568 U.S. 251, 257 (2013) (alteration in original); *see Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003). First, and most commonly, "a case arises under federal law when federal law creates the cause of action asserted." *Gunn*, 568 U.S. at 257; *see also Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916) (stating that a "suit arises under the law that creates the cause of action"). Second, a claim is deemed to arise under federal law for purposes of § 1331 when, although it finds its origins in state law, "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Empire Healthchoice Assurance Inc. v. McVeigh*, 547 U.S. 677, 690 (2006); *see Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 13 (1983).

This latter set of circumstances exists only in a "'special and small category' of cases." *Gunn*, 568 U.S. at 258 (quoting *Empire Healthchoice*, 547 U.S. at 699). Specifically, jurisdiction exists under this category only when "a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258; *see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313–14 (2005); *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808–09 (1988); *Flying Pigs, LLC v. RRAJ Franchising, LLC*, 757 F.3d 177, 181–82 (4th Cir. 2014).

The "presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *see Mayor and City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178, 197 (4th Cir. 2022) ("*B.P.*"), *cert. denied*, ___ U.S. ___, 143 S. Ct. 678 (2023); *Pressl v.*

*Appalachian Power Co.*, 842 F.3d 299, 302 (4th Cir. 2016).  This "makes the plaintiff the master of the claim," because in drafting the complaint, the plaintiff may "avoid federal jurisdiction by exclusive reliance on state law."  *Caterpillar Inc.*, 482 U.S. at 392; *see Pinney*, 402 F.3d at 442; *Custer v. Sweeney*, 89 F.3d 1156, 1165 (4th Cir. 1996).

Under the "venerable well-pleaded complaint rule, jurisdiction lies under Section 1331 only if a claim, when pleaded correctly, sets forth a federal question[.]"  *King v. Marriott Internat'l, Inc.*, 337 F.3d 421, 424 (4th Cir. 2003).  A court looks to the plaintiff's "'statement of his own claim . . . unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose.'"  *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004) (citation omitted).  "[A] claim in which the federal question arises only as a defense to an otherwise purely state law action does *not* 'arise under' federal law . . . . [J]urisdiction would not lie under Section 1331."  *King*, 337 F.3d at 424 (citation omitted; italics in *King*).

However, even when a well-pleaded complaint sets forth a state law claim, there are instances when federal law "is a necessary element" of the claim.  *Christianson*, 486 U.S. at 808.  "For a federal issue to be both a necessary and disputed element, 'the vindication of a right under state law [must] *necessarily* turn[ ] on some construction of federal law.'"  *Treacy v. Newdunn Assocs., LLP*, 344 F.3d 407, 410–11 (4th Cir. 2003) (quoting *Franchise Tax Bd. V. Constr. Laborers Vacation Trust*, 463 U.S. 1, 3 (1983)) (emphasis in original); *see BP*, 31 F.4th at 209.

The Fourth Circuit has observed that there is a "'slim category of cases' . . . in which state law supplies the cause of action but federal courts have jurisdiction under § 1331 because 'the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'"  *BP*, 31 F.4th at 208 (quoting *Burrell v. Bayer Corp.*, 918 F.3d 372, 380 (4th Cir. 2019)) (citations omitted).  But, the Court has admonished that "[f]ederal courts must be 'cautious' in exercising

this form of jurisdiction because it lies at the 'outer reaches of § 1331.'" *BP*, 31 F.4th at 208 (quoting *Burrell*, 918 F.3d at 380) (cleaned up).

In *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 813 (1986), the Supreme Court recognized that the "mere presence of a federal issue in a State cause of action does not automatically confer federal-question jurisdiction." In that case, involving the Federal Food, Drug, and Cosmetic Act, the Court emphasized Congress's intent that there be no federal private action for violations of the statute. *Id.* The Court stated: "Given the significance of the assumed congressional determination to preclude federal private remedies, the presence of the federal issue as an element of the state tort is not the kind of adjudication for which jurisdiction would serve congressional purposes and the federal system." *Id.*

Unlike the statute at issue in *Merrell*, the FCA does, indeed, provide for federal private actions. Pursuant to the FCA, Schnupp has sued Blair. In turn, in the T.P.C. Blair asserts three claims against Atlas and Alavi, based on Maryland law: a contract claim and two common law quasi-contract claims. Blair suggests that if Blair is found liable to Schnupp for violation of the FCA, then Alavi and Atlas are liable to Blair for contribution or indemnification. On this basis, Blair alleges that the T.P. Complaint "invokes questions arising under . . . the FCA." ECF 127, ¶ 9. ECF 107-2, ¶ 37.

For example, in Count I (Common Law Indemnification), Blair asserts: "[I]n the event that Schnupp prevails on any of his claims against Blair and/or BPI . . ., then Blair and/or BPI state that their actions were passive and/or secondary to the actions of Alavi and Atlas, whose actions were the active and/or primary cause of Blair's and/or BPI's alleged damages." ECF 127, ¶ 39. And, "[a]ccordingly, Alavi and Atlas must indemnify BPI and Blair against any damages stemming from this action." *Id.* ¶ 40. In Count II (Common Law Contribution), Blair alleges: "[I]n the event

26

that Schnupp prevails on any of his claims against Blair and/or BPI . . ., then Blair and/or BPI state that, at a minimum, the actions of Alavi and Atlas were a joint and contributing cause of the damages sustained by Schnupp." *Id.* ¶ 44.  And, "[a]ccordingly, BPI and Blair are entitled to contribution from Alavi and Atlas jointly and severally for any damages stemming from this action." *Id.* ¶ 44.  In Count III ("Contractual Indemnification Via The Distributor Agreement"), Blair states: "[I]n the event that Schnupp prevails on any of his claims against Blair and/or BPI . . . , then Alavi and Atlas are contractually obligated to indemnify BPI and Blair against any damages stemming from this action." *Id.* ¶ 49.

