**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| United States *ex rel.* Timothy Schnupp, <br><br> Relator/Plaintiffs, <br><br> v. <br><br> Blair Pharmacy, Inc., *et al.*, <br><br> Defendants. | Civil Action No.: 1:17-CV-02335-ELH |

**PLAINTIFF-RELATOR'S MOTION FOR LEAVE TO FILE AN INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**

The Relator, Timothy Schnupp, respectfully moves this Court to certify its Amended Memorandum Opinion [ECF 173] to permit interlocutory appeal pursuant to 28 U.S.C. § 1292(b). In support of this request, Mr. Schnupp says as follows:

LEGAL STANDARDS

This motion is brought pursuant to 28 U.S.C. § 1292(b). This statute "provides a mechanism by which litigants can bring an immediate appeal of a non-final order upon the consent of both the district court and the court of appeals." *Bradley v. Dentalplans.com,* 2024 U.S. Dist. LEXIS 228409, *7, 2024 WL 5158791 (D. Md. Dec. 18, 2024)(citing *Butler v. DirectSAT USA, LLC,* 307 F.R.D. 445, 451 (D. Md. 2015) and *In re Cement Antitrust Litig.,* 673 F.2d 1020, 1026 (9th Cir.1982)). The statute provides that:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, [s]he shall so

1

state in writing in such order.[1] The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however*, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28 U.S.C. § 1292(b).

This Court has broad discretion to determine whether its order "involves a controlling question of law as to which there is substantial ground for difference of opinion" and whether "an immediate appeal from the order may materially advance the ultimate termination of the litigation." *In re Trump,* 928 F.3d 360, 369 (4th Cir. 2019)("The broad discretion given to district courts under § 1292(b) is reflected in the open-ended terms used to define the statutory criteria."). "When a district court determines that the statutory criteria are present, however, it has a '*duty* . . . to allow an immediate appeal to be taken.'" *In re Trump,* 928 F.3d at 369 (citing *Ahrenholz v. Board of Trustees,* 219 F.3d 674, 677 (7th Cir. 2000)(emphasis by the Court)). The Fourth Circuit has cautioned "that § 1292(b) should be used sparingly and thus that its requirements must be strictly construed." *United States ex rel. Michaels v. Agape Senior Cmty, Inc.,* 848 F.3d 330, 340 (4th Cir. 2017). However, as the Supreme Court and the Fourth Circuit have instructed, "district courts should not hesitate to certify an interlocutory appeal under §1292(b) when a decision 'involves *a new legal question or is of special consequence.*'"

---

[1] "If the requisite language is not included in an initial order, the order may be amended to certify an issue for appellate review." *Franklin v. Cleo AI Inc.,* 2024 U.S. Dist. LEXIS 185136, *4-5, 2024 WL 4457975 (D. Md. Oct. 10, 2024)(citing *United States v. Eltzroth,* 124 F.3d 632, 635 (4th Cir. 1997)).

2

*In re Trump,* 928 F.3d at 369 (quoting *Mohawk Indus., Inc. v. Carpenter,* 558 U.S. 100, 111 (2009)(emphasis by the Fourth Circuit)); *See also Kennedy v. St. Joseph's Ministries, Inc.,* 657 F.3d 189, 191 (4th Cir. 2011)(noting § 1292(b) interlocutory appeal appropriate where court's ruling had "the potential [for] broad-reaching effect.").

Three elements are discernible in § 1292(b): (1) there must be "a controlling question of law" (2) about which there is "substantial ground for difference of opinion" and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *In re Trump,* 958 F.3d 274, 282-83 (4th Cir. 2020)(*vacated as moot* by 141 S. Ct. 1262 (2021)); *Kennedy,* 657 F.3d at 195 (treating the first two elements as a single element); *Franklin v. Cleo AI Inc.,* 2024 U.S. Dist. LEXIS 185136, *3-4, 2024 WL 4457975 (D. Md. Oct. 10, 2024); *Bradley v. Dentalplans.com,* 2024 U.S. Dist. LEXIS 228409, *8, 2024 WL 5158791 (D. Md. Dec. 18, 2024)(citing *Butler,* 307 F.R.D. at 451)).