Schnupp's FCA suit against Blair is clearly predicated on federal law.  The FCA is implicated in the T.P.C. only in relation to the underlying qui tam lawsuit.  *See* ECF 127, ¶¶ 37, 42; *see also id.* ¶¶ 26, 32, 33.

However, to determine whether Blair may pursue the T.P.C. in the first instance, the Court must look to the FCA, to ascertain whether the FCA permits common law or state law claims of contribution and indemnification.  In other words, whether Blair has a "right to relief necessarily depends on resolution of a substantial question of federal law": whether the FCA permits third-party claims for indemnification and contribution.  *See B.P.*, 31 F.4th at 208.  Given this issue, it may well be that the Court has federal question jurisdiction with respect to the T.P.C.

But, I need not decide that issue.  Even if the Court lacks federal question jurisdiction, another avenue for jurisdiction is available.  Under 28 U.S.C. § 1367(a), district courts are granted "supplemental jurisdiction over all other claims that are so related to claims in the action within [the courts'] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  *See Equal Emp. Opportunity Comm'n v. Greenhouse Enter., Inc.*, No. 3:14-CV-569-RJC-DCK, 2016 WL 1441206, at *3 (W.D.N.C. Apr. 12, 2016) ("In the

absence of subject-matter jurisdiction, the Court may only retain jurisdiction over the Third-Party Complaint by exercising supplemental jurisdiction.").  On the other hand, § 1367(c)(2) provides that a district court may decline to exercise supplemental jurisdiction if the supplemental claim "substantially predominates over the claim or claims over which the district court has original jurisdiction."  28 U.S.C. § 1367(c)(2).

In *Exxon Mobil Corp.*, 545 U.S. at 559, the Court said: "If the court has original jurisdiction over a single claim in the complaint, it has original jurisdiction over a 'civil action' within the meaning of § 1367(a) . . . Once the court determines it has original jurisdiction over the civil action, it can turn to the question whether it has a constitutional and statutory basis for exercising supplemental jurisdiction over the other claims in the action." [15]

Nevertheless, supplemental jurisdiction is discretionary, and a court may decline to exercise it for a variety of reasons.  *See* 28 U.S.C. § 1367(c) (enumerating bases for declining to exercise supplemental jurisdiction).  These reasons include the fact that a state law claim "raises a novel or complex issue of State law," § 1367(c)(1); the state law "claim substantially predominates over the claim or claims over which the district court has original jurisdiction," § 1367(c)(2); the "district court has dismissed all claims over which it has original jurisdiction," § 1367(c)(3); and

---

[15] Courts have found that "[f]ederal jurisdiction cannot be created by a third-party complaint when no federal jurisdiction exists over the original action."  *Blackburn Pre-Owned Autos, LLC v. Blackburn*, No. 2:06CV00303, 2006 WL 1875892, at *2 (S.D.W. Va. July 5, 2006); *see also NGM Ins. Co. v. Secured Title & Abstract, Inc.*, No. 3:07CV536, 2008 WL 1858884, at *5 (E.D. Va. Apr. 22, 2008) ("[I]n order for the Court to exercise supplemental jurisdiction here, the Third-Party Complaint must have arisen out of the same operative facts as involved in the Licklider Cross-Claim and the Interpleader."); *Milian v. Worsham Kreynus Properties, LLC*, 3:18-CV-724 (DJN), 2019 WL 2437459, at *8 (E.D. Va. June 11, 2019) ("Because Count VIII and Plaintiffs' federal claims do not share a common nucleus of operative fact, the Court cannot exercise supplemental jurisdiction over Count VIII.").

"in exceptional circumstances, there are other compelling reasons for declining jurisdiction," § 1367(c)(4).

In addition, the Fourth Circuit has recognized that "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995); *see ESAB Group, Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 394 (4th Cir. 2012) ("Section 1367(c) recognizes courts' authority to decline to exercise supplemental jurisdiction in limited circumstances, including . . . where the court dismisses the claims over which it has original jurisdiction."); *Hinson v. Norwest Fin. S. Carolina, Inc.*, 239 F.3d 611, 616 (4th Cir. 2001) (stating that, "under the authority of 28 U.S.C. § 1367(c), authorizing a federal court to decline to exercise supplemental jurisdiction, a district court has inherent power to dismiss the case or, in cases removed from State court, to remand, provided the conditions set forth in § 1367(c) for declining to exercise supplemental jurisdiction have been met").

Thus, "the doctrine of supplemental jurisdiction . . . 'is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in a manner that most sensibly accommodates a range of concerns and values.'" *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 203 (4th Cir. 1997) (quoting *Shanaghan v. Cahill*, 58 F.3d 106, 106 (4th Cir. 1995)). In *ESAB Group, Inc.*, 685 F.3d at 394, the Fourth Circuit described the traditional approach to supplemental jurisdiction (previously known as "pendent" jurisdiction). It said, *id.* at 394 (internal citation omitted):

> [S]o long as one claim in an action presented a federal question on the face of the well-pleaded complaint, a court could exercise jurisdiction over the entire constitutional case or controversy. It does not follow, however, that the federal court had original jurisdiction over the entire case; rather, it had original jurisdiction over at least one claim, allowing the exercise of supplemental/pendent jurisdiction over the remaining claims. And the Supreme Court subsequently recognized that,

when the exercise of pendent jurisdiction over these claims became "inappropriate," district courts had inherent authority to remand them to state courts.

When exercising this discretion, the Supreme Court has instructed federal courts to "consider and weigh . . . the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over . . . pendent state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). The Court has also said: "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966).