*Controlling Questions of Law*

"For purposes of the § 1292(b) analysis, a controlling question of law is a question directed to the meaning of a statutory or constitutional provision, regulation, or common law doctrine, as opposed to a question heavily freighted with the need for factual assessment." *Brady v. Walmart Inc.,* 2024 U.S. Dist. LEXIS 223762, *6, 2024 WL 5075200 (D. Md. Dec. 11, 2024). Interlocutory appeal under § 1292(b) "may be appropriate where the court of appeals can rule on a pure, controlling question of law without having to delve beyond the surface of the record in order to determine the facts." *United States ex rel. Michaels v. Agape Senior Cmty., Inc.,* 848 F.3d 330, 341 (4th Cir.

2017)(citing *McFarlin v. Conseco Servs., LLC,* 381 F.3d 1251, 1259 (11th Cir. 2004)). Typically, "the court of appeals [can] decide [a question of law] quickly and cleanly without having to study the record." *Butler,* 307 F.R.D. at 452 (quoting *In re Text Messaging Antitrust Litig.,* 630 F.3d 622, 626 (7th Cir. 2010)).

On the other hand, interlocutory appeal may not be appropriate where the question presented "turns on whether there is a genuine issue of fact or whether the district court properly applied settled law to the facts or evidence of a particular case." *Agape Senior Cmty.,* 848 F.3d at 341 (citing *McFarlin,* 381 F.3d at 1259)(declining to exercise § 1292(b) jurisdiction to consider an evidentiary ruling on the admissibility of statistical sampling evidence). However, "there is no doctrine counseling courts to avoid [interlocutory appeal under § 1292(b)] on legal issues involving *undisputed* facts that are before them." *Kennedy,* 657 F.3d at 195 (emphasis by the Fourth Circuit). A question is "controlling if its incorrect disposition would require reversal of a final judgment." 16 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3930 (3d ed. 2024). A question may also be "controlling" for purposes of § 1292(b) if its resolution is "serious to the conduct of the litigation, either practically or legally." *In re Trump,* 928 F.3d at 371 (citing *Johnson v. Burken,* 930 F.2d 1202, 1206 (7th Cir. 1991)).

In *Agape Senior Community,* the Fourth Circuit determined that the district court's interpretation of 31 U.S.C. § 3730 presented a pure question of law appropriate for interlocutory appeal under § 1292(b). *Agape Senior Cmty.,* 848 F.3d at 333-37. At issue in that case was whether the government possessed an unreviewable veto authority under § 3730(b)(1) to prevent a voluntary settlement of a *qui tam* action in which the government

4

had not intervened. *Id.* at 337. The Fourth Circuit also noted the issue was "not one we have heretofore squarely confronted." *Id.* Thus, the issue in *Agape Senior Cmty.* may be characterized as a new question of law having the potential to effect other FCA cases. This case involves interpretation of the same statutory provision at issue in *Agape Senior Cmty.*, albeit a different subsection: 31 U.S.C. § 3730 (e)(4). This case also presents, as explained below, new questions of law not yet confronted by the Fourth Circuit that have potentially broad-reaching effect in other FCA cases.

***Substantial Ground for Difference of Opinion***

"A substantial ground for difference of opinion exists *where reasonable jurists might disagree* on an issue's resolution." *In re Trump,* 928 F.3d at 371 (citing *Reese v. BP Exploration (Alaska) Inc.,* 643 F.3d 681, 688 (9th Cir. 2011)(emphasis by the Fourth Circuit)). A substantial ground for difference of opinion may be demonstrated by "a dearth of precedent within the controlling jurisdiction," "conflicting decisions in other circuits," or "where a court's challenged decision conflicts with decisions of several other courts." *APCC Servs., Inc. v. Sprint Commc'ns Co.,* 297 F. Supp. 2d 90, 97-98 (D.D.C. 2003); *see also Ekstrom v. Cong. Bank,* 2021 U.S. Dist. LEXIS 6628, 2021 WL 119000, at *3 (D. Md. Jan. 13, 2021)(citing *Couch v. Telescope Inc.,* 611 F.3d 629, 633 (9th Cir. 2010)("[C]ourts find substantial grounds for difference of opinion 'where the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented.'")). The level of uncertainty required to find a substantial ground for difference of opinion should be adjusted to meet the importance of the question

5

in the context of the specific case. 16 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3930 (3d ed. 2024).