Of relevance here, "[i]n the specific context of third party complaints, supplemental jurisdiction exists over such complaints when they 'clearly form part of the same case or controversy as the claims originally posited in the case' . . . ." *Troy Brave LLC v. Grantsville Truck & Trailer, LLC*, 692 F. Supp. 3d 516, 521–22 (D. Md. 2023) (quoting *Hartford Fire Ins. Co. v. Harborview Marina & Yacht Club Cmty. Ass'n, Inc.*, PJM-16-769, 2018 WL 656437, at *5 (D. Md. Feb. 1, 2018)). Claims form part of the same case or controversy if they "'derive from a common nucleus of operative fact,'" such that a plaintiff would "ordinarily be expected to try them all in one judicial proceeding," regardless of their federal or state character. *Issac v. North Carolina Dept. of Transp.*, 192 F. App'x 197, 199 (4th Cir. 2006) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)).

The T.P. Complaint is intertwined with the Amended Complaint; it "derive[s] from a common nucleus of operative fact." *See Issac*, 192 F. App'x at 199. As discussed, the FCA suit concerns, in part, the Distributor Agreement between Blair and Atlas Pharmacy. That Distributor Agreement is also at issue in the T.P. Complaint. Further, Mr. Blair pleaded guilty to the charge

of violation of the AKS in connection with the Distributor Agreement between BPI and Atlas.  *See* ELH-19-410, ECF 178.  Indeed, the Stipulation of Facts included in the Plea Agreement (*id.*, ECF 181-1) discusses the Distributor Agreement at length, and refers to Bahram Alavi by the initials "B.A."  *See id.* at 2, 3, 4, 5.  Thus, in my view, the claims Blair asserts in the T.P. Complaint against Atlas and Alavi "'clearly form part of the same case or controversy as the claims originally posited in the [qui tam] case.'"  *Troy Brave LLC*, 692 F. Supp. 3d at 521–22 (quoting *Hartford Fire Ins. Co.*, 2018 WL 656437, at *5).

In the Memorandum of Atlas and Alavi, filed in response to the Court's Order of July 24, 2024 (ECF 158), Atlas and Alavi assert for the first time the issue of ripeness as to the T.P.C.  *Id.* at 6.  They contend that the Court lacks subject matter jurisdiction with respect to the T.P.C. because "Blair's claims for indemnification and contribution are predicated on a speculative liability based upon a judgment, which does not yet, and may never, exist."  *Id*. But, Fed. R. Civ. P. 14(a) permits a party to implead "a nonparty who is *or may be liable* to it for all or part of the claim against it." (emphasis added).  Indeed, in *Am. Export Lines, Inc. v. Revel,* 262 F.2d 122, 124–25 (4th Cir.1958), the Fourth Circuit stated: "The purpose of third-party procedure is to prevent circuity of action by drawing into one proceeding all parties who may become ultimately liable, so that they may therein assert and have a determination of their various claims inter sese. This is intended to save the time and cost of duplicating evidence and to obtain consistent results from identical or similar evidence, as well as to avoid the serious handicap of a time lag between a judgment against the original defendant and a judgment in his favor against the third-party defendant."

In other words, "F.R. Civ. P. 14, pertaining to third-party actions, contemplates that damages are only a potentiality." *Sher v. Luxury Mortg. Corp.*, ELH-11-3656, 2012 WL 5869303,

at *13–14 (D. Md. Nov. 19, 2012); *see also MetroPCS Wireless, Inc. v. Telecomms. Sys., Inc.*, WDQ–09–0601, 2009 WL 3418581, at *4 & n. 4 (D. Md. Oct. 20, 2009) ("Although a claim for indemnification or contribution technically does not arise until the prime obligation to pay has been established . . . third-party actions [may] be commenced before they are technically ripe, so that all parties may establish their rights and liabilities in one action.") (quoting 82 N.Y. Jur.2d, Third–Party Practice, § 160)).

As noted, the doctrine of supplemental jurisdiction "'is a doctrine of flexibility . . . .'" *Jordahl*, 122 F.3d at 203 (quoting *Shanaghan*, 58 F.3d at 106).  And, courts have exercised jurisdiction over third-party complaints when they are part of the same case as the claims contained in the underlying case.  *See, e.g.*, *Milian*, 2019 WL 2437459, at *8; *Troy Brave LLC*, 692 F. Supp. 3d at 521–22 (quoting *Hartford Fire Ins. Co.*, 2018 WL 656437, at *5; *NGM Ins. Co.*, 2008 WL 1858884, at *5.  In my view, it would create a burden on judicial resources to ask another court to resolve the T.P.C., given that it implicates many of the same facts at issue in the qui tam suit. Accordingly, even if the Court lacks federal question jurisdiction under 28 U.S.C. § 1331, I shall exercise supplemental jurisdiction with respect to the T.P. Complaint.

I turn to the merits of the Rule 12(b)(6) claim in the Motion.

## V.    Rule 12(b)(6)

### A.

Atlas and Alavi have moved to dismiss the T.P. Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  ECF 131.  As mentioned, Alavi and Atlas advance three central arguments for dismissal, ECF 131-1 at 24: "1) [Blair's] claims are barred by the [Settlement Agreement/]Release entered into between the Parties [in the Atlas Suit], 2) its quasi-contract claims are precluded when an express contract exists between the parties; and 3) the FCA and

prevailing law eschews the very type of blame-shifting efforts undertaken here by Blair and Blair Pharmacy."

In the Opposition, Blair contends: 1) the Settlement Agreement between BPI and Atlas concerns an unrelated civil case involving the Distributor Agreement; 2) the Settlement Agreement does not foreclose claims for indemnification and contribution; and 3) Atlas and Alavi are not immune from suit on the ground that the FCA does not permit claims for indemnification and contribution.  ECF 138 at 2.; *see* 31 U.S.C. §§ 3729-3733.