### *Immediate Appeal may Materially Advance the Ultimate Termination of the Litigation*

This final element for interlocutory appeal under § 1292(b) "means that resolution of a controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation." *In re Trump,* 928 F.3d at 371.  However, it has never been a requirement that an interlocutory appeal is only appropriate when the answer to the question at issue will necessarily end a case. *Bradley,* 2024 U.S. Dist. LEXIS 228409 at *13-14 (citing *Reese v. BP Exploration (Alaska) Inc.,* 643 F.3d 681, 688 (9th Cir. 2011)(holding that an interlocutory appeal would materially advance resolution of litigation where reversal by the appellate court would not resolve the entire case).  This element may also be satisfied where resolution of the question presented for interlocutory appeal would "lend clarity to possible settlement discussions [or] pretrial preparations." *Bradley,* 2024 U.S. Dist. LEXIS 228409 at *13.

In this case, reversal of the Court's determination regarding Mr. Schnupp's original source status as to Scheme 5 would likely entitle the government to summary judgment of between $22,259,824.98 and $24,500,824,98, given Blair's guilty plea, stipulations, and this Court's rulings on the other issues argued by Blair in opposition to summary judgment. As a practical matter, such a judgment would make further litigation of the remaining fraudulent schemes alleged unnecessary and would end the need for a trial.  Even if summary judgment in favor of the government were not the result of such an appellate ruling, a reversal would at a minimum lend clarity to and incentivize settlement

6

discussions.

## LEGAL QUESTIONS

*Specific Questions of Law for Which Interlocutory Appeal is Sought*

> (1) Whether the Relator's Disclosure Memorandum, which included the Atlas Complaint and Blair Pharmacy Dispense Report, provided to the government in accordance with 31 U.S.C. § 3730(b)(2) may be a "voluntary" disclosure within the meaning of 31 U.S.C. § 3730(e)(4)(B).

This Court answered this controlling question of law in the negative. ECF 173 at 41 ("I agree with the Second, Seventh, and Tenth Circuits that the Disclosure Memorandum required by 31 U.S.C. § 3730(b)(2) cannot be deemed to have been "voluntarily" provided under 31 U.S.C. § 3730(e)(4)(B)(ii).").[2] Significantly, this Court agreed that the Atlas Complaint constituted "information" regarding Scheme 5 within the meaning of 31 U.S.C. § 3730(e)(4)(B). ECF 173 at 39. The Court acknowledged a circuit split (Fifth and D.C. Circuits vs. Second, Seventh, and Tenth Circuits) on the question and that "the Fourth Circuit has not addressed whether the fact that the Disclosure Memorandum is required by statute vitiates voluntariness." ECF 173 at 40-41. Accordingly, there exists substantial ground for difference of opinion.

The level of uncertainty is exacerbated in that the cases from the Seventh and Tenth Circuits were decided prior to the 2010 amendments to the statute in question, and none of

---

[2] The Court did not expressly apply its ruling to 31 U.S.C. § 3730(e)(4)(B)(i), the first definition of "original source," however, we assume that was the Court's intention since both definitions contain the word "voluntary." The two definitions for "original source" differ in a material respect regarding timing of a disclosure: the first requires a relator to disclose information "prior to a public disclosure" while the second requires disclosure "before filing an action" under the FCA. 31 U.S.C. § 3730(e)(4)(B). The public disclosure here is the Superseding Indictment filed in Blair's criminal case on March 30, 2020. The Disclosure Memorandum is dated August 14, 2017, more than two and a half years before the public disclosure.

7

the circuit cases relied upon by the Court involved post-Disclosure Memorandum voluntary meetings with the government in which the "information" conveyed in the Disclosure Memorandum is further explained by the relator. The interpretation of 31 U.S.C. § 3730 is a pure question of law that may be decided by the Fourth Circuit without any need for factual assessment. The contents of the Disclosure Memorandum and the timing of the Disclosure Memorandum and the relevant public disclosure are undisputed and easily determined with only a cursory review of the record. Moreover, reversal by the Fourth Circuit on this statutory question plainly would result in Relator's qualification as an original source under either definition in 31 U.S.C. § 3730(e)(4)(B), and summary judgment in favor of the government should follow, eliminating any need for a trial.

> (2) Whether a relator may qualify as an "original source" within the meaning of 31 U.S.C. § 3730(e)(4)(B)(i) when he voluntarily discloses in government interviews information previously known or under investigation by the government but prior to any public disclosure of the information?