With respect to the Settlement Agreement in the Atlas Suit, Atlas and Alavi assert, ECF 131-1 at 4: "[T]he Release is absolutely fatal to Blair and Blair Pharmacy's predominant contractual indemnification claim and, concomitantly, their pendant common law claims." Further, they argue that the T.P. Complaint "tethers the common law claims of indemnification and contribution **to the Distributor Agreement** and thus, the contractual claim."  *Id.* (emphasis in original).   In their view, because the Settlement Agreement pertains to the Distributor Agreement, "which unquestionably covers the instant claims, the Court should dismiss Third-Party Plaintiffs' claims."  *Id.* at 4–5.

Notably, Atlas and Alavi acknowledge that the T.P.C. "fails conspicuously to make any mention or reference to" the Settlement Agreement.  *Id.* at 4.  And, as discussed earlier, "[a]t the pleadings stage, courts are limited to considering the four corners of the complaint and the documents attached or incorporated thereto."  *Guerrero*, ___ F.4th ___, 2024 WL 3928094, at *4 (citing *Zak*, 780 F.3d at 606).  Of import here, a court may "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity."  *Goines*, 822 F.3d at 166 (citations omitted).  But, for a document to be integral, a "plaintiff's claims must

turn on, or otherwise be based on, the contents of the document," *Brentzel*, 2021 WL 6138286, at

*2 (citing *Goines*, 822 F.3d at 166), and the document must be one "that by its 'very existence,

and *not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay*

*Found., Inc.*, 794 F. Supp. 2d at 611 (emphasis in original) (citation omitted).

Alavi and Atlas seek to inject the Settlement Agreement into the T.P.C.  But, the Settlement

Agreement is clearly not integral to the T.P.C.; Blair never mentions it and the claims asserted by

Blair are not based on it.  Therefore, I may not consider the Settlement Agreement in deciding

whether the T.P.C. states a claim.

Regardless, Alavi and Atlas argue that the T.P.C. fails as a matter of law, because Blair is

not entitled to relief based on an offset of FCA liability by way of contribution or indemnification.

ECF 131-1 at 19.  They observe that Blair's claims are "contingent upon the FCA claims brought

by Relator Schnupp against" Blair, and Mr. Blair and the Pharmacy are "seeking to offset/shift

their own potential FCA liability arising from those claims."  *Id.* at 16, 17.  Indeed, the third-party

defendants quote from the T.P. Complaint, in which Blair states that Blair seeks to hold Atlas and

Alavi liable for "damages stemming from this action."  *Id.* at 17 (emphasis omitted) (quoting ECF

127, ¶¶ 39–40, 44–45, 49); *see also id.* at 17 (quoting ECF 127, ¶ 35).

According to Atlas and Alavi, the law prohibits Blair from "foist[ing] upon Alavi and Atlas

their ***anticipated*** civil FCA liability through their claims for indemnification and contribution."

*Id.* at 16 (emphasis in original).  As they put it, "prevailing law . . . eschews the very type of blame-

shifting efforts undertaken here by Blair and Blair Pharmacy."  *Id.* at 5.

The third-party defendants point to cases in which courts have prohibited defendants from

bringing counterclaims against qui tam relators as well as third-party claims for contribution or

indemnification.  For example, they cite *Mortgages, Inc. v. U.S. Dist. Ct. for the Dist. of Nev. (Las*

34

*Vegas*), 934 F.2d 209, 212 (9th Cir. 1991), for the proposition that "[t]he FCA is in no way intended to ameliorate the liability of wrongdoers by providing defendants with a remedy against a qui tam plaintiff with unclean hands."  *See* ECF 131-1 at 18 (emphasis omitted; alteration in ECF 131-1). Moreover, Alavi and Atlas maintain that several courts have invoked *Mortgages* "to reject third-party claims by FCA defendants against third-party defendants, like the third-party claims brought here."  ECF 131-1 at 18; *id.* at 19; *see United States ex rel. Madden v. Gen. Dynamics Corp.*, 4 F.3d 827, 830 (9th Cir. 1993); *United States v. Dynamics Rsch. Corp.*, 441 F. Supp. 2d 259, 265 (D. Mass. 2006).

Alavi and Atlas recognize that "a defendant may bring state law claims that are independent of a finding on defendant's FCA liability," but they argue that "'[c]ounterclaims for indemnification or contribution by definition only have the effect of offsetting liability.'"  ECF 131-1 at 19 (emphasis omitted) (quoting *Marietta Area Healthcare, Inc. v. King*, No. 5:21-CV-25, 2023 WL 2189050, at *13 (N.D. W.Va. Feb. 23, 2023)) (emphasis and alteration in ECF 131-1); *see also id.* at 20 (citing *Cell Therapeutics, Inc.* ("CTI") *v. Lash Group, Inc.*, 586 F.3d 1204, 1209 (9th Cir. 2009)).   And, they contend that the third-party claims asserted here are "wholly dependent" on the FCA claims asserted by Schnupp.  ECF 131-1 at 19; *see also* ECF 127, ¶ 37 ("In the underlying *qui tam* lawsuit, Schnupp claims he is entitled to damages based upon BPI's and Blair's alleged violation of the FCA. These violations of the FCA are purportedly related to BPI's distribution relationship with Atlas and, by affiliation, Alavi.").

Blair counters that Atlas and Alavi have improperly relied on the *Mortgages* and *Madden* decisions of the Ninth Circuit "to argue that any claim for indemnification or contribution by a qui tam defendant is categorically precluded."  ECF 138 at 3.  Unlike in *Mortgages* and *Madden*, Blair observes that Blair did not assert claims against the relator.  *Id.*  Moreover, Blair argues that the

*Lash* case "expressly distinguishes retaliatory counterclaims against relators that are precluded by the FCA and permissible claims against independent third-parties that have no effect on the Government or the relator's right to recovery." *Id*.  According to Blair, the T.P.C. "only asserts claims against Atlas and Alavi that are independent of the underlying FCA claims," and therefore they are permissible. *Id*.