This Court correctly reasoned in its Memorandum Opinion that:

As a threshold matter, the public disclosure bar does not apply unless the fraud alleged by the relator was previously disclosed to the public in a manner specifically enumerated in the statute. *See United States v. Meridian Senior Living, LLC*, 5:16-CV-410-BO, 2018 WL 1463347, at *8 (E.D.N.C. Mar. 23, 2018); *Davis*, 753 F. Supp. 2d at 579. And, the disclosure "must be a disclosure of fraudulent 'allegations or transactions' and not merely a disclosure of information." *See A1 Procurement, LLC v. Thermcor, Inc.*, 2:15-00015, 2017 WL 9478501, at *8 (E.D. Va. Apr. 4, 2017) (*citing United States ex rel. Saunders v. Unisys Corp.*, 1:12-00379, 2014 WL 1165869, at *1, *6 (E.D. Va. Mar. 21, 2014)). As explained by the D.C. Circuit: "[I]f X + Y = Z, Z represents the *allegation* of fraud and X and Y represent its essential elements. In order to disclose the fraudulent *transaction* publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z, i.e., the conclusion that fraud has been committed." *United States ex rel. Springfield Terminal Ry. Co. v. Quinn,* 14 F.3d 645, 654 (D.C. Cir. 1994).

8

ECF 173 at 27.

"The language employed in § 3730(e)(4)(A) suggests that Congress sought to prohibit *qui tam* actions only when either the allegation of fraud or the critical elements of the fraudulent transaction themselves were in the public domain." *Springfield Terminal,* 14 F.3d at 654. Under this analysis, "[t]he word 'information' refers to '*any* essential element of the fraud transaction (*e.g.,* Y).'" *Springfield Terminal,* 14 F.3d at 657 (emphasis in original). In other words, X and Y constitute the "information" upon which the allegation of fraud Z is based. Thus, the allegation of fraud in Scheme 5 expressed using the *Springfield Terminal* formulation is: Blair received referrals of prescriptions from an independent salesperson (X) + Blair paid the independent salesperson 50% of the reimbursement he received from government payors on the prescriptions as an incentive for the referrals (Y) = (Z) Fraud committed in violation of the Anti-Kickback Statute.

A relator is an "original source" within the meaning of 31 U.S.C. § 3730(e)(4)(B)(i) when the relator "prior to a public disclosure under subsection (e)(4)(A), has voluntarily disclosed to the Government the information upon which allegations or transactions in a claim are based." 31 U.S.C. § 3730(e)(4)(B)(i). The Court acknowledged that during a voluntary interview of Schnupp on October 2, 2017, more than two years before the Superseding Indictment was filed against Blair, *i.e.,* more than two years before the public disclosure, Schnupp informed the government, among many other things, that "'In total Blair hired approximately six sales reps that marketed to doctors to send prescriptions to Blair Pharmacy [which included Alavi/Atlas]. . . . Blair paid his sales reps between 30 and

9

50 [percent] of the total amount Blair Pharmacy was reimbursed for each prescription the sales rep referred to Blair Pharmacy.'" ECF 173 at 43 (quoting ECF 67 at ECF Page 32); ECF 173 at 46 (finding Schnupp's interviews were voluntary). Mr. Schupp also informed the government during the October 2, 2017 meeting that he believed "it was a violation of the AKS for Blair to pay his sales reps for prescriptions." [3] ECF 67 at ECF Page 46.

Thus, Schupp disclosed the basic elements of the kickback scheme, *i.e.,* the X and Y of Scheme 5 during his voluntary interview on October 2, 2017, but the Court nevertheless denied Schnupp original source status under § 3730(e)(4)(B)(i) because:

> The events described by Agent Choi in the [Search Warrant] Affidavit [filed on July 12, 2017] took place well before Schnupp met with government investigators, and before Schnupp filed his *qui tam* Complaint on August 15, 2017. ECF 1. Schnupp has not presented anything beyond bald assertions to support his claim that in his interviews with the FBI, he revealed information as to Scheme 5 that was not already known to the government.

ECF 173 at 48. Although the Court properly recognized that "the search warrant applications [presented to the Court in this case] do not constitute public disclosures," ECF 173 at 30, the Court nevertheless nullified Schnupp's disclosure of "information" related to Scheme 5 to the government during the October 2, 2017 interview because Agent Choi's nonpublic search warrant application demonstrated the government was already investigating the information Schnupp provided. ECF 173 at 48.

---

[3] During the October 2, 2017 interview, Schnupp also discussed with the government: the Alavi lawsuit/Atlas Complaint, Blair Pharmacy's operations, Blair's sales reps, including Ben Alavi and Atlas Group, Dr. Scott Rehrig, the doctor writing most of the TRICARE prescriptions referred to Blair in Scheme 5, TRICARE, and how Blair tracked referrals and paid his outside sales reps, including Alavi. ECF 67 at Ex. H.