Blair explains, *id*. at 21:

> . . . Blair and BPI's claims for indemnification and contribution have no effect on the underlying *qui tam* case, Schnupp's interests as a relator, or the Government's collection of its losses due to fraud. BPI and Blair's claims are based on the independent business relationship between Atlas and BPI and commissions paid to Atlas for referrals of compound prescription drugs. Similar to *Lash*, BPI and Atlas's business relationship also centered on the same nucleus of facts alleged in the underlying *qui tam* suit. BPI and Blair's claims, however, like those addressed in *Lash*, are independent of Schnupp's claims in that they do not affect Schnupp's recovery and seek only to address Atlas and Alavi's actions under the Distributor Agreement.

According to Blair, the *Lash* Court clarified that *Mortgages* "does not foreclose qui tam defendants from bringing claims against independent third parties and allowed CTI's indemnification claims against Lash to move forward." *Id*.[16]

## B.

As noted, in the Third-Party Complaint Blair asserts claims against Atlas and Alavi for common law indemnification (Count I) and contribution (Count II), and for contractual indemnification (Count III).  *See* ECF 127, ¶¶ 26–40, 41–45, 46–49.  Maryland law recognizes three types of indemnity: (1) express contractual indemnity; (2) implied-in-fact indemnity, based on a special relationship between the parties; and (3) tort indemnity, which arises where equitable considerations require indemnification.  *Pulte Home Corp. v. Parex, Inc.*, 403 Md. 367, 382, 942

---

[16] Blair cites no cases for the proposition that a claim is independent merely because the outcome would not affect the relator's recovery.

A.2d 722, 730–31 (2008).  Before evaluating the parties' arguments, I briefly review general legal principles with respect to indemnification and contribution.

### 1.  Express Contractual Indemnification

Atlas and BPI entered into the Distributor Agreement in November 2014.  ECF 108-1. Section XIII of the Distributor Agreement is titled "Indemnification."  *See id.* at 7.  Paragraph 1.1(a) of Section XIII references the "Obligations of BLAIR PHARMACY, INC."  Paragraph 1.1(b) references the "Obligations of Distributor."  *Id.*  To my knowledge, "Distributor" is not a defined term in the Agreement.  Indeed, the Distributor Agreement defines Atlas as "Representative," and BPI as "Company."  *Id.* at 2.  But, in the light most favorable to the non-movant, one can infer that Paragraph 1.1(b) is meant to refer to the obligations of Atlas.

The clause obligates the Distributor to indemnify "RX and its affiliates . . ." in connection, *inter alia*, with the marketing, promoting, and sales of "Products" under the agreement.  Paragraph 1.1(b) also states, in part: "Distributor shall indemnify . . . RX and its affiliates . . . from and against all Losses incurred by, or sought to be imposed on, an RX Indemnified Party in connection with (i) the operations of the Distributor . . . to the extent such Losses are caused by . . . (B) the performance of, or failure to perform, Distributor's or any Sales Representative's obligations under this Agreement, [or] (C) any violation by Distributor or any Sales Representative of applicable Federal, state or local laws or regulations."  *Id.*

"RX" does not appear to be a defined term in the Distributor Agreement, from what I am able to discern.  Although it appears that BPI and Atlas had a contract with an indemnity clause, Blair fails to allege any facts that, if proven, would entitle Blair to recover from Alavi and/or Atlas pursuant to the Distributor Agreement.  Indeed, with respect to Count III, "Contractual Indemnification Via The Distributor Agreement," Blair summarily asserts:  "[I]n the event that

Schnupp prevails on any of his claims against Blair and/or BPI . . ., then Alavi and Atlas are contractually obligated to indemnify BPI and Blair against any damages stemming from this action." ECF 127, ¶ 49.

### 2. Common Law Indemnification

An implied right to indemnity "may arise from a special relationship between the parties, usually contractual in nature, or from a course of conduct." *Id.* at 382, 942 A.2d at 731; *see also Hanover Ins. Co. v. Engineered Sys. Alliance, LLC*, PX-15-112, 2019 WL 1002603, at *8 (D. Md. Mar. 1, 2019). However, "'a contractual right to indemnification will only be implied when there are unique special factors demonstrating that the parties intended that the would-be indemnitor bear the ultimate responsibility . . . or when there is a generally recognized special relationship between the parties.'" *Pulte Home Corp.*, 403 Md. at 382, 942 A.2d at 731 (quoting *Araujo v. Woods Hole, Martha's Vineyard, Etc.*, 693 F.2d 1, 2–3 (1st Cir. 1982)) (ellipses in *Pulte Home Corp.*)

I am unaware of any published decision by a Maryland appellate court that has addressed what constitutes a "generally recognized special relationship" in the absence of a contractual relationship, and the parties point to none. Moreover, it appears that courts have adopted a restrictive view of the implied right to indemnity. *See Hanover Ins. Co.*, PX-15-112, 2019 WL 1002603, at *8 (noting that "[o]ften the special relationship is created by statutory or regulatory obligations"); *Hanscome v. Perry*, 75 Md. App. 605, 616, 542 A.2d 421, 426 (1988) (observing that "[g]enerally, the mere relationship between vendor and vendee does not, of itself, suffice to produce an implied contractual right of indemnification").

The paucity of authority leads me to return to the language in *Pulte Home Corp.* Notably, the existence of a contractual relationship between the parties plays a prominent role in the

discussion.  The Maryland Court of Appeals[17] has recognized that an implied right to indemnity

may arise from a "special relationship between the parties" but noted that such a relationship will

"*usually* [be] *contractual* in nature[.]"  *Pulte Home Corp.*, 403 Md. at 382, 942 A.2d at 731

(emphasis and alterations added).  The court also explained that "not every *contractual* relationship

will produce an implied indemnity."  *Id.* (emphasis added).  Rather, "'a *contractual* right to

indemnification will only be implied when there are unique special factors demonstrating that the

parties intended that the would-be indemnitor bear the ultimate responsibility . . . or when there is

a generally recognized special relationship between the parties.'"  *Id.* (emphasis added) (citation

omitted).

### 3.  Common Law Contribution

The doctrine of contribution provides for "the distribution of loss among culpable parties

in accordance with their proportionate shares."  *Hartford Acc. & Indem. Co. v. Scarlett Harbor*

*Assoc. Ltd. P'ship*, 109 Md. App. 217, 280, 674 A.2d 106, 137 (1996) (Hollander, J.), *aff'd*, 346

Md. 122, 695 A.2d 153 (1997).  Further, "[i]t is defined as 'a payment made by each, or by any,

or several having a common interest of liability of his share in the loss suffered, or in the money

necessarily paid by one of the parties in behalf of the others.'"  *Id.* (citation omitted).  The doctrine

---

[17] In Maryland's general election of November 2022, the voters of Maryland approved a constitutional amendment to change the name of the Maryland Court of Appeals to the Supreme Court of Maryland.  And, the voters also approved changing the name of the Maryland Court of Special Appeals to the Appellate Court of Maryland.  These changes went into effect on December 14, 2022.  *See* Press Release, *Voter-Approved Constitutional Change Renames High Courts to Supreme and Appellate Court of Maryland*, MARYLAND COURTS (Dec. 14, 2022), https://perma.cc/K87C-UUCG.

I will refer to the Maryland courts by the names that were in effect when the cited cases were decided.

is not based on contract or tort.  Rather, it is based on principles of equity.  *Lyon v. Campbell*, 324 Md. 178, 182, 596 A.2d 1012, 1014 (1991).

Under Maryland's Uniform Contribution Among Tort-Feasors Act, a defendant may seek contribution from a joint tortfeasor where "two or more persons [are] jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them."  Md. Code (2020 Repl. Vol.), § 3-1401(c) of the Courts and Judicial Proceedings Article.  Thus, there are two prerequisites to contribution.  First, the parties must share a common liability or burden.  Second, the party seeking contribution must have paid, under legal compulsion, more than his fair share of the common obligation.  *See Heritage Harbour, L.L.C. v. John J. Reynolds, Inc.*, 143 Md. App. 698, 714, 795 A.2d 806, 815 (2002).

Notably, "'[c]ontribution rests on common liability, not on joint negligence or joint tort.'" *Parler & Wobber v. Miles & Stockbridge*, 359 Md. 671, 687, 756 A.2d 526, 534 (2000) (citation omitted).  And, "'[c]ommon liability exists when two or more actors are liable to an injured party for the same damages, even though their liability may rest on different grounds.'"  *Id.* (citation omitted); *see also Day v. Robbins*, 179 F. Supp. 3d 538, 542 (D. Md. 2016).  But, because "'contribution from a third party defendant is predicated on his or her direct liability to the plaintiff,' there is no right of contribution where the plaintiff has no right of action against the third party defendant."  *Renick v. Sperau*, CCB-12-1627, 2013 WL 1314417, at *6 (D. Md. Mar. 29, 2013) (quoting *Kelly v. Fullwood Foods, Inc.*, 111 F. Supp. 2d 712, 715 (D. Md. 2000)); *see also* PAUL MARK SANDLER, JAMES K. ARCHIBALD & PAUL JORGENSEN, PLEADING CAUSES OF ACTION IN MARYLAND, § 15.5 (6th ed. 2018).

**C.**

The question here is whether the FCA permits third-party claims for indemnification or contribution.

In the context of a civil antitrust action, the Supreme Court said that "a right to contribution may arise in either of two ways: first, through the affirmative creation of a right of action by Congress, either expressly or by clear implication; or, second, through the power of federal courts to fashion a federal common law of contribution." *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 638 (1981).

*Radcliff Materials, Inc.*, 451 U.S. 630, is instructive, by analogy. There, the defendant sought to implead alleged coconspirators by way of a third-party complaint, seeking contribution. The district court dismissed the third-party complaint, and the ruling was affirmed. The Supreme Court noted that the antitrust laws do not establish a right of action for contribution. *Id.* at 639. Therefore, it said that "if such a right exists it must be by implication." *Id.* The Court looked to the intent of Congress, gleaned from legislative history and other factors. *Id.*

The Court acknowledged that the legislative history of the various antitrust laws does not indicate that Congress considered the matter of contribution. *Id.* Moreover, in view of the sanction of treble damages, the Court said, *id.*: "The very idea of treble damages reveals an intent to punish past, and to deter future, unlawful conduct, not to ameliorate the liability of wrongdoers. The absence of any reference to contribution in the legislative history or of any possibility that Congress was concerned with softening the blow on joint wrongdoers . . . makes examination of other factors unnecessary."

The Court reasoned, *id.*: "If any right to contribution exists, its source must be federal common law." But, said the Court, there is "'no federal general common law.'" *Id.* at 640 (citation

omitted).  Claims under federal common law "fall into essentially two categories:  those in which a federal rule of decision is 'necessary to protect uniquely federal interests,' . . . and those in which Congress has given the courts the power to develop substantive law. . . ." *Id.* (citations omitted).

The False Claims Act does not expressly permit a defendant to seek contribution or indemnification.  Nor does it expressly bar such claims.  Accordingly, the Court may look to legislative history.  *See Mortgages,* 934 F.2d at 213; *Dynamics Research Corp.,* 441 F.Supp.2d at 264.

In *Mortgages*, 934 F.2d at 214, the Ninth Circuit conducted a review of the legislative history of the FCA and found that it did not permit a defendant to assert claims for contribution or indemnification, nor does it expressly bar such claims. It ruled that "[b]ecause there is no basis in the FCA or federal common law to provide a right to contribution or indemnity in a FCA action, . . . there can be no right to assert state law counterclaims that, if prevailed on, would end in the same result."  *Id.*

Nevertheless, the parties agree that the FCA does not necessarily foreclose all third-party claims.  In *Madden,* 4 F.3d 827, a group of relators alleged that the defendant, General Dynamics, "made misrepresentations to the United States Navy concerning the testing and development of the Phalanx close-in missile system."  *Madden*, 4 F.3d at 829.  General Dynamics asserted eight counterclaims against the relators, which the district court dismissed according to the principles of *Mortgages*.  *Id*.  The Ninth Circuit concluded that the district court improperly dismissed the counterclaims.  It recognized that the "decision in *Mortgages* is designed to prevent qui tam defendants from offsetting their liability. Counterclaims for indemnification or contribution by definition *only* have the effect of offsetting liability."  *Id.* at 830–31 (emphasis in *Madden*).  But, it reasoned that *Mortgages* did not preclude qui tam defendants from bringing counterclaims for

42

independent damages.  *Id.* at 831.  The court said, *id.*: "Counterclaims for independent damages are distinguishable . . . because they are not dependant [sic] on a qui tam defendant's liability."

Blair relies on *Lash,* 586 F.3d 1204, to support the right to sue Alavi and Atlas.  *See* ECF 138 at 19.  In that case, CTI contracted with Lash Group, Inc. ("Lash") to provide Medicare reimbursement and consulting services regarding a new cancer drug.  But, Lash provided incorrect advice, leading to the discontinuation of research and a qui tam suit against CTI under the FCA.  *Id.* at 1206–07.  CTI then sued Lash, seeking indemnification and asserting other claims, including breach of contract and negligence.  *Id.*

The *Lash* Court determined that the district court had to "separate those claims for damages which '*only* have the effect of offsetting liability' from those that are not dependent on a qui tam defendant's liability under the FCA."  *Id.* at 1209 (quoting *Madden*, 4 F.3d at 831) (emphasis in *Madden*).  Relying on *Madden*, 4 F.3d 827, the court opined that CTI could advance claims that are "independent" of liability under the FCA.  *Id.* at 1209.  And, it pointed out that claims of negligent misrepresentation and unjust enrichment are not claims for indemnification.  *Id.* at 1210.  Thus, the defendants were able to proceed with their "independent claims" against the third-party defendants, which did not implicate the FCA, as the claims were "distinguishable from claims for indemnification or contribution, which, by definition, 'only have the effect of offsetting liability.'"  *Id.* at 1208.

Notably, the court clarified that the restrictions set forth by the *Mortgages* Court regarding claims for indemnification and contribution "do not extend to damages for claims other than those for fraud under the FCA."  *Lash*, 586 F.3d at 1210.  The court added, *id.*:  "The liability for which the *Mortgages* court barred indemnification was solely for fraud or conspiracy to commit fraud under the FCA. Here, had a jury reached a finding of liability for CTI as to unjust enrichment and

negligent misrepresentation but not fraud, nothing in *Mortgages* would bar CTI's claims for indemnification against Lash."  It concluded that the facts in CTI's complaint were sufficient to state a claim for damages "independent of the question of CTI's liability under the FCA."  *Id.*

Of relevance here, the *Lash* Court looked to *Madden* for the proposition that "even dependent counterclaims should not be foreclosed until the qui tam defendant's liability is established," so as not to offend due process.  *Id.* at 1208 (citing *Madden*, 4 F.3d at 831).  Relying on *Madden*, the Lash Court "suggested adopting a two-stage resolution process for resolving liability in FCA actions before adjudicating a counterclaim: If a qui tam defendant is found liable, the counterclaims can then be dismissed on the ground that they will have the effect of providing for indemnification or contribution.  On the other hand, if a qui tam defendant is found not liable, the counterclaims can be addressed on the merits."  *Lash*, 586 F.3d at 1208–09 (citing *Madden*, 4 F.3d at 831).

The underlying qui tam suit in *Lash* was resolved by settlement agreement.  *See Cell Therapeutics, Inc. v. The Lash Grp., Inc.*, No. C07-0310JLR, 2010 WL 3064424, at *6 (W.D. Wash. Aug. 3, 2010).  The Ninth Circuit determined that the settlement agreement did not constitute a finding of FCA liability and remanded the case to the trial court to "reconsider whether the claims are independent and, for third party claims that are not independent, [] assess how to proceed in light of [the] holding that the Settlement Agreement does not constitute a finding of liability under the FCA."  *See Lash*, 586 F.3d at 1212–13.

On remand, the district court construed the Ninth Circuit's opinion in *Lash* to conclude that "CTI's indemnification claims against Lash may proceed on their merits unless Lash can establish that the claims only have the effect of offsetting CTI's alleged FCA liability."  *Lash*, No. C07-0310JLR, 2010 WL 3064424, at *6.  Because the Ninth Circuit "found that the Settlement

Agreement did not constitute a finding of FCA liability," and Lash had "suggest[ed] no other means by which to prove up CTI's alleged FCA liability," the district court could "discern[] no basis upon which Lash's affirmative defense could be deemed potentially sufficient or viable as a matter of law." *Id.*  Therefore, the district granted CTI's motion to strike that defense. *Id.*

To my knowledge, the Fourth Circuit has not yet addressed the issue of whether the FCA forecloses third-party claims for contribution or indemnification.  However, several district courts have concluded that, with regard to an FCA case, a defendant's counterclaims and third-party claims for indemnification and contribution are subject to dismissal, but "a defendant can bring state law claims which are independent of a finding of liability on the part of the defendant." *Marietta Area Healthcare, Inc.*, 2023 WL 2189050, at *13 (involving claims for malicious prosecution, tortious interference, abuse of process, civil conspiracy); *see, e.g.*, *United States ex rel. Morgan v. Champion Fitness, Inc.*, 368 F. Supp. 3d 1198, 1209 (C.D. Ill. 2019) (concluding that defendants could pursue counterclaims against relator for breach of contract and unjust enrichment"); *United States v. Campbell*, No. 08-1951, 2011 WL 43013, at *10 (D.N.J. Jan. 4, 2011) ("FCA defendants cannot pursue claims for indemnification and contribution that are based on their liability under the FCA or have the same effect as offsetting FCA liability."); *United States ex rel. Miller v. Bill Harbert Int'l Const.*, 505 F.Supp.2d 20, 26 (D.D.C. 2007) ("The unavailability of contribution and indemnification for a defendant under the False Claims Act now seems beyond peradventure."); *United States v. Nardone*, 782 F. Supp. 996, 998–999 (M.D. Pa. 1990) (agreeing with plaintiff and third-party defendants that a counterclaim and third-party complaint seeking indemnification must be dismissed).

*Miller*, 505 F.Supp.2d at 27–28, is informative.  There, the court addressed two circumstances in which counterclaims by an FCA defendant would be permitted.  First, an FCA

defendant may bring a counterclaim that arises from conduct unrelated to the FCA claims and that does not "require as an essential element that the FCA defendant was liable—or not liable—in the FCA case." *Id.* at 27. The second circumstance in which an FCA defendant could bring a counterclaim is one in which the defendant "can only prevail if the defendant is found *not* liable in the FCA case." *Id.* at 27–28 (emphasis in original) ("The simple rule that emerges from these cases is therefore that a claim by an FCA defendant which requires for its success a finding that the FCA defendant is liable is the kind of claim barred by the FCA."); *see also Nardone,* 782 F. Supp. at 999 (dismissing FCA defendants' counterclaim and third-party complaint seeking indemnification).

If the principles of *Lash* and *Madden* apply here, the Court must determine whether Blair's claims against the third parties, Alavi and Atlas, "only have the effect of offsetting liability," or whether the claims are independent of Blair's alleged liability under the FCA. *See Lash*, 586 F.3d at 1209. Again, "claims for indemnification or contribution . . . by definition, 'only have the effect of offsetting liability.'" *Id*. at 1208 (emphasis omitted). But, "dependent counterclaims should not be foreclosed until the qui tam defendant's liability is established." *Madden*, 4 F.3d at 831.

Count I and Count II of the T.P.C. appear to be framed as dependent claims. *See*, *e.g.*, ECF 127, ¶ 39 (stating that if Schnupp prevails on his claims against Blair, then the unspecified actions of Alavi and Atlas are the cause of injury). The counts are premised on the assertion that, if Blair is liable to Schnupp, then Atlas and Alavi are liable to Blair. Nevertheless, even assuming that Blair's claims are dependent, the *Madden* Court cautioned that swift dismissal of a third-party dependent claim is not necessarily the correct resolution at an early stage of the case. *Madden*, 4 F.3d at 831. It posited that "dependent counterclaims should not be foreclosed until the qui tam defendant's liability is established," because "denying a qui tam defendant recourse to damages

46

offends procedural due process." *Id.* On this rationale, it is premature to determine, at this juncture, whether the claims in Count I and Count II are dependent or independent.

With respect to Count III, the parties have not addressed whether, by contract, a party can, in effect, circumvent the FCA with claims for indemnification or contribution. Even if the Court presumes the validity and applicability of both the Distributor Agreement and its indemnity clause, Blair fails to allege any facts that, if proven, would trigger the indemnity clause of the Distributor Agreement.

However, under Fed. R. Civ. P. 15(a)(2), "[a] court should freely give leave to amend when justice so requires." "[L]eave should be granted absent some reason 'such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment or futility of the amendment.'" *Booth v. Maryland*, 337 F. App'x 301, 312 (4th Cir. 2009) (per curiam) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Accordingly, I shall grant the Motion as to Count III, but with leave to amend the T.P.C., by a date to be determined.

Alavi and Atlas seem to have anticipated the prospect of a delayed ruling. They state that, in the event that the Court holds dismissal of the T.P.C. "in abeyance pending a determination of Blair and Blair Pharmacy's FCA liability," *see* ECF 131-1 at 24 n.15, the Court should issue "a stay of the third-party proceedings." *Id.*

The Supreme Court has said: "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936); *see Preston v. United States*, ELH-14-01920, 2015 WL

221633, at *9 (D. Md. Jan. 15, 2015).  The Fourth Circuit has also said that "a federal district court has the discretion to stay proceedings on its docket pending the outcome of a similar suit instituted earlier in another court," including in a federal court.  *Amdur v. Lizars*, 372 F.2d 103, 106 (4th Cir. 1967).

In my view, a stay of proceedings as to the Third-Party Complaint is prudent, pending resolution of the underlying FCA suit lodged by Schnupp against Blair.  If Blair is not liable, or if Schnupp is not entitled to a further award of damages, there would be no apparent basis to pursue the T.P.C.  If Blair is liable, the question remains as to whether Blair's third-party claims are barred by the FCA or independent of the FCA.

### VI.    Conclusion

I shall exercise supplemental jurisdiction with respect to the T.P. Complaint.  I shall deny the Motion (ECF 131) as to Counts I and II.  But, as to Count III, I shall grant the Motion, with leave to amend by a date to be determined.  In the interim, I shall stay proceedings in relation to the T.P. Complaint until such time as the claims in the First Amended Complaint are resolved.

An Order follows, consistent with this Memorandum Opinion.

Date:  September 5, 2024                                        _____/s/_____

                                                               Ellen Lipton Hollander
                                                               United States District Judge