"When Congress amended the [False Claims] Act in 1986, the jurisdictional bar was changed from one precluding actions 'based upon evidence or information in the possession of the United States' to one precluding actions 'based upon the public disclosure of allegations or transactions….'" *U.S. ex rel. Findley v. FPC-Boron Employee's Club,* 105 F.3d 675, 684 (D.C. Cir. 1997).  One purpose for this change "was to prod the government into action" and that purpose is not served by stopping *qui tam* suits whenever the government has prior knowledge of information disclosed by a relator.  *Findley,* 105 F.3d at 684 n.4 (citations omitted).

Considering the 1986 Amendments to the FCA, the Fourth Circuit has ruled that a "public disclosure" within the meaning of 31 U.S.C. § 3730(e)(4) "requires some act of disclosure *outside of the government,*" *U.S. ex rel. Wilson v. Graham Cty. Soil & Water Conservation Dist.,* 777 F.3d 691, 697 (4th Cir. 2015)(emphasis by the Fourth Circuit).  The Fourth Circuit has not, however, addressed the extent to which the government's prior knowledge of information voluntarily provided by a relator before any public disclosure of the information may negate the relator's status as an "original source" under the new definition of "original source" found in 31 U.S.C. § 3730(e)(4)(B)(i).[4]  Counsel has not found any reported decision addressing this new and significant legal question, which requires interpretation of § 3730(e)(4)(B)(i) in the context of the competing FCA policies of encouraging whistleblower actions while discouraging parasitic ones.  To resolve the

---

[4] Congress amended the FCA, effective March 23, 2010, and revised several parts of the public disclosure bar.  *U.S. ex rel. Beauchamp v. Academi Training Ctr., LLC,* 816 F.3d 37, 39 (4th Cir. 2016).  The amendments also changed the definition of "original source" and § 3730(e)(4)(B)(i) was added to the definition.

11

legal question in this case, the Fourth Circuit would not be required to study the factual record or develop it. The information Mr. Schnupp provided to the government during his initial interview on October 2, 2017 and in subsequent interviews occurring before the Superseding Indictment of Blair is easily identified in the record. *See* ECF 67 Ex. H; ECF 165-1.

In ruling that a "public disclosure" within the meaning of 31 U.S.C. § 3730(e)(4) "requires some act of disclosure *outside of the government,*" the Fourth Circuit in *Wilson* expressly disagreed with the Seventh Circuit's holding in *United States v. Bank of Farmington,* 166 F.3d 853 (7th Cir. 1999) that information had been "publicly disclosed" because it had been disclosed to a competent government official. *See Wilson,* 777 F.3d at 696-97. The *Wilson* case highlights that substantial ground for difference of opinion exists when determining the materiality of prior government knowledge in connection with issues arising under the post-1986 public disclosure bar. This case simply shifts the statutory question presented in *Wilson, i.e.,* was there a "public disclosure" because of the government's prior knowledge of the information, to the materiality of the government's prior knowledge of the relator's information for qualification as an "original source" under 31 U.S.C. § 3730(e)(4)(B)(i). Reversal by the Fourth Circuit on this statutory question would again result in Relator's qualification as an original source under the first definition in 31 U.S.C. § 3730(e)(4)(B)(i), and summary judgment in favor of the government should follow, eliminating any need for a trial.

WHEREFORE, Mr. Schnupp respectfully moves this Court to exercise its discretion to permit an interlocutory appeal of the above controlling questions of law to the Fourth

Circuit by amending its Order [ECF 173] to certify this Court's agreement to permit appeal pursuant to 28 U.S.C. § 1292(b) for the reasons stated herein.

Dated: March 7, 2025   Respectfully submitted,

**UNITED STATES OF AMERICA**
*ex rel.* **Timothy Schnupp**

/s/Ray M. Shepard_____
Ray M. Shepard, Federal Bar No. 09473
The Shepard Law Firm, LLC
122 Riviera Drive
Pasadena, Maryland 21122
Phone: 410-255-0700
Facsimile: 443-773-1922
Email: Ray@Shepard.Law

*Counsel for Timothy Schnupp*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 7th day of March, 2025, a copy of the foregoing Motion to Permit Interlocutory Appeal was served via this Court's ECF system upon all counsel of record.

/s/Ray M. Shepard_____
Ray M. Shepard, Federal Bar No. 09